**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

RITU BHAMBHANI, M.D., *on behalf*
*of herself and on behalf of all others*
*similarly situated,*

                       *Plaintiff,*

- v. -

INNOVATIVE HEALTH SOLUTIONS,
INC., INNOVATIVE HEALTHCARE
SOLUTIONS, LLC, and ACCLIVITY
MEDICAL, LLC,

                       *Defendants*.

Civil Action No.: 19-cv-00355-RDB

**FIRST AMENDED**
**CLASS ACTION**
**COMPLAINT**

*Jury Trial Demanded*

> **Deleted:** . _____

> **Deleted:** ("IHS

Plaintiff Ritu Bhambhani M.D. ("Dr. Bhambhani"), on behalf of herself and on behalf of all others similarly situated, by and through her undersigned attorneys, based upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief formed after an inquiry reasonable under the circumstances, for her First Amended Class Action Complaint against Defendants Innovative Health Solutions, Inc. ("IHS"), Innovative Healthcare Solutions, LLC ("IHCS"), and Acclivity Medical, LLC ("Acclivity") (collectively, "Defendants") hereby allege as follows:

**INTRODUCTION**

1.     Dr. Bhambhani is but one among many healthcare providers who were sold a medical device known as the Neuro-Stim System ("NSS") and given advice concerning how to bill and collect health insurance reimbursements (including Medicare) for the cost of the device and the services associated with the device's implantation by the Defendants.

2.     The NSS is a medical device purportedly designed to provide field stimulation to

1

peripheral and cranial nerves in the auricle over a five-day period. It is recommended for pre-operative, intra-operative, and post-operative pain therapy as well as for the treatment of chronic pain. It is placed behind the patient's ear and connected to stimulation electrode arrays placed percutaneously in the auricle. However, the NSS was cleared by the Food and Drug Administration ("FDA") in 2014 merely for use in acupuncture, and in the 501(k)-premarket clearance application submitted to the FDA, IHS explicitly described the device as an electro acupuncture device for use in the practice of acupuncture by qualified practitioners of acupuncture as determined by the states. *See* FDA 510(k) Clearance Letter K140530 at <u>Exhibit 1</u>.

    3.    The device was sold and marketed throughout the United States by IHS through a series of "exclusive-rights" sales-agent distributors ("Sales Agents"), including but not limited to IHCS and Acclivity; and IHS and its Sales Agents invested substantial sums in advertising and marketing the NSS throughout the United States, including on websites, at trade shows, in brochures, in newsletters, in videos, and in on-site presentations at physician offices and ambulatory surgery centers. In a slide show utilized by IHCS in promoting the device to Dr. Bhambhani and other medical providers and facilities, IHCS explicitly referred to the NSS as being "FDA-approved," and claimed that "NSS is the first and only FDA approved electro-auricular, peripheral nerve stimulator currently on the market to treat acute and chronic pain." *See* IHCS Physician Power Point Slide Show at <u>Exhibit 2</u>, 3, 12. Notably, while the IHCS Physician Power Point Slide Show cited to FDA 510(k) Clearance Letter K140530, no reference to acupuncture or electro-acupuncture is made anywhere within the IHCS Physician Power Point Slide Show.

    4.    As a means of enticing Dr. Bhambhani and other medical providers and facilities to purchase the NSS to implement it into their clinical practices, the Defendants conceived of promoting the NSS as billable under a set of medical billing codes known as Current Procedural

| Deleted: | and other |
| Deleted: | , |
| Deleted: | its website |

2

Terminology ("CPT"). CPT codes are the national standard for how medical professionals document and report medical, surgical, radiology, laboratory, anesthesiology, and evaluation and management services. All healthcare providers, payers, and facilities use CPT codes. These codes are used by insurers to help determine the amount of reimbursement that a practitioner will receive for services provided. CPT codes are developed, maintained, and copyrighted by the American Medical Association, and are mandatory under the transaction standards promulgated under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") for reporting the performance of medical procedures when submitting electronic billing. In short, CPT is the uniform language of medical procedures utilized by all providers and payers.

5.     To entice medical providers and facilities to purchase their NSS devices, the Defendants promoted the billing of the NSS using a particular set of medical billing codes, including CPT 64555, Percutaneous Implantation of Neurostimulator Electrodes at a Peripheral Nerve. This code and the ancillary codes billed with it covering both professional and facility charges provided for between $4,800.00 and $11,400.00 *per patient* in reimbursement from health insurers for a procedure with little associated cost, taking ten minutes to perform. As a result of their reimbursement-driven marketing efforts, Defendants sold tens of thousands of NSS devices throughout the United States and touted itself as the market leader of the industry.

6.     Defendants either deliberately or negligently made misrepresentations concerning the correct billing, coding, and reimbursement for the NSS intending or having reason to expect that the substance of these misrepresentations would be communicated and repeated to Dr. Bhambhani and other medical professionals and facilities (collectively, "medical providers") through sales and marketing representatives and that it would induce Dr. Bhambhani and other medical providers to rely upon the misrepresentations and upon which Dr. Bhambhani and other

| | |
|---|---|
| | **Deleted:**  and facilities |

medical providers did, indeed, justifiably rely to their detriment.

7.     Dr. Bhambhani brings this action on behalf of all medical providers who suffered harm based upon their reliance upon Defendants deliberate or negligent misrepresentations concerning the correct billing, coding, and reimbursement for the NSS.

**JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendants. *See* 28 U.S.C. § 1332(d)(2)(A).

9.     This Court also has personal jurisdiction over Defendants because they are authorized to do business and in fact do business in this state and District, and Defendants have sufficient minimum contacts with this state and District, and/or otherwise intentionally avails itself of the markets in this state and District through the promotion, marketing, and sale of the NSS in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under 28 U.S.C. § 1391. Defendants do substantial business in this state and within this District, advertise in this this state and within this District, receive substantial compensation and profits from the sale of the NSS in this state and within this District, and engaged in deliberately or negligently misleading representations concerning the correct billing, coding, and reimbursement for the NSS in this state and within this District to subject it to *in personam* jurisdiction in this District. Furthermore, the transactions between Defendants and the named Plaintiff, Dr. Bhambhani, occurred in this state and within this District.

4

**THE PARTIES AND THEIR RELATIONSHIPS WITH EACH OTHER**

11.     Dr. Bhambhani is a medical doctor practicing in Abingdon, MD. She is board-certified in both Anesthesiology and Pain Medicine and is affiliated with multiple hospitals in the area, including MedStar Franklin Square Medical Center and University of Maryland Harford Memorial Hospital. She received her medical degree from Maulana Azad Medical College, completed both a residency and fellowship at the prestigious Cleveland Clinic Foundation in Ohio, and has been in private practice for more than 20 years. She is the managing member of both Ritu Bhambhani LLC d/b/a Complete Care of Maryland, through which she conducts her private medical practice, and Box Hill Surgery Center LLC, a state-of-the art ambulatory surgery center where Dr. Bhambhani performs many of her more invasive pain management procedures.

12.     Innovative Health Solutions, Inc. is an Indiana corporation which at all relevant times herein, was and is engaged in the business of marketing, selling, and distributing the NSS, as more fully described herein, throughout Maryland and the United States, with a registered office at 829 S. Adams St., Versailles, IN 47042.

13.     Innovative Healthcare Solutions, LLC, is a Kentucky limited liability company which at all relevant times herein, was and is engaged in the business of marketing, selling, and distributing the NSS, as more fully described herein, throughout Maryland and the United States, with a registered office at 1178 Mallard Creek Road, Louisville, KY 40207-5813.

14.     Acclivity Medical LLC is a Kentucky limited liability company which at all relevant times herein, was and is engaged in the business of marketing, selling, and distributing the NSS, as more fully described herein, throughout Maryland and the United States, with a registered office at 456 Glengarry Way, Fort Wright, KY 41011.

15.     Before developing the NSS, IHS was the exclusive U.S. distributor of the device

5

| Deleted: Upon information and belief, |

| Deleted: Upon information and belief, Acclivity Medical LLC is a Kentucky corporation |

and was listed as the NSS's primary predicate on FDA 510(k) Clearance Letter K140530, the "P-STIM." The P-STIM was developed by Biegler GbmH, an Austrian Company. IHS invested substantial sums into advertising and marketing its P-STIM devices throughout the United States, both directly and indirectly through Sales Agents, including on its website, at trade shows, in brochures, in newsletters, in videos, and during on-site presentations at physician offices and ambulatory surgery centers. In just a few short years, IHS sold tens of thousands of P-STIM devices to doctors, surgery centers, and other healthcare providers who treat patients suffering from acute or chronic pain.

16.     The success of its sales and marketing efforts relative to the P-STIM device—which were largely based on the same billing, coding, and reimbursement representations that were later made relative to the NSS device—led IHS to develop its own device, one that was "substantially similar" to the P-STIM both in functionality and outcomes. To do so, IHS engaged Key Electronics, Inc. ("Key Electronics"), an electronics manufacturing service provider of custom-built products, located in Jeffersonville, Indiana. Key Electronics is listed as the manufacturer of the NSS on FDA 510(k) Clearance Letter K140530, but, upon information and belief, the development of the NSS was done on a "work for hire" basis, with ownership of all intellectual property associated with the NSS, including the trade-name and one or more utility patents, belonging to IHS.

17.     Once the FDA cleared the NSS to be marketed, IHS engaged multiple Sales Agents, including IHCS and Acclivity, to market the NSS device to doctors, surgery centers, and other healthcare providers treating patients suffering from acute or chronic pain. IHS largely employed the same sales and marketing tactics it used with the P-STIM device – focusing on representations related to the billing, coding, and reimbursement of the devices. IHS provided information and

6

documents related to the billing, coding, and reimbursement it employed relative to the P-STIM devices to the Sales Agents it engaged to sell and market the NSS on behalf of IHS, including, but not limited to, IHCS and Acclivity. Dr. Bhambhani was one of the physicians that IHCS and Acclivity, as Sales Agents of IHS, promoted the NSS device to using the information and documents IHS provided them related to billing, coding, and reimbursement.

## FACTUAL BACKGROUND

18.     Dr. Bhambhani was originally contacted by IHCS on August 17, 2015. She received an email from Robert A. Smith ("Smith"), the Vice President of Sales and Marketing for IHCS, which introduced the NSS device, and enclosed the IHCS Physician Power Point Slide Show. This email stated:

> Dr Bhambhani, My company has the exclusive rights to a recently FDA and VA approved device for acute and chronic pain. I live in Maryland and am selecting key practices now. We have launched with prominent Physicians and larger surgery groups throughout the U.S. I have attached the Slideshow above along with a short Science Video https://vimeo.com/user17291718/review/108118730/56e5ec2571. They feature the technology along with the ***extraordinary reimbursement*** for this treatment. Select practices can participate in our Full Service Program outlined on the attached PowerPoint.

*See* August 17, 2015, Email from Robert A. Smith, Exhibit 3.

19.     So, from the start, the promise of extraordinary reimbursement and the IHCS Physician Power Point Slide Show were the foundation of IHS's marketing, promotion, and sales of the NSS device to Dr. Bhambhani. Among the representations made in the IHCS Physician Power Point Slide Show were the following:

a.     NSS is a patented, FDA approved peripheral nerve stimulator designed to provide field stimulation to peripheral and cranial nerves in the auricle over a 5-day period.

b.     It is FDA approved for chronic and acute pain.

7

    c.      NSS is the first and only FDA approved electro-auricular, peripheral nerve

simulator currently on the market to treat acute and chronic pain.

    d.      NSS is reimbursed by Medicare when performed at an ASC.

    e.      The following Insurers pay for in office and ASC: Major health insurers;

workers compensation insurers; and personal injury insurers.

*See* <u>Exhibit 2</u>, 3, 12, 14.

20.     The IHCS Physician Power Point Slide Show promised guaranteed profits through

a "turn-key program" with "no upfront cost":



*See* <u>Exhibit 2</u>, 15.

21.     As to the guarantee of profits, IHCS offered two distinctly different programs: the

"Full Service Program" and the "Direct Purchase Program." The difference between the two

programs was relatively straightforward. With the Full Service Program, IHCS (or its affiliates,

including Acclivity) would provide "full-service" billing and collections services:

8



*See* <u>Exhibit 2</u>, 18.

22.     Even without these so-called full-service billing services, <u>Program</u> <u>IHCS and/or</u>

<u>Acclivity</u> still provided billing/collections protocols <u>they received</u> from IHS <u>as part of the Direct</u>

<u>Purchase</u>:

| Deleted: the Direct Purchase |
| --- |

| Deleted: and/or its affiliates, including Acclivity |
| --- |



9

*See* <u>Exhibit 2</u>, 21.

23.     These billing protocols<u>, which were identical to the billing protocols IHS created</u> <u>to promote the P-STIM device,</u> in no uncertain terms, included specific coding advice whereby the NSS device was to be billed under CPT 64555, Percutaneous Implantation of Neurostimulator Electrodes at a Peripheral Nerve:



*See* <u>Exhibit 2</u>, 22.

24.     Regardless of program, however, the touchstone of <u>the Defendants' NSS</u> sales pitch was profit<u>—just as IHS did with the P-STIM device before it</u>:

**Deleted:** IHS's



*See* <u>Exhibit 2</u>, 26.

25.     Nowhere in the IHCS Physician Power Point Slide Show, or any other information or document provided to Dr. Bhambhani, was it disclosed that the NSS was in fact cleared by the FDA as merely an electro acupuncture device for use in the practice of acupuncture by qualified practitioners of acupuncture.

26.     On September 8, 2015, Kristen Brannon ("Brannon"), Vice President of Operations for IHCS sent an email to Dr. Bhambhani attaching certain NSS "billing information," including a Precertification and Billing Overview, a NSS Precertification Form, and a NSS Procedure Note Template, all of which were provided to IHCS by IHS. *See* September 8, 2015, Email from Brannon, <u>Exhibit 4</u>. Notably, the NSS Procedure Note Template referred to the NSS service by the CPT descriptor only, and again contained no reference to electro acupuncture.

27.     On September 9, 2015, Smith sent Dr. Bhambhani two more email solicitations. *See* September 9, 2015, Emails from Smith, <u>Exhibit 5</u>. The first contained certain clinical studies purporting to extol the efficacy of the NSS device, on which Brian Carrico ("Carrico"), "one of

11

Deleted:

Deleted: .

the owners and pioneers of this technology," and the current CEO of IHS, was copied. The second included links to training videos and an extensive list of applications for the device.

28.    In reliance upon the Defendants' statements concerning the efficacy of the NSS device, as well as the corresponding reimbursement figures, Dr. Bhambhani decided to purchase and did, in fact, enroll in the IHCS Full Service Program, at a cost of $900 per NSS device; and made orders that were fulfilled through Acclivity on September 14, 2015 and October 6, 2015.

**Deleted:** IHS's

**Deleted:** to make

29.    On September 28 and 29, 2015, Brannon sent emails providing additional coding advice to Dr. Bhambhani vis-a-vis the NSS device. *See* September 28 and 29, 2015, Emails from Brannon, Exhibit 6. Specifically, Brannon stated that a modifier is no longer necessary to bill CPT code 64555 for the NSS service. She further guided Plaintiff on what to do when a Medicare claim is rejected and how to successfully "rebill" such a claim.

30.    Again, on December 8, 2015, Brannon provided coding advice by stating the codes to use for workers compensation claims, and confirmed the propriety of the same code sequence set forth on the IHCS Physician Power Point Slide Show. *See* December 8, 2015, Email from Brannon, Exhibit 7.

31.    Unbeknownst to Dr. Bhambhani, but known to the Defendants, in 2011 the P-STIM (and its substantially equivalent success, the NSS) had already been deemed to not satisfy the coding sequence set forth in the IHCS Physician Power Point Slide Show and other promotion materials and information statements provided by the Defendants. Indeed, in April 2011, the Centers for Medicare and Medicaid Services ("CMS") created Healthcare Common Procedure Coding System ("HCPCS") code S8930, Electrical stimulation of auricular acupuncture points, each 15 minutes of personal one-on-one contact with the patient. And electro acupuncture services reported to CMS under that code were excluded from coverage by most Medicare Administrative

**Deleted:** ,

12

Contractors ("MACs") starting immediately.

32.     Despite knowing that the coding instructions they were giving were incorrect, the Defendants concealed this fact and falsely stated their coding, billing, and reimbursement instructions were appropriate. They did so because the high reimbursement under the codes promoted by them encouraged healthcare providers like Dr. Bhambhani to purchase NSS devices at an excessively high price. Dr. Bhambhani reasonably relied on the expertise of the Defendants with respect to the NSS and its billing, coding, and reimbursement.

33.     In all, between September 2015 and June 2016, Dr. Bhambhani purchased 420 NSS devices, to the tune of $264,000, all paid to Acclivity, who served as distributor and an agent-in-fact on behalf of IHS at all times during Dr. Bhambhani's relationship with IHCS.

34.     On or about October 8, 2016, however, Dr. Bhambhani's reporting of the code sequences explicitly recommended by Defendants prompted Novitas, the MAC responsible for administration of the Medicare program in Maryland, to initiate both post-payment and prepayment audits of both Dr. Bhambhani's private practice and her ambulatory surgical center.

35.     Upon learning that the audits were initiated due to the suspicion that Dr. Bhambhani and her entities were improperly submitting bills for electro acupuncture to the Medicare program, she attempted to return her remaining inventory of NSS devices to IHS.

36.     On or about September 1, 2016, Carrico, "one of the owners and pioneers of this technology," and IHS's current CEO, responded to Dr. Bhambhani's return request with a bold-faced lie, telling her that "IHS has not and does not get involved in billing and coding in any way." *See* September 1, 2016, Email from Carrico, Exhibit 8. He went on to suggest, rather, that IHS could not accept the device returns, but would be happy to assist her in billing them to commercial insurance companies, and recommended a third-party billing services that would "do a tremendous

Deleted: "

job of pre-authorizing and billing for the NSS which will allow you to have 0 headaches, help

**Deleted:**

patients, be very profitable, and be protected."

37.     In August 2016, Novitas published Local Coverage Advisory A55240, which specifically: (i) identified the NSS device as electro acupuncture; and (ii) noted that the NSS device was not a covered by the Medicare program.

38.     In November and December of 2016, Dr. Bhambhani's practice and surgery center were hit with a series of refund demands from Novitas on behalf of the Medicare program, with the total amount of refunds exceeding $1,000,000.00. While those refunds were appealed and remain pending before the Office of Administrative Law, a substantial portion of the disputed refund amount has already been offset from other claims payable to Dr. Bhambhani's practice and surgery center, and Dr. Bhambhani has already spent tens of thousands of dollars in legal fees and other related expenses relative to defending the Medicare audits—all on account of the deliberate or negligent misrepresentation of the Defendants relative to the NSS device.

**CLASS ALLEGATIONS**

39.     Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above, and further states as follows:

40.     Plaintiff brings this class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following class (the "Proposed Class"). The Proposed Class consists of:

> All healthcare providers located within the United States who purchased one or more NSS devices from the Defendants from within the longest period allowed by statute before filing of this action up through and including the date of judgment in this case. Excluded from this class are any healthcare providers, if any, who have previously settled or compromised claims(s) as identified herein for the class.

41.     The members of the Proposed Class are so numerous that joinder of all members is

impracticable. While the precise number of members of the Proposed Class is known only to the Defendants, the number of healthcare providers who purchased one or more NSS devices from the Defendants from within the longest period of time allowed by statute before the filing of this action is certainly in excess of 100 persons.

42.    Common questions of law and fact that can be resolved with common answers exist as to all class members. Such common questions include whether:

    a.    Defendants either deliberately or negligently made misrepresentations concerning the correct billing, coding, and reimbursement for the NSS;

    b.    Defendants had reason to expect that the substance of these misrepresentations would be communicated and repeated to Dr. Bhambhani and other medical providers through sales and marketing representatives;

    c.    Defendants had reason to expect that the substance of these misrepresentations would induce Dr. Bhambhani and other medical providers and facilities to rely upon the misrepresentations and upon which Dr. Bhambhani and other medical providers did, indeed, justifiably rely to their detriment;

    d.    Class members are entitled to recover compensatory damages, including but not limited to all amounts paid to Defendants for the NSS devices they purchased under false pretenses;

    e.    Class members are entitled to recover interest on such compensatory damages, including but not limited to interest on all amounts paid to Defendants for the NSS devices they purchased under false pretenses;

    f.    Class members are entitled to punitive damages based on Defendants' acts

or omissions, because such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions; and

g.      Class members are entitled to other equitable relief as sought herein.

43.      Plaintiff's claims are typical of the claims of the Proposed Class.

44.      Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with the interests of the Class members. Furthermore, Plaintiff has retained competent counsel experienced in class action litigation. Plaintiff's counsel will fairly and adequately protect and represent the interests of the Class.

45.      The prosecution of separate actions by individual members of the Proposed Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendant.

46.      By routinely misrepresenting the correct billing, coding, and reimbursement for the NSS device, Defendants have acted or refused to act on grounds that apply generally to the Proposed Class.

47.      Common questions of law or fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy because joinder of all members of the Proposed Class is impracticable.

48.      Defendants maintain sales records that record who purchased the NSS devices, in what amounts, and for how much, thus the members of the Proposed Class can be readily and objectively ascertained through the use of records maintained by Defendants.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**FRAUDULENT MISREPRESENTATION**
**(Against all Defendants)**

49.     Plaintiff, individually and on behalf of all others similarly situated, repeats, realleges, and incorporates by reference each of the foregoing and subsequent allegations of this Complaint as if fully set forth herein.

50.     Defendants made material misrepresentations to Plaintiff and members of the Proposed Class by means of oral representations, labeling, advertisements, promotions/or marketing, that Defendants' NSS device could be billed to third party payors and health insurers with a particular resulting reimbursement, as alleged more fully herein above. Although the Defendants may have included disclaimers or caveats with their misrepresentations, those disclaimers or caveats were ambiguous and, in the context of the balance of the communications by the Defendants, misleading. Moreover, the Defendants conduct was inconsistent with the disclaimers and caveats, rendering the latter ineffective. The general disclaimers made by the Defendants were contradicted by their specific representations that the billing advice they gave in connection with their marketing was correct.

51.     Defendants' representations were untrue, or at the least, made with reckless disregard for its truth.

52.     Defendants made the representations herein alleged with the intention of inducing Plaintiff and members of the Proposed Class to purchase NSS devices from Defendants.

53.     At the time Defendants made the representations herein alleged, Defendants knew that the representations were false.

54.     Plaintiff and members of the Proposed Class justifiably relied upon Defendants'

fraudulent and intentional misrepresentations and, in reliance on those representations, were induced to purchase NSS devices from Defendants.

55.     As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff and members of the Proposed Class were harmed in an amount to be determined at trial.

**COUNT TWO**
**INTENTIONAL MISREPRESENTATION BY CONCEALMENT**
**OR NON-DISCLOSURE**
**(Against all Defendants)**

56.     Plaintiff, individually and on behalf of all others similarly situated, repeats, realleges, and incorporates by reference each of the foregoing and subsequent allegations of this Complaint as if fully set forth herein.

57.     Defendants failed to disclose material facts regarding the reimbursement, billing and collections rules and characteristics in connection with the NSS device purchased by Plaintiff and members of the Proposed Class, and the exposure the Plaintiff and members of the Proposed Class would have to Medicare and third-party payors if they followed Defendants billing advice.

58.     Defendants had to a duty to disclose, failed to disclose, and purposefully failed to disclose accurate facts about the billing and collections rules and characteristics about the NSS services.

59.     Specifically, the Defendants intended to deceive the Plaintiff and members of the Proposed Class of the fact that the NSS device did not have the attribute of being billable and reimbursable in the way asserted by the Defendants, and knew that the Plaintiff and members of the Proposed Class would have not purchased the NSS device or NSS services, or paid a lower price for the NSS device or NSS services had Plaintiffs and members of the Proposed Class knew of the undisclosed material facts.

60.     This failure to disclose induced the Plaintiff and members of the Proposed Class to

act.

61.     As a direct and proximate result of Defendants' concealment of material facts, Plaintiff and members of the Proposed Class were damaged in a way to be determined at trial.

**COUNT THREE**
**NEGLIGENT MISREPRESENTATION**
**(Against all Defendants)**

62.     Plaintiff, individually and on behalf of all others similarly situated, repeats, realleges, and incorporates by reference each of the foregoing and subsequent allegations of this Complaint as if fully set forth herein.

63.     Defendants owed Plaintiff and members of the Proposed Class a duty to take reasonable care that the verbal and written information being provided by Defendants to Plaintiff and members of the Proposed Class was true and correct.

64.     Defendants made material misrepresentations to Plaintiff and members of the Proposed Class by means of oral representations, labeling, advertising, promotions and/or marketing that the Defendants' NSS device could be billed to third party payors and health insurers with resulting reimbursement in a particular way. Defendants undertook to provide Plaintiff and members of the Proposed Class with billing advice. That billing advice was incorrect.

65.     Defendants representations were untrue as set forth above.

66.     Defendants made the representations herein alleged with the intent of inducing Plaintiff and members of the Proposed Class to continue to purchase Defendants' NSS device.

67.     Defendants knew that the Plaintiff and members of the Proposed Class would probably rely on the Defendants representations.

68.     Plaintiff and members of the Proposed Class justifiably relied upon Defendants' oral representations, labeling, and advertising and, in reliance thereon, were induced to purchase

19

the NSS device from the Defendants and to bill and collect for NSS services as instructed by the Defendants.

69.     At the time the Defendants made the misrepresentations herein alleged, Defendants had no reasonable grounds to believe the representations they were making to be true, thereby breaching their duty owed to Plaintiff and members of the Proposed Class.

70.     As a proximate result of Defendants' misrepresentations, Plaintiff and members of the Proposed Class were harmed.

**COUNT FOUR**
**NEGLIGENCE**
**(Against all Defendants)**

71.     Plaintiff, individually and on behalf of all others similarly situated, repeats, realleges, and incorporates by reference each of the foregoing and subsequent allegations of this Complaint as if fully set forth herein.

72.     Defendants owed Plaintiff and members of the Proposed Class a duty to take reasonable care that the verbal and written information being provided by Defendants to Plaintiff and members of the Proposed Class was true and correct.

73.     Defendants made material misrepresentations to Plaintiff and members of the Proposed Class by means of oral representations, labeling, advertising, promotions and/or marketing that the Defendants' NSS device could be billed to third party payors and health insurers with resulting reimbursement in a particular way. Defendants undertook to provide Plaintiff and members of the Proposed Class with billing advice. That billing advice was incorrect.

74.     Defendants representations were untrue as set forth above.

75.     Defendants made the representations herein alleged with the intent of inducing Plaintiff and members of the Proposed Class to continue to purchase Defendants' NSS device.

76.     At the time the Defendants made the misrepresentations herein alleged, Defendants had no reasonable grounds to believe the representations they were making to be true, thereby breaching their duty owed to Plaintiff and members of the Proposed Class. The Defendants reasonably should have known that the information and instructions they were giving concerning the billing and collection of NSS services was incorrect and that the Plaintiff and members of the Proposed Class foreseeably would rely upon the information and instructions to their detriment.

77.     Plaintiff and members of the Proposed Class justifiably relied upon Defendants' oral representations, labeling, and advertising and, in reliance thereon, were induced to purchase the NSS device from the Defendants and to bill and collect for NSS services as instructed by the Defendants.

78.     As a proximate result of Defendants' misrepresentations, Plaintiff and members of the Proposed Class were actually harmed.

**COUNT FIVE**
**CIVIL CONSPIRACY**
**(Against all Defendants)**

79.     Plaintiff, individually and on behalf of all others similarly situated, repeats, realleges, and incorporates by reference each of the foregoing and subsequent allegations of this Complaint as if fully set forth herein.

80.     All Defendants consist of two or more persons.

81.     All Defendants did agree or had an understanding to effectuate the intentional and negligent misrepresentations, concealment of material facts, and/or the conduct alleged in the foregoing paragraphs.

82.     The agreement by all Defendants was designed to pursue an unlawful purpose.

83.     As a direct and proximate result of Defendants' agreement to pursue an unlawful

purpose, Plaintiff and members of the Proposed Class suffered and continue to suffer special damages.

### COUNT SIX
**DECLARATORY JUDGMENT PURSUANT TO**
**28 U.S.C. § 2201(a)**
**(Against all Defendants)**

84.     Plaintiff, individually and on behalf of all others similarly situated, repeats, realleges, and incorporates by reference each of the foregoing and subsequent allegations of this Complaint as if fully set forth herein.

85.     Defendants had actual knowledge or reasonably should have known that the information and instructions they were giving concerning the billing and collection of NSS services was incorrect and misrepresented both the manner in which the NSS device could be billed to third party payors and health insurers and the expected reimbursement to be generated per patient by the NSS services to Plaintiff and members of the Proposed Class.

86.     An actual and justiciable controversy exists between Defendant and Plaintiff concerning the parties' respective rights and obligations as it relates to the NSS device.

87.     Plaintiff and members of the Proposed Class have tangible legal interests in the instant controversy, including but not limited to:

a.     Their interest in a declaration from this Court that the NSS device is an electro acupuncture device for use in the practice of acupuncture by qualified practitioners of acupuncture and not properly billable to health insurers and other third-party payors under CPT 64555, Percutaneous implantation of neurostimulator electrode array;

b.     Their interest in obtaining injunctive relief so that Defendant does not in the future employ unfair and/or deceptive practices in its business dealings with

consumers; and

c.   Their interest in a declaration from this Court that Defendant is unfairly misrepresenting both the manner in which the NSS device could be billed to third party payors and health insurers and the expected reimbursement to be generated per patient by the NSS services; thereby violating Maryland public policy and the public policy of various states.

88.   Plaintiff and members of the Proposed Class are therefore entitled to a declaration of rights from this Court pursuant to § 2201(a) of the United States Code, for the purpose of determining the rights between the parties and terminating uncertainty and controversy giving rise to this proceeding.

89.   A declaratory judgment by this Court of the following facts will terminate this controversy: (i) the NSS device is an electro acupuncture device for use in the practice of acupuncture by qualified practitioners of acupuncture and not properly billable to health insurers and other third-party payers under CPT 64555, Percutaneous implantation of neurostimulator electrode array; and (ii) that Defendant is unfairly misrepresenting both the manner in which the NSS device could be billed to third party payors and health insurers and the expected reimbursement to be generated per patient by the NSS services.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands relief in her favor and against the Defendants as follows:

1.      That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that the Plaintiff is a proper class representative, and her counsel is adequate class counsel.

2.      That the Court certify the class identified above;

3.      That Declaratory Judgment be entered against Defendants finding that Defendants' conduct is in violation of the law;

4.      That the Court issue a permanent injunction requiring Defendants to cease all such fraudulent misrepresentation, intentional misrepresentation by concealment or non-disclosure, negligent misrepresentation, and negligence;

5.      That the Court issue a permanent injunction requiring Defendants disclose, in its written and oral marketing representations, that the Defendants' NSS device cannot be billed to third party payors and health insurers under CPT 64555;

6.      That the Court issue a permanent injunction requiring Defendants disclose, in its written and oral marketing representations, that the Defendants' NSS device is electro acupuncture for purposes of medical coding and billing and should be billed under S8930;

7.      That judgment be entered against Defendants and in favor of Plaintiff and the Proposed Class on the Causes of Action in this Class Action Complaint, for injunctive and equitable relief as requested above, and for actual, compensatory, and punitive damages, in an amount to be determined at trial;

8.      That the Court award attorneys' fees and litigation costs against Defendants;

9.      That judgment be entered imposing interest on damages, attorneys' fees, and

litigation costs against Defendants; and

      10.    That the Court award against Defendants and for Plaintiff and the Class for all other and further relief, both at law and in equity, to which they may show themselves justly entitled.

<strong>DEMAND FOR A JURY TRIAL</strong>

      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff and the Proposed Class demand a jury trial on all issues so triable.

Dated: April 15, 2019           Respectfully submitted,

                /s/ Elizabeth A. Rice
                Elizabeth A. Rice, Bar. No. 20426
                John W. Leardi (admitted *pro hac vice*)
                Nicole P. Allocca (admitted *pro hac vice*)
                BUTTACI LEARDI & WERNER LLC
                212 Carnegie Center, Suite 202
                Princeton, New Jersey 08540
                (609) 799-5150

                Ugo Colella, Bar. No. 17443
                John J. Zefutie (admitted *pro hac vice*)
                CULHANE MEADOWS PLLC
                4200 Wisconsin Avenue NW #106-305
                Washington, DC 20016
                (202) 539-2616

                *Attorneys for Plaintiff*
                *Ritu Bhambhani M.D.*
                *and the Proposed Class*

Deleted: February 6

Formatted: Font: Times New Roman, 12 pt

Formatted: Normal, Space Before:  0 pt, Widow/Orphan control

Deleted: earice@buttacilaw.com¶

Deleted: application forthcoming

Formatted: Font: Times New Roman, 12 pt

Formatted: Normal, Widow/Orphan control

Formatted: Font: Times New Roman, 12 pt

Formatted: Font: Times New Roman, 12 pt

Deleted: jwleardi@buttacilaw.com¶

Formatted: Font: Times New Roman, 12 pt

Formatted: Font: Times New Roman, 12 pt

Deleted: application forthcoming

Formatted: Font: Times New Roman, 12 pt

Deleted: npallocca@buttacilaw.com¶

Formatted: Font: Times New Roman, 12 pt, English (United States)

Formatted: Font: Times New Roman, 12 pt, English (United States), Small caps

Formatted: English (United States), Small caps

Formatted: Font: Times New Roman, 12 pt, English (United States)

Formatted: English (United States)

Formatted: Font: Times New Roman, 12 pt

Formatted: Font: Times New Roman, 12 pt

Deleted: (609) 799-5180¶

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing First Amended Class Action Complaint were served by electronic means through the Court's ECF system on April 15, 2019 on all counsel of record as follows:

> Joel I. Sher, Bar No. 00719
> Paul Mark Sandler, Bar No. 00145
> Eric R. Harlan, Bar No. 23492
> Shapiro Sher Guinot & Sandler
> 250 West Pratt Street, Suite 2000
> Baltimore, MD 21201
> (410) 385-4277
>
> Jeffrey R. Teeters (admitted *pro hac vice)*
> Wood + Lamping
> 600 Vine Street, Suite 2500
> Cincinnati, OH 45202
> (513) 852-6050
>
> *Attorneys for Defendant*
> *Innovative Health Solutions, Inc.*

I HEREBY CERTIFY that a true and correct copy of the foregoing First Amended Class Action Complaint were sent by United States Priority Mail on April 15, 2019 to Acclivity Medical, LLC as follows:

> Acclivity Medical, LLC
> 456 Glengarry Way
> Fort Wright, KY 41011
>
> *Defendant*
> *Acclivity Medical, LLC*

> /s/ Elizabeth A. Rice
> Elizabeth A. Rice

Formatted: Normal, Indent: Left: 3", Don't add space between paragraphs of the same style, Widow/Orphan control

26