**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| RITU BHAMBHANI, M.D., *on behalf of herself and on behalf of all others similarly situated,* | : : : : | Civil Action No. 1:19-cv-00355-RDB |
| *Plaintiff,* | : : |  |
| - v. - | : : |  |
| INNOVATIVE HEALTH SOLUTIONS, INC., and ACCLIVITY MEDICAL, LLC, | : : : |  |
| *Defendants.* | : : |  |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT IHS'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

---

Elizabeth A. Rice, Bar No. 20426
John W. Leardi (admitted *pro hac vice)*
Nicole P. Allocca (admitted *pro hac vice)*
BUTTACI LEARDI & WERNER, LLC
212 Carnegie Center, Suite 202
Princeton, NJ 08540
609-799-5150

Ugo Colella, Bar. No. 17443
John J. Zefutie (admitted *pro hac vice)*
CULHANE MEADOWS PLLC
4200 Wisconsin Avenue NW #106-305
Washington, DC 20016
(202) 539-2616

*Attorneys for Plaintiff Ritu Bhambhani M.D.*
*and the Putative Class*

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................... iv

INTRODUCTORY STATEMENT ................................................................................ 1

SUMMARY OF DR. BHAMBHANI'S ALLEGATIONS .......................................... 3

SUMMARY OF IHS'S MOTION TO DISMISS......................................................... 7

LEGAL ARGUMENT...................................................................................................... 8

I.        STANDARD OF REVIEW ................................................................................ 8

II.       DR. BHAMBHANI HAS ADEQUATELY STATED A CLAIM FOR FRAUDULENT MISREPRESENTATION................................................................................................ 10

          A.        IHCS and Acclivity Were Acting as Agents of IHS When Misrepresentations Were Communicated to Dr. Bhambhani. ...................................................................... 10

          B.        Dr. Bhambhani Sufficiently Pleads Specific Material Misrepresentations with the Particularity Required by Rule 9(b)...................................................................... 13

                    1.        Dr. Bhambhani Plausibly Pleads, and IHS does not Contest, that IHS Knew the Representations Made by its Sales Agents were False. ...................... 14

                    2.        Dr. Bhambhani Pleads that both IHS and its Sales Agents Acted with a Purpose to Defraud Dr. Bhambhani......................................................... 16

                    3.        Dr. Bhambhani Pleads Her Reliance Upon IHS and its Sales Agents' Misrepresentations. ................................................................................ 17

                    4.        Dr. Bhambhani Pleads Actual Damage Suffered Because of IHS and its Sales Agents' Misrepresentations. ........................................................ 18

III.      DR. BHAMBHANI HAS ADEQUATELY STATED A CLAIM FOR FRAUDULENT CONCEALMENT BECAUSE REPRESENTATIONS ATTRIBUTABLE TO IHS OMITTED MATERIAL FACTS. ................................................................................... 19

IV.       DR. BHAMBHANI HAS ADEQUATELY STATED A CLAIM FOR NEGLIGENT MISREPRESENTATION BECAUSE ECONOMIC INJURIES ARE PROPER DAMAGES FOR A NEGLIGENT MISREPRESENTATION CLAIM. ....................... 22

          A.        Dr. Bhambhani is Not Barred from Asserting Economic Injuries Without Pleading Physical Injury as Damages for a Negligent Misrepresentation Claim. ............... 23

B. Dr. Bhambhani Adequately Pleads a Privity of Contract Equivalent with IHS Because Dr. Bhambhani Pleads an Intimate Nexus Between IHS and Dr. Bhambhani. ................................................................................................ 24

V. DR. BHAMBHANI HAS ADEQUATELY STATED A CLAIM FOR NEGLIGENCE BECAUSE RECOVERY OF PURE ECONOMIC DAMAGES IS PERMITTED WHERE THERE IS AN INTIMATE NEXUS BETWEEN THE PARTIES................................. 26

VI. DR. BHAMBHANI HAS ADEQUATELY STATED A CLAIM FOR CIVIL CONSPIRACY BECAUSE MULTIPLE INTENTIONAL UNDERLYING TORTS ARE PLAUSIBLY PLEADED. ............................................................................. 27

VII. DR. BHAMBHANI HAS ADEQUATELY STATED A CLAIM FOR A DECLARATORY JUDGMENT. ................................................................... 29

A. Dr. Bhambhani Can Sustain a Declaratory Judgment Claim Without Underlying Tort Claims. ....................................................................................... 29

B. There is No Restriction on Asserting a Declaratory Judgment Action When a Plaintiff Pleads Other Causes of Action and an Unrelated Medicare Refund Appeal is Pending Before the Office of Administrative Law. .......................................... 30

C. The Court's Discretion to Hear a Declaratory Judgment Action Extends Only to Situations Where There is a Parallel and Potentially Conflicting State Action.... 32

CONCLUSION................................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*100 Inv. Ltd. P'ship v. Columbia Town Center Title Co.*
  430 Md. 197 (2013) ................................................................................ 25

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*
  340 Md. 176 (1995) ........................................................................... 14, 21

*Alleco, Inc. v. Harry & Jeanette Weinberg Found.*
  99 Md. App. 696 (1994) ......................................................................... 28

*American Cas. Co. of Reading, Pa. v. Ricas*
  179 Md. 627 (1941) ................................................................................ 11

*American Home Assurance Co. v. Evans*
  79 F.2d 61 (6th Cir. 1986) ..................................................................... 30

*Appel v. Hupfield*
  198 Md. 374 (1951) ................................................................................ 14

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ........................................................................ 8, 9, 10

*Balfour Beatty Infrastructure Inc. v. Rummel Klepper & Kahl, LLP*
  451 Md. 600 (2017) ........................................................................... 23, 25

*Beardmore v. T.D. Burgess Co.*
  245 Md. 387 (1967) ................................................................................ 18

*Beck v. McDonald*
  848 F.3d 262 (4th Cir. 2017) ................................................................... 9

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ........................................................................ 8, 9, 10

*Block v. Neal*
  460 U.S. 289 (1983) ................................................................................ 23

*Boulden v. Stilwell*
  100 Md. 543 (1905) ................................................................................ 14

*Brager v. Friedenwald*
  128 Md. 8 (1916) ............................................................................... 20, 21

*Chevron U.S.A. Inc. v. Apex Oil Co.*
   113 F. Supp. 3d 807 (D. Md. 2015) ................................................... 31

*Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*
   308 Md. 18 (1986) ................................................................................ 24

*Everett v. Baltimore Gas & Elec.*
   307 Md. 286 (1986) .............................................................................. 14

*Exxon Mobil Corp. v. Albright*
   433 Md. 303 (2013) .............................................................................. 17

*Fegeas v. Sherrill*
   218 Md. 472 (1958) ........................................................................ 19, 20

*Finch v. Hughes Aircraft Co.*
   57 Md. App. 190 (1984) .................................................................. 20, 21

*First Union Nat'l Bank v. Steele Software Sys. Corp.*
   154 Md. App. 97 (2003) .................................................................. 15, 16

*Fowler v. Benton*
   229 Md. 571 (1962), *cert. denied sub nom., Fowler v. Md. of County Comm'rs,*
   375 U.S. 845 (1963) ......................................................................... 15, 21

*Francis v. Giacomelli*
   588 F.3d 186 (4th Cir. 2009) ................................................................ 8

*Frederick Road Limited Partnership v. Brown & Sturm*
   360 Md. 76 (2000) ................................................................................ 20

*Geisey v. Holberg*
   185 Md. 642 (1946) .............................................................................. 16

*Gittings v. Von Dorn*
   136 Md. 10 (1920) ................................................................................ 14

*Green v. H & R Block, Inc.*
   355 Md. 488 (1999) ........................................................................ 11, 19

*Green v. Wash. Sub. San. Comm'n*
   259 Md. 206 (1970) .............................................................................. 27

*Harrison v. Westinghouse Savannah River Co.*
   176 F.3d 776 (4th Cir. 1999) ................................................................ 9

*Heslop v. Dieudonne*
209 Md. 201 (1956) ........................................................................... 11

*Hillson Partners Ltd. Partnership v. Adage, Inc.*
42 F.3d 204 (4th Cir. 1994) ................................................................. 9

*Hoffman v. Stamper*
155 Md. App. 247 (2004) ................................................................... 21

*Hogan v. Maryland State Dental Association*
155 Md. App. 556 (2004) ................................................................... 14

*Homa v. Friendly Mobile Manor*
93 Md. App. 337 (1992) ..................................................................... 11

*Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.*
283 Md. 296 (1978) ........................................................................... 20

*In re Cryomedical Sciences, Inc. Securities Litigation*
884 F. Supp. 1001 (D. Md. 1995) ........................................................ 9

*In re Medimmune, Inc. Securities Litigation*
873 F. Supp. 953 (D. Md. 1995) .......................................................... 9

*Jacques v. First Nat'l Bank*
307 Md. 527 (1986) ..................................................................... 25, 26

*James v. Weisheit*
279 Md. 41 (1977) ............................................................................ 14

*Lasercomb America, Inc. v. Reynolds*
911 F.2d 970 (4th Cir. 1990) ............................................................... 9

*Lloyd v. GMC*
397 Md. 108 (2007) ............................................................. 20, 24, 27

*Lubore v. RPM Assocs.*
109 Md. App. 312 (1996) ................................................................... 21

*Mackey v. Compass Mktg.*
391 Md. 117 (2006) ........................................................................... 28

*Martens Chevrolet v. Seney*
292 Md. 328 (1982) ..................................................................... 14, 24

*Medical Mut. Liability Ins. Soc. v. Mutual Fire, Marine & Inland Ins. Co.*
    37 Md. App. 706 (1977) ....................................................................... 11, 12

*Mitcheson v. Harris*
    955 F.2d 235 (4th Cir. 1992) ..................................................................... 32

*Moscarillo v. Prof'l Risk Mgmt. Servs.*
    398 Md. 529 (2007) ................................................................................... 14

*Nails v. S & R, Inc.*
    334 Md. 398 (1994) .............................................................................. 14, 17

*P. Flanigan & Sons v. Childs*
    251 Md. 646 (1967) ................................................................................... 10

*Premium of Am., LLC v. Sanchez*
    213 Md. App. 91 (2013) ............................................................................ 25

*Progressive N. Ins. Co. v. Airborne Express, Inc.*
    2005 U.S. Dist. LEXIS 15075 (D. Md. 2005) ............................................ 12

*Sass v. Andrew*
    152 Md. App. 406 (2003) .......................................................................... 14

*Schear v. Motel Management Corp.*
    61 Md. App. 670 (1985) ............................................................................ 11

*Scheuer v. Rhodes*
    416 U.S. 232 (1974) .................................................................................... 9

*Schilling v. Rogers*
    363 U.S. 666 (1960) .............................................................................. 29, 30

*Schmidt v. Millhauser*
    212 Md. 585 (1957) ................................................................................... 14

*State v. Raines*
    326 Md. 582, *cert. denied*, 506 U.S. 945 (1992) ..................................... 16

*Suburban Mgmt. v. Johnson*
    236 Md. 455 (1964) ................................................................................... 14

*Swinson v. Lords Landing Vill. Condo.*
    360 Md. 462 (2000) .............................................................................. 25, 27

*United Capitol Ins. v. Kapiloff*
  155 F.3d 488 (4th Cir. 1998) .................................................... 11

*United States v. Neustadt*
  366 U.S. 696 (1961)................................................................ 23

*Universal Health Servs. v. United States ex rel. Escobar*
  136 S. Ct. 1989 (2016) ........................................................... 21

*University Gardens Apartments Joint Venture v. Johnson*
  419 F. Supp. 2d 733 (D. Md. 2006)................................... 29, 30

*Van Royen v. Lacey*
  262 Md. 94 (1971) ................................................................. 27

*VF Corp. v. Wrexham Aviation Corp.*
  112 Md. App. 703 (1996) ....................................................... 21

*Village of Cross Keys v. U.S. Gypsum Co.*
  315 Md. 741 (1989) ...................................................... 23, 24, 25

*Walpert, Smullian & Blumenthal, P.A. v. Katz*
  361 Md. 645 (2000) ............................................................... 25

*Walsh v. Edwards*
  233 Md. 552 (1964) ......................................................... 20, 21

*White v. Kennedy Krieger Inst.*
  221 Md. App. 601 (2015) ....................................................... 17

*Wilson v. Exxon Mobil Corp.*
  2015 Md. App. LEXIS 733 (2015) ..................................... 17, 21

*Windesheim v. Larocca*
  443 Md. 312 (2015) ............................................................... 28

**Statutes**

Class Action Fairness Act of 2005, 28 U.S.C. § 1332......................... 30, 32

Declaratory Judgment Act, 28 U.S.C. § 2201(a) .............................. 30, 32

**Other Authorities**

5 Charles Alan Wright and Arthur R. Miller
  FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1297 (2d ed. 1990) ................... 9

McCormick
DAMAGES § 122 (1935)........................................................................................ 18

RESTATEMENT (FIRST) OF RESTITUTION § 8 (1937)........................................................ 20

RESTATEMENT (FIRST) OF TORTS § 549 (1938) .......................................................... 18

RESTATEMENT (SECOND) OF TORTS § 529 (1997)........................................................ 21

RESTATEMENT (SECOND) OF TORTS § 530 (1997)........................................................ 15

RESTATEMENT (SECOND) OF TORTS § 551 (1997)................................................... 20, 21

RESTATEMENT (SECOND) OF TORTS § 552 (1997)........................................................ 24

RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006) ...................................................... 10

RESTATEMENT (THIRD) OF AGENCY § 2.03 (2006) ...................................................... 10

RESTATEMENT (THIRD) OF AGENCY §§ 3.01-3.05 (2006) ........................................... 11

**Rules**

Fed. R. Civ. P. 8.................................................................................................... 8, 9

Fed. R. Civ. P. 9.................................................................................................... 8, 9

Fed. R. Civ. P. 12..................................................................................................... 9

Plaintiff Dr. Ritu Bhambhani, M.D. ("Dr. Bhambhani"), by and through her undersigned counsel, hereby submit this memorandum of law in opposition to the motion to dismiss filed by Defendant Innovative Health Solutions, Inc. ("IHS").

## INTRODUCTORY STATEMENT

Dr. Bhambhani's First Amended Class Action Complaint ("FAC[1]") outlines a detailed effort by the Defendants to deceive healthcare providers into purchasing a medical device based on material misrepresentations as to the nature of that medical device and the billing codes that could be used to seek reimbursement for it. That IHS and its Sales Agents attempted to cover their tracks with token "disclaimers" that they "do not get involved in billing and coding" while simultaneously providing billing and coding advice does not change the facts Dr. Bhambhani pleads: IHS and its co-defendants made material misrepresentations about the Neuro-Stim System ("NSS") device throughout their courtship of and relationship with Dr. Bhambhani and similarly situated healthcare providers.

Despite IHS's attempts in its motion to distance itself from its co-defendants, Dr. Bhambhani more than plausibly alleges an agency relationship between IHS, on the one hand, and Innovative Healthcare Solutions, LLC ("IHCS") and Acclivity Medical, LLC ("Acclivity"), its Sales Agents, on the other. Because Dr. Bhambhani plausibly alleges the existence of this agency relationship, she also plausibly alleges that IHS can be held accountable for the misrepresentations—both the affirmative misrepresentations and material omissions—of its agents' successful efforts to sell the NSS device to Dr. Bhambhani, and hundreds, if not thousands, of similarly situated healthcare providers throughout the country. In the end, the Defendants'

---

[1] "FAC" refers to the First Amended Complaint, filed with this Court on April 15, 2019 [ECF No. 23].

scheme was so effective that when it all came tumbling down, Dr. Bhambhani was left in excess of $1,000,000.00 in damages.

The FAC plausibly alleges that IHS and its Sales Agents made numerous express misrepresentations about material facts, conveyed half-truths about material facts, and omitted material facts about the nature of the NSS device and the proper codes providers must use to be reimbursed for the device and services associated with its implantation. These misrepresentations were made with the obvious purpose of conning Dr. Bhambhani and similarly situated healthcare providers into purchasing large quantities of the device and leaves those providers solely with the risk of reimbursement refund damages by making the device unreturnable to IHS and by only allowing a 60-90 return window for its Sales Agents.

Dr. Bhambhani also plausibly alleges that IHS and its Sales Agents' representations were knowingly and intentionally false because the Defendants knew before entering into a contractual relationship with Dr. Bhambhani that in 2014 the device was only approved by the FDA for electro acupuncture, administered by a qualified practitioner of acupuncture only, and that in 2011 the NSS device was ineligible for reimbursement by Medicare under the provided billing protocols. This knowledge was due to the NSS's substantial similarity to IHS's P-STIM device which was already deem by Medicare to not satisfy the coding sequence set forth in the Physician Power Point Slide Show. This knowledge of Medicare's treatment of IHS's P-STIM device was a material fact that the Defendants had superior knowledge of and it was not publicly available to or otherwise discoverable by Maryland donors through reasonable diligence.

Finally, the remainder of IHS's arguments rest on misstatements of the law and misplaced summary judgment arguments which do not speak to the sufficiency of Dr. Bhambhani's negligent misrepresentation, negligence, civil conspiracy, or declaratory judgment claims. In all, IHS's

motion to dismiss should be denied in its entirety as Dr. Bhambhani plausibly pleads all of her causes of action and pleads them with particularity where required.

## SUMMARY OF DR. BHAMBHANI'S ALLEGATIONS

Dr. Bhambhani is one of many healthcare providers who were sold the NSS medical device by IHS via "exclusive-rights" sales-agent distributors ("Sales Agents"), including but not limited to IHCS and Acclivity. FAC ¶ 1, 3, 17. Along with the device, IHS and its Sales Agents gave Dr. Bhambhani direct and very specific advice concerning how to bill and collect health insurance reimbursements (including from Medicare) for the cost of the device, as well as the professional medical services associated with the device's so-called implantation. FAC ¶¶ 1, 3-6, 17, 19, 22-23, 26, 29-30.

To entice Dr. Bhambhani and other similarly-situated medical providers to purchase the NSS, the Defendants promoted the NSS as billable under a particular set of medical billing codes, including Current Procedural Terminology ("CPT") 64555, Percutaneous Implantation of Neurostimulator Electrodes at a Peripheral Nerve. FAC ¶ 4. IHS and its Sales Agents claimed this code, and the ancillary codes billed with it covering both professional and facility charges, would entitle Dr. Bhambhani to between $4,800.00 and $11,400.00 per patient in reimbursement from health insurers (including Medicare) for a procedure that takes ten minutes to perform with little associated cost. FAC ¶ 5. IHS's reimbursement-driven sales and marketing efforts were successful. Indeed, IHS sold tens of thousands of NSS devices throughout the United States and touted itself as the market leader of the industry. *Id.* For example, between September 2015 and June 2016, Dr. Bhambhani purchased 420 NSS devices from IHS through its Sales Agents, spending more than $264,000.00, based on IHS's promises of lucrative third-party payer reimbursement. FAC ¶¶ 28, 33.

3

Dr. Bhambhani was originally solicited by IHS through IHCS on August 17, 2015, when she received an email from Robert A. Smith ("Smith"), the Vice President of Sales and Marketing for IHCS. FAC ¶ 18. This solicitation introduced IHS's NSS device and enclosed the "Physician Power Point Slide Show," which presented extraordinary levels of reimbursement. Among the representations made in the Physician Power Point Slide Show were the following: (1) the NSS is a patented, FDA approved peripheral nerve stimulator designed to provide field stimulation to peripheral and cranial nerves in the auricle over a 5-day period; (2) it is FDA approved for chronic and acute pain; (3) the NSS is the first and only FDA approved electro-auricular, peripheral nerve simulator currently on the market to treat acute and chronic pain; (4) the NSS is reimbursed by Medicare when performed at an ambulatory surgery center ("ASC"); (5) major health insurers, workers compensation insurers, and personal injury insurers pay for in office and ASC NSS services. FAC ¶¶ 18-19. Nowhere in the Physician Power Point Slide Show, or any other information or document provided to Dr. Bhambhani by IHS or its Sales Agents, was it disclosed that the NSS was in fact cleared by the FDA as merely an electro acupuncture device for use in the practice of acupuncture by qualified practitioners of acupuncture – not a device for chronic or acute pain management by a qualified medical doctor as advertised by Defendants. FAC ¶ 25.

The Physician Power Point Slide Show also promised guaranteed profits through a "turn-key program" with "no upfront cost" and a "90 [Day] Full Return Policy." FAC ¶ 20. The guarantee of profits was offered by two distinctly different programs: the "Full Service Program" and the "Direct Purchase Program." FAC ¶ 21. The difference between the two programs was relatively straightforward: with the Full-Service Program, IHCS (or its affiliates, including Acclivity) would provide "full-service" billing and collections services on top of providing the IHS device itself. *Id.* Even without these so-called "full-service" billing services, IHCS and/or

Acclivity still provided the billing and collections protocols they received from IHS to healthcare providers as part of the Direct Purchase Program. FAC ¶ 22. These billing protocols were identical to the billing protocols IHS created to promote the "P-STIM" device, a virtually identical electro acupuncture device successfully marked by IHS as a surgical implant. FAC ¶ 23. In no uncertain terms, these protocols drafted by IHS included specific coding advice whereby providers were specifically directed to bill the NSS device under CPT 64555. *Id.*

IHS's relationship with Sales Agents IHCS and Acclivity became clear as discussions between the parties continued. FAC ¶ 26-27. IHCS sent an email to Dr. Bhambhani attaching certain NSS "billing information," including a Precertification and Billing Overview, a NSS Precertification Form, and a NSS Procedure Note Template; all of which were provided to IHCS by IHS. FAC ¶ 26. Further IHCS email solicitations contained certain clinical studies purporting to extol the efficacy of the NSS device, copying Brian Carrico ("Carrico"), "one of the owners and pioneers of this technology," and the current CEO of IHS. FAC ¶ 27.

In reliance upon the Defendants' statements concerning the efficacy of the NSS device, as well as the corresponding reimbursement figures, Dr. Bhambhani decided to purchase and did, in fact, enroll in the IHCS "Full Service Program," at a cost of $900 per NSS device. FAC ¶ 28. Dr. Bhambhani made orders that were fulfilled through Acclivity on September 14, 2015 and October 6, 2015. *Id.* During the "Full Service" relationship, Dr. Bhambhani had billing and coding questions which were answered by IHCS in great detail. FAC ¶ 29. For example, IHCS: (1) stated that a modifier is no longer necessary to bill CPT code 64555 for the NSS service; (2) guided Dr. Bhambhani on what to do when a Medicare claim is rejected; and, (3) instructed how to successfully "rebill" such a rejected Medicare claim. *Id.* In later correspondence, IHCS provided more coding advice regarding which codes to use for workers compensation claims and confirmed

the propriety of the same code sequence set forth on the Physician Power Point Slide Show. FAC ¶ 30.

After receiving a post-payment audit request from the Centers for Medicare and Medicaid Services ("CMS") for billing and corresponding treatment records related solely to NSS billing, Dr. Bhambhani made a return request for her remaining NSS inventory. FAC ¶¶ 34-35. IHS's current CEO, Carrico, responded to Dr. Bhambhani's return request directly, stating that "IHS has not and does not get involved in billing and coding in any way." FAC ¶ 36. He then went on to suggest that IHS could not accept the device returns, but that IHS would be happy to assist her in billing them to commercial insurance companies, and recommended a third-party billing service that would "do a tremendous job of pre-authorizing and billing for the NSS which will allow you to have 0 headaches, help patients, be very profitable, and be protected." *Id.*

Unbeknownst to Dr. Bhambhani, but known to all Defendants, in 2011 IHS's P-STIM device had already been deemed to not satisfy the coding sequence set forth in the Physician Power Point Slide Show, other promotion materials, and information statements provided by the Defendants. FAC ¶¶ 15-16, 31. In April 2011, CMS created Healthcare Common Procedure Coding System ("HCPCS") code S8930: Electrical stimulation of auricular acupuncture points, each 15 minutes of personal one-on-one contact with the patient. FAC ¶ 31. CMS also ruled that electro acupuncture services reported to CMS under that code were excluded from coverage by most Medicare Administrative Contractors ("MACs") starting immediately. *Id.* Despite knowing that their characterization of the NSS as a medical service rather than an acupuncture device, and the coding instructions they were giving for it, were incorrect due to CMS's decision that the substantially equivalent P-STIM device was an acupuncture device, the Defendants concealed these facts from Dr. Bhambhani and other members of the putative class, and falsely stated their

coding, billing, and reimbursement instructions were accurate and appropriate. FAC ¶ 32.

## SUMMARY OF IHS'S MOTION TO DISMISS

On February 6, 2019, Dr. Bhambhani filed a class action complaint against IHS and Acclivity, alleging fraudulent misrepresentation, intentional misrepresentation by concealment or non-disclosure, negligent misrepresentation, and negligence; and requested a declaratory judgment pursuant to 28 U.S.C. § 2201(a). Dkt. No. 1. On April 15, 2019, Dr. Bhambhani filed her FAC against IHS, Acclivity, and IHCS, alleging additional facts, joining IHCS to all counts, and adding a new count alleging civil conspiracy among IHS, Acclivity, and IHCS. Dkt. No. 23. On May 15, 2019, IHS moved to dismiss the FAC. Dkt. No. 29.

In so many words, IHS's motion to dismiss asserts the following arguments: *First*, IHS asserts that Dr. Bhambhani fails to state a claim for fraudulent misrepresentation because the FAC does not identify any specific misrepresentations made by IHS directly to Dr. Bhambhani, IHSb[2] 3-6, and that those fraudulent misrepresentation that are identified, Dr. Bhambhani does not plead them with the required particularity for fraud-based causes of action. IHSb 8-10.

*Second*, IHS extends the same rational against Dr. Bhambhani's fraudulent concealment claim as it argues against Dr. Bhambhani's fraudulent misrepresentation, but IHS does add that it also has no duty to disclose any information to Dr. Bhambhani and so did not conceal or fail to disclose any material facts. IHSb 6-8.

*Third and Fourth*, IHS combines its arguments against Dr. Bhambhani's negligence-based claims of negligent misrepresentation and negligence and IHS maintains that the pleading issues are the same for both causes of action: that Dr. Bhambhani only alleges an economic injury which

---

[2] "IHSb" refers to the Memorandum of Law in Support of IHS's Motion to Dismiss, filed with this Court on May 15, 2019 [ECF No. 29].

cannot be recovered without also pleading a physical injury as actual damages and that Dr. Bhambhani does not allege any privity of contract "or equivalent" with IHS. IHSb 11-12. IHS also restates its assertion that Dr. Bhambhani pleads no direct representations by IHS. IHSb 10-11.

*Fifth*, IHS states that Dr. Bhambhani fails to sufficiently plead a cause of action for civil conspiracy because Dr. Bhambhani does not plead any viable underlying intentional or negligent tort claims to sustain the cause of action for civil conspiracy. IHSb 12-13. IHS also argues that Maryland does not recognize a cause of action for conspiracy to commit negligence. IHSb 13-14.

*Sixth*, as its final argument, IHS asserts that Dr. Bhambhani fails to sufficiently plead a cause of action for declaratory judgment under the Declaratory Judgment Act because (1) all of Dr. Bhambhani's underlying claims fail, (2) Dr. Bhambhani has an alternative source of relief available via the Office of Administrative Law appeal process and the ability to assert other causes of action here, and (3) the Declaratory Judgment Act is discretionary. IHSb 14-15.

## LEGAL ARGUMENT

## I.       STANDARD OF REVIEW

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The same applies to "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

However, the circumstances constituting fraud claims must be plead "with particularity." Fed. R. Civ. P. 9(b). "The 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse*

*Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur

R. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1297, at 590 (2d ed. 1990); *see also*

*Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir. 1990); *In re Cryomedical*

*Sciences, Inc. Securities Litigation*, 884 F. Supp. 1001, 1012-13 (D. Md. 1995); *In re Medimmune,*

*Inc. Securities Litigation*, 873 F. Supp. 953, 964-69 (D. Md. 1995). Allegations that amount to

mere "fraud by hindsight" do not satisfy the particularity requirements of Fed. R. Civ. P. 9(b).

*Hillson Partners Ltd. Partnership v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994).

When a pleading fails to meet the pleading standard of Fed. R. Civ. P. 8(a)(2) or Fed. R.

Civ. P. 9(b), a party may assert a motion to dismiss for "failure to state a claim upon which relief

can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the court determines

whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at

679. "A claim has facial plausibility when the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing

*Twombly*, 550 U.S. at 556). However, the same presumption of truth is not applied to conclusory

statements or legal conclusions. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citing *Iqbal*,

556 U.S. at 678).

Finally, the Supreme Court has held that "a well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very

remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974)); s*ee also Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a probability

requirement."). The complaint must merely nudge the claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

## II.   DR. BHAMBHANI HAS PLAUSIBLY STATED A CLAIM FOR FRAUDULENT MISREPRESENTATION.

IHS claims Dr. Bhambhani failed to state a claim for fraudulent misrepresentation because the FAC does not state any misrepresentations made by IHS directly to Dr. Bhambhani, IHSb 3-6, and that any fraudulent representations that Dr. Bhambhani does identify, Dr. Bhambhani pleads without the required particularity, IHSb 8-10. IHS ignores the clear depiction of an agency relationship between it and IHCS and Acclivity in the FAC. Moreover, the specifics of its Sales Agents' misrepresentations to Dr. Bhambhani are laid out in painstaking detail—far above even the heightened pleading standards mandated by Fed. R. Civ. P. 9(b). Ergo, IHS's motion must be denied as it relates to Dr. Bhambhani's fraudulent misrepresentation claim.

### A.   IHCS and Acclivity Were Acting as Agents of IHS When Misrepresentations Were Communicated to Dr. Bhambhani.

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006). "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." RESTATEMENT (THIRD) OF AGENCY § 2.03 (2006). Whether an agency relationship exits is a question of fact. *P. Flanigan & Sons v. Childs*, 251 Md. 646 (1967); thus plausibly pleading the existence of such a relationship plainly suffices under Fed. R. Civ. P. 8.

In *Green v. H & R Block, Inc.*, the court recognized that "[t]he creation of an agency relationship ultimately turns on the parties' intentions as manifested by their agreements or actions." 355 Md. 488, 503 (1999); *see also American Cas. Co. of Reading, Pa. v. Ricas*, 179 Md. 627, 631 (1941). "The question is ultimately one of intention." *Ricas*, 179 Md. at 631.

Although an agency relationship "can be created [either] by express agreement or by inference from the acts of the agent and principal," there are several factors that are relevant to determine the existence of such a relationship. *Id.*, at 503-04; *see also Heslop v. Dieudonne*, 209 Md. 201 (1956). These factors include the agent's power to alter the legal relations of the principal, the agent's duty to act primarily for the benefit of the principal, and the principal's right to control the agent. *Id.*; *see also United Capitol Ins. v. Kapiloff*, 155 F.3d 488, 498 (4th Cir. 1998); *Schear v. Motel Management Corp.*, 61 Md. App. 670, 687 (1985); RESTATEMENT (THIRD) OF AGENCY §§ 3.01-3.05 (2006). These factors, however, are "neither exclusive nor conclusive considerations in determining the existence of an agency relationship." *Green*, 355 Md. at 506.

"The law is clear that where the alleged agency is dependent upon the acts of the parties, the burden of proof rests upon the person alleging the agency to show not only its existence but its nature and extent. There must also be a showing not only that a person is an agent of his principal but that in the particular transaction he was acting within the scope of his employment and that the acts in question out of which the tort arose were within the scope of the agent's authority." *Medical Mut. Liability Ins. Soc. v. Mutual Fire, Marine & Inland Ins. Co.*, 37 Md. App. 706, 713 (1977) (citations omitted); *accord Homa v. Friendly Mobile Manor*, 93 Md. App. 337, 359 (1992).

Further, "apparent authority 'arises where the purported agent, who may or may not have actual authority to act for the purported principal, but because of conduct on the purported principal's part the third person believes that the authority to act exists." *Progressive N. Ins. Co.*

11

*v. Airborne Express, Inc.*, 2005 U.S. Dist. LEXIS 15075, *33 (D. Md. 2005) (quoting *Mutual Fire*, 37 Md. App. at 720). Apparent authority also arises when "[t]he principal, either actively or passively, creates a situation that causes the third person to be misled." *Id.*

In the very first email from IHCS to Dr. Bhambhani on August 18, 2015, Smith indicated the "exclusive" nature of IHCS's distribution relationship with IHS. FAC ¶ 18. This suggests that IHS has an express agreement with IHCS regarding exclusive distribution, therefore the FAC plausibly alleges the existence of an express agreement between IHS and IHCS, creating an agency relationship. At the pleadings stage, Dr. Bhambhani is not required to know the specifics of any such agreement, or its scope and breadth; though the FAC plainly suggests that one likely exists given IHCS's specific representation and IHS's own admission that Acclivity is IHS's "distributor" rather than a "sub-distributor," as IHS characterized IHCS. IHCb 7. This suggests that IHS also has a distributor agreement with Acclivity who, by extension, had a sub-distributor agreement with IHCS. IHS's admission coupled with the FAC, therefore, plausibly suggests agreements between IHS and both IHCS and Acclivity sufficient to withstand a motion to dismiss.

Further, from the start, IHCS also acted with apparent authority from IHS in all of its actions. In the same first email from IHCS to Dr. Bhambhani on August 18, 2015, IHCS supplied a link to a video labelled as "the property of Innovative Health Solutions" within the video and is a "private" designated video on the Vimeo video platform - meaning that only those with the exact URL are able to access the video. FAC ¶ 18.[3] This apparent authority was conveyed on or about

---

[3]  *Compare* Innovative Health Solutions, Inc., NSS™ Educational Video, available at https://vimeo.com/user17291718/review/108118730/56e5ec2571 (last visited May 29, 2019) *with* Vimeo, Innovative Health Solutions (Pro) Profile, https://vimeo.com/innovativehealthsolution (last visited May 29, 2019) (public profile page for IHS which does not list a video named "NSS™ Educational Video"). This video was posted by user "17291718" which Vimeo identifies as IHS but the video is private because it does not appear on IHS's public profile. Therefore, IHCS had to

9:04 P.M. on September 9, 2015, (prior to Dr. Bhambhani entering into any agreement with IHCS) when Carrico of IHS was first copied on correspondence with Dr. Bhambhani. FAC ¶ 27, Exhibit 5. A few minutes later on that same day, IHCS sent an email to Dr. Bhambhani with two additional privately listed IHCS videos: "Neuro-Stim™ Training Video" and "NSS Dorsal Array Placement." *Id*.

Finally, after Dr. Bhambhani entered into an agreement with IHCS, it was clear that IHCS was still acting with apparent authority of IHS because when Dr. Bhambhani notified IHCS of her Medicare audit issues, IHS contacted Dr. Bhambhani directly. FAC ¶ 36, Exhibit 8. That IHS initiated this conversation after Dr. Bhambhani contacted IHCS indicates that IHCS contacted IHS and makes it clear that the FAC pleads a plausible ongoing agency relationship between IHCS and IHS after Dr. Bhambhani entered into an agreement with IHCS.

For the above reasons, Dr. Bhambhani has plausibly alleged that IHCS and Acclivity qualify as agents of IHS through expressed agency authority and/or apparent agency authority. Thus, Dr. Bhambhani has plausibly alleged that IHS can be held liable for misrepresentations made to her regarding IHS's NSS device by either IHCS or Acclivity.

### B.   Dr. Bhambhani Sufficiently Pleads Specific Material Misrepresentations with the Particularity Required by Rule 9(b).

In order for a plaintiff to recover for fraudulent misrepresentation, or deceit, the following elements must be proven: "(1) that the representation made is false; (2) that its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the

---

receive the direct link from IHS as only IHS has access to the ability to post, create, and generate direct links for privately hosted videos from within its password protected Vimeo profile.

misrepresentation, but had a right to rely upon it in the full belief of its truth, and that he would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that he actually suffered damage directly resulting from such fraudulent misrepresentation." *Gittings v. Von Dorn*, 136 Md. 10, 16 (1920); *Moscarillo v. Prof'l Risk Mgmt. Servs.*, 398 Md. 529, 544 (2007); *Nails v. S & R*, 334 Md. 398, 415-16 (1994) (citing *Everett v. Baltimore Gas & Elec.*, 307 Md. 286, 300 (1986)); *Martens Chevrolet v. Seney*, 292 Md. 328, 333-34 (1982); *James v. Weisheit*, 279 Md. 41, 44-45 (1977); *Suburban Mgmt. v. Johnson*, 236 Md. 455, 460 (1964); *Schmidt v. Millhauser*, 212 Md. 585, 592-93 (1957); *Appel v. Hupfield*, 198 Md. 374, 378-79 (1951).

### 1. *Dr. Bhambhani Plausibly Pleads, and IHS does not Contest, that IHS Knew the Representations Made by its Sales Agents were False.*

"A 'false representation' is a statement, conduct, or action that intentionally misrepresents a material fact." *Sass v. Andrew*, 152 Md. App. 406, 429 (2003). "A 'material' fact is one on which a reasonable person would rely in making a decision." *Id.* at 430. Because materiality is an objective test, dependent on a reasonable person's judgment, "fraud claims must be based on fact, not vague statements or expressions of opinion." *Hogan v. Maryland State Dental Association*, 155 Md. App. 556, 567 (2004). Similarly, "fraud cannot be predicated on statements which are promissory in their nature, and therefore an action of deceit will not lie for the unfulfillment of promises or the failure of future events to materialize as predicted." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 196 (1995) (quoting *Appel*, 198 Md. at 379); *Boulden v. Stilwell*, 100 Md. 543, 552 (1905). However, "[i]n actions for deceit [the court] recognize[s] a clear distinction between (1) representations of past or existing fact and (2) expressions of opinion as to what will happen in the future." *Appel*, 198 Md at 379. "Ordinarily, however, the representation must be definite, and mere vague, general, or indefinite statements are insufficient, because they

should, as a general rule, put the hearer upon inquiry, and there is no right to rely upon such statements." *Fowler v. Benton*, 229 Md. 571, 579 (1962), *cert. denied sub nom., Fowler v. Md. of County Comm'rs*, 375 U.S. 845 (1963); *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 162 (2003); Restatement (Second) of Torts § 530, cmt. a (1997) (excludes mere "puffing" in a business transaction from actionable fraud).

IHCS, as an agent of IHS, made multiple misrepresentations regarding IHS's NSS device and the appropriate billing for services associated with the same; and the time, place, and substance of these misrepresentations are set forth in the FAC. These representations include: (1) representing on August 17, 2015, by email, that the NSS device was an FDA approved device for medical doctors to administer at an ASC for the treatment of chronic and acute pain, FAC ¶ 18, Exhibit 2, when, in fact, IHS and its Sales Agents knew in 2014 that the device was only approved by the FDA for electro acupuncture, administered by a qualified practitioner of acupuncture only, FAC ¶¶ 2, 25; and, (2) also on August 17, 2015, by email, providing billing procedures for reimbursement known to be fraudulent, FAC ¶ 18, Exhibit 2, as well as multiple related statements regarding false billing and coding information by emails on September 8, 28, 29, and December 8, 2015, FAC ¶¶ 26, 29-30, Exhibits 4, 6-7, when, in fact, all Defendants knew in 2011 that the NSS device was ineligible for reimbursement by Medicare under the provided billing protocols, FAC ¶¶ 31-32. IHS was aware of agent-IHCS's statements throughout the courtship of Dr. Bhambhani because the FAC clearly pleads that IHS was receiving ongoing copies of Dr. Bhambhani's emails. FAC ¶¶ 27, 36. Therefore, Dr. Bhambhani pleads IHS's misrepresentations, via its Sales Agents, with particularity, and that these misrepresentations were made while IHS knew the content of those misrepresentation was false.

15

While IHS's Sales Agents did provide a copy of the FDA 510(k) Clearance Letter K140530 to Dr. Bhambhani on September 17, 2015, after Dr. Bhambhani had already made her first order of NSS devices, this does not negate the falsity of the Sales Agents' (and thus IHS's) statements at the time they were made. Duplicitous self-serving disclaimers or caveats that IHS and its Sales Agents "do not provide billing or coding advice" while actually providing billing and coding advice does not negate the falsity of IHS's lies or that those lies were, in fact, statements providing billing and coding advice. Therefore, Dr. Bhambhani plausibly pleads the first element of fraudulent misrepresentation with sufficient particularity.

2. ***Dr. Bhambhani Pleads that both IHS and its Sales Agents Acted with a Purpose to Defraud Dr. Bhambhani.***

"[F]raudulent intent can be inferred from circumstantial evidence." *First Union*, 154 Md. App. at 159; *State v. Raines*, 326 Md. 582, 591, *cert. denied*, 506 U.S. 945 (1992); *Geisey v. Holberg*, 185 Md. 642 (1946). Further, "[f]raud cannot be easily proved by direct evidence because of the secrecy with which it generally is surrounded, but a court of equity cannot close its eyes to a series of circumstances, all pointing one way, indicating one purpose in view." *First Union*, 154 Md. App. at 159.

The FAC adequately pleads circumstantial evidence of a purpose by IHS and its Sales Agents to defraud Dr. Bhambhani for their own financial gain. IHS and its Sales Agents had a general aim to defraud Dr. Bhambhani to purchase hundreds of NSS devices that is evidenced by IHCS's August 17, 2015 , blind and unsolicited email to Dr. Bhambhani which toted the fact that Dr. Bhambhani was one of the "select practices" that were allowed to participate in the "Full Service Program"—the program which resulted in higher financial benefits to Defendants than with the presumedly less exclusive "Direct Purchase Program." FAC ¶¶ 18, 21. IHS and its Sales Agents' intent was further evidenced by IHCS's continued email communication with Dr.

16

Bhambhani in order to assist Dr. Bhambhani with pre-certifying her patients for insurance coverage for the NSS device, as well as providing continued coding advice. FAC ¶¶ 26-30. Finally, IHS and its Sales Agents' aim was to profit from the sale of the NSS device, and this was made clear by IHCS's short 90-day return policy for unused devices in the "Full Service Program," and IHS's refusal to honor any kind of device return. FAC ¶¶ 21, 35-36. Therefore, Dr. Bhambhani plausibly pleads the second element of fraudulent misrepresentation.

### 3. *Dr. Bhambhani Pleads Her Reliance Upon IHS and its Sales Agents' Misrepresentations.*

"Reliance at its core is the action or inaction of a party that results from the misrepresentation of another." *White v. Kennedy Krieger Inst.*, 221 Md. App. 601, 635 (2015) (citing *Nails v. S & R, Inc.*, 334 Md. 398, 416-17 (1994) (holding that reliance exists if "the misrepresentation substantially induced the plaintiff to act")). "Despite the instances where recovery for fraud has been sanctioned where the allegedly fraudulent statement was not made directly to the plaintiff, we have not permitted recovery without a demonstration that the plaintiff relied, either directly or indirectly, on the relevant misrepresentation." *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 336 (2013). The court later made it clear: "to the extent it needs saying, a complaint must plead reliance on such a misrepresentation to survive a motion to dismiss." *Wilson v. Exxon Mobil Corp.*, 2015 Md. App. LEXIS 733, *10 (2015).

The FAC alleges that Dr. Bhambhani relied on IHS and its Sales Agents' misrepresentations when deciding whether to purchase the NSS device via the "Full Service Program." FAC ¶ 32. Dr. Bhambhani continued to rely on this information for almost a year as Dr. Bhambhani continued to submit orders and receive shipments of the device. FAC ¶ 33. Therefore, Dr. Bhambhani plausibly pleads this third element of fraudulent misrepresentation.

4. *Dr. Bhambhani Pleads Actual Damage Suffered Because of IHS and its Sales Agents' Misrepresentations.*

RESTATEMENT (FIRST) OF TORTS § 549 (1938) states the measure of damages for fraudulent misrepresentation as follows: "the pecuniary loss which results from the falsity of the matter misrepresented, including, (a) the difference between the value of the thing bought, sold or exchanged and its purchase price or the value of the thing exchanged for it, and (b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the truth of the representation." Upon discussing same, Maryland Courts have found that "[t]he consequential damages suffered as a result of the purchaser's reliance upon the truth of the representation, under the Restatement, are considered as an additional, independent loss." *Beardmore v. T.D. Burgess Co.*, 245 Md. 387, 391 (1967). Further, *McCormick, Damages* § 122 (1935), states the rule as follows: "Under accepted theory, the person defrauded is not always limited to the direct damage, that is, to compensation based on the difference between real and represented value or between what was given and what was received. We have seen that necessary expense may sometimes be allowed in addition."

The FAC adequately alleges damages suffered by Dr. Bhambhani as a result of IHS and its Sales Agents' fraudulent misrepresentations. Not only did Dr. Bhambhani suffer damage from the purchase price of the NSS device under the "Full Service Program," which amounted to more than $264,000.00, FAC ¶ 33, Dr. Bhambhani was also subject to a post-payment and pre-payment audit by Novitas, the MAC in Maryland, FAC ¶ 34, which resulted in refund demands exceeding $1,000,000.00. FAC ¶ 38. These are specifically alleged damages which resulted directly from Dr. Bhambhani's reliance on IHS and its Sales Agents' fraudulent misrepresentations. Therefore, Dr. Bhambhani plausibly pleads this final element of fraudulent misrepresentation.

For the above reasons, the FAC adequately pleads a plausible claim for fraudulent misrepresentation, with particularity, made by IHS, or by a Sales Agent attributable to IHS; therefore, IHS's motion to dismiss must be denied. To the extent the Court concludes that Dr. Bhambhani does not plead sufficient facts about the fraudulent misrepresentations with particularity, Dr. Bhambhani respectfully requests leave to amend her complaint.

### III.  DR. BHAMBHANI HAS ADEQUATELY STATED A CLAIM FOR FRAUDULENT CONCEALMENT BECAUSE REPRESENTATIONS ATTRIBUTABLE TO IHS OMITTED MATERIAL FACTS.

IHS claims that Dr. Bhambhani has failed to sufficiently plead fraudulent concealment because IHS had no duty to disclose any information to Dr. Bhambhani, IHSb 6-8, and that any fraud that Dr. Bhambhani pleads is not pleaded with particularity, IHSb 8-10. Not only does Dr. Bhambhani plead her claim for fraudulent concealment with adequate particularity, there is a large body of case law that recognizes a cause of action for fraudulent concealment absent a duty to disclose where representations conceal material facts. In other words, once an otherwise unbound party choose to speak, they have an obligation to not merely convey half-truths.

The essential elements for a claim of fraudulent concealment include: "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *Green v. H & R Block*, 355 Md. 488, 525 (1999). "Concealment and non-disclosure are closely related and in any given situation usually overlap . . . 'Concealment is any statement or other conduct which prevents another from acquiring knowledge of a fact, such as diverting the attention of a prospective buyer from a defect which otherwise he would have observed. When done without intent to mislead and without misrepresentation, it has no effect except where there is a duty of disclosure.'" *Fegeas v. Sherrill*, 218 Md. 472 (1958) (quoting

RESTATEMENT (FIRST) OF RESTITUTION § 8, cmt. b (1937)); *Lloyd v. GMC*, 397 Md. 108, 138 (2007).

"A fraudulent concealment claim is caused, in part, by the intentional failure to warn." *Lloyd*, 397 Md. at 139. This is further explained in *Frederick Road Limited Partnership v. Brown & Sturm*, 360 Md. 76, n.14 (2000), *citing Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 323-24 (1978):

> Absent a fiduciary relationship, this Court has held that a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence, see, *Walsh v. Edwards*, 233 Md. 552, 557 . . . (1964); *Fegeas*[, 218 Md. at 476] . . . and that, in such cases, the affirmative act on the part of the defendant must be more than mere silence; there must be some act intended to exclude suspicion and prevent injury, or there must be a duty on the part of the defendant to disclose such facts, if known. *Impala, supra*, 283 Md. at 323-24."

"For all intents and purposes, therefore, fraudulent concealment includes the situation where the defendant actively undertakes conduct or utters statements designed to, or that would, divert attention away from the defect. A claim of failure to disclose, on the other hand, requires only that the defendant remain silent about, or omit, facts that the defendant had a duty to disclose." *Lloyd*, 397 Md. at 138, fn. 11.

But, "[e]ven in the absence of a duty of disclosure, one who suppresses or conceals facts which qualify as material representations made to another may be guilty of fraud." *Finch v. Hughes Aircraft Co.*, 57 Md. App. 190, 239 (1984); *Brager v. Friedenwald*, 128 Md. 8, 32 (1916); RESTATEMENT (SECOND) OF TORTS § 551(2)(b) (1997). With this exception to the requirement that a plaintiff plead a duty to disclose in order to recover under fraud, Maryland courts have held that parties cannot tell half-truths and do have a duty to speak the whole truth when they make representations of fact that misconstrue the full picture; specifically:

> Where one is under no legal obligation to speak, his mere silence or his mere non-disclosure of material facts will not be sufficient, ***but if in addition to nondisclosure he makes "some active misstatements of fact, or, at all events, such a partial and fragmentary statement of fact," as entirely misleads one to his injury the legal situation is entirely changed***.

*Brager*, 128 Md. at 31-32 (emphasis added); *accord Fowler v. Benton*, 229 Md. 571, 581 (1962); *Walsh*, 233 Md. at 557; *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 197 (1995); *VF Corp. v. Wrexham Aviation Corp.*, 112 Md. App. 703, 713 (1996); *Hoffman v. Stamper*, 155 Md. App. 247, 304 (2004). Further, *"*half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations" and "[t]his rule recurs throughout the common law. In tort law, for example, if the defendant does speak, he must disclose enough to prevent his words from being misleading." *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2000, n.3 (2016) (internal quotations and citation omitted).

The RESTATEMENT (SECOND) OF TORTS § 529 cmt. a, states that "a statement that contains only favorable matters and omits all reference to unfavorable matters is as much a false representation as if all the facts stated were untrue." Comment (g) to § 551 of the RESTATEMENT (SECOND) OF TORTS, consistent with *Brager*, states:

> A statement that is partial or incomplete may be a misrepresentation because it is misleading, when it purports to tell the whole truth and does not . . . . ***When such a statement is made, there is a duty to disclose the additional information necessary to prevent it from misleading the recipient***. In this case there may be recovery either on the basis of the original misleading statement or of the nondisclosure of the additional facts.

Maryland courts have endorsed § 551 of the RESTATEMENT (SECOND) OF TORTS. *See Hoffman*, 155 Md. App. at 304; *Lubore v. RPM Assocs.*, 109 Md. App. 312, 341 (1996); *Finch*, 57 Md. App. at 233; *Wilson*, 2015 Md. App. LEXIS 733, at *8.

When the Sales Agents for IHS contacted Dr. Bhambhani and discussed the NSS device, FAC ¶ 18, IHCS was required to disclose any information required to prevent Dr. Bhambhani from being misled, or else IHCS, and thus IHS, is deemed to have concealed the information. When IHCS hailed the FDA approval of the NSS device as perfect for Dr. Bhambhani's practice and suitable for her to provide as a service to her patients, FAC ¶¶ 18-19, this was a misleading half-truth, FAC ¶ 25. While the FDA has approved the NSS device, it had only approved it for use for acupuncture services supplied by qualified acupuncture professionals, FAC ¶ 2, 37, so any characterization of the FDA approval as anything else, is, at best, a misleading half-truth. Further, all statements related to billing for the NSS device and the related services were also misleading because IHS, and its Sales Agents, knew that the NSS device would not be reimbursable by Medicare due to their unique and undisclosed knowledge of the history of the "substantially similar" P-STIM device. FAC ¶¶ 15-16, 31.

For the above reasons, the FAC adequately pleads a plausible claim for fraudulent concealment, with particularity, made by IHS, or by a Sales Agent attributable to IHS; therefore, IHS's motion to dismiss must be denied. To the extent the Court concludes that the FAC does not plead sufficient facts about the fraudulent concealment with particularity, Dr. Bhambhani respectfully requests leave to amend her complaint.

## IV.    DR. BHAMBHANI HAS ADEQUATELY STATED A CLAIM FOR NEGLIGENT MISREPRESENTATION BECAUSE ECONOMIC INJURIES ARE PROPER DAMAGES FOR A NEGLIGENT MISREPRESENTATION CLAIM.

IHS claims that Dr. Bhambhani has failed to sufficiently plead negligent misrepresentation because Dr. Bhambhani only alleges an economic injury, IHSb 11-12, and Dr. Bhambhani did not allege any privity of contract "or equivalent" with IHS, IHSb 12. IHS conflates the law of negligent misrepresentation with negligence; negligent misrepresentation claimants, unlike negligence

claimants, *are* entitled to recover economic damages. Further, most states, including Maryland, do not strictly require privity of contract or its equivalent where there is an intimate nexus between the parties, which Dr. Bhambhani also adequately pleads. Finally, with its response to Dr. Bhambhani's claim for negligent misrepresentation, IHS also restates its assertion that Dr. Bhambhani does not plead any specific representations by IHS, IHSb 10-11, however, this is clearly counter to the pleadings and, again, ignores the liability of misconduct attributable to IHS from its Sales Agents. *See* Part II(B), *supra.*

**A.    Dr. Bhambhani is Not Barred from Asserting Economic Injuries Without Pleading Physical Injury as Damages for a Negligent Misrepresentation Claim.**

It is true that under *Balfour Beatty Infrastructure Inc. v. Rummel Klepper & Kahl, LLP*, there is an economic loss doctrine that bars recovery of economic injury where there is no physical injury caused by negligent conduct between parties not in privity with one another, 451 Md. 600, 612 (2017), however, this case was discussing a claim for negligence, not negligent misrepresentation, and the court went on to ultimately find in that case that recovery of economic losses was indeed permitted, *id.* at 614. "To say…that a claim arises out of 'negligence,' rather than 'misrepresentation,' when the loss suffered by the injured party is caused by the breach of a …duty to use due care in obtaining and communicating information upon which the party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional…tort of 'negligent misrepresentation,'…." *Village of Cross Keys v. U.S. Gypsum Co.*, 315 Md. 741, 755 (1989) (*quoting United States v. Neustadt*, 366 U.S. 696, 706 (1961)). A claim of negligent misrepresentation does not merge into a negligence claim because if "the plaintiff would have a cause of action based on the underlying negligence independent of the misrepresentation, that cause of action survives and is not merged into the later misrepresentation." *Village of Cross Keys*, 315 Md. at 755 (*citing Block v. Neal*, 460 U.S. 289, 296-98 (1983)).

23

RESTATEMENT (SECOND) OF TORTS, § 552(1) (1997), and the cases which support its doctrine, state: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *See also Village of Cross Keys,* 315 Md. at 754 (recognizing pecuniary loss liability for negligent misrepresentation claims). Further, Maryland courts have consistently held that "a plaintiff is not required to suffer personal physical injury to recover under a theory of negligent misrepresentation" and that pecuniary losses qualify as adequately alleged damages. *Lloyd*, 397 Md. at 137 (*citing Martens Chevrolet,* 292 Md. at 335-36.

IHS attempts to group the elements of Dr. Bhambhani's claim for negligence and negligent misrepresentation together even though they are entirely different tort claims. Maryland courts recognize that economic damages are a type of loss that independently qualifies as recoverable damages for a negligent misrepresentation claim. Therefore, that Dr. Bhambhani did not suffer a physical injury as a result of purchasing and administering the NSS device and only alleges economic damages, does not render her negligent misrepresentation claim deficient.

**B.      Dr. Bhambhani Adequately Pleads a Privity of Contract Equivalent with IHS Because Dr. Bhambhani Pleads an Intimate Nexus Between IHS and Dr. Bhambhani.**

Most states, including Maryland, recognize privity is not strictly required for recovery under a negligent misrepresentation claim or a negligence claim. *See Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 32 (1986) ("In following the modern trend, we hold that privity is not an absolute prerequisite to the existence of a tort duty"). Generally, "when the failure to exercise due care creates a risk of economic loss only, and

not the risk of personal injury, [Maryland Courts] have required an 'intimate nexus' between the parties as a condition to the imposition of tort liability." *Swinson v. Lords Landing Vill. Condo.*, 360 Md. 462, 477 (2000) (citing *Jacques v. First Nat'l Bank*, 307 Md. 527, 534 (1986); *Village of Cross Keys*, 315 Md. at 753)). The intimate nexus analysis has been applied in Maryland to permit recovery of economic loss in negligent misrepresentation and negligence suits without contractual privity between: (1) a bank and its client, *see Jacques*, 307 Md. at 534-35, because of the relationship and dealings between the parties and that the customers were "particularly vulnerable and dependent" on the bank in the loan application process, *Id.* At 540-41; (2) a title company and a purchaser of real property, see *100 Inv. Ltd. P'ship v. Columbia Town Center Title Co.*, 430 Md. 197, 225 (2013); (3) and an accounting firm and a third-party investor, see *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 693-94 (2000), by applying a three prong test from New York for certified public accountants, with an emphasis on the third prong – conduct linking the parties. *See also Premium of Am., LLC v. Sanchez*, 213 Md. App. 91, 95, 108-15 (2013) (applying the intimate nexus analysis to the marketing of viatical settlements, an "unusual context"). There are many cases where courts have declined to apply the "privity equivalent" test in construction cases in lieu of contract claims, *see Balfour Beatty*, 226 Md. App. at 448-49 (discussing cases outside of Maryland declining extension of economic loss rule exceptions to construction cases) unless there was a special relationship, excessive control, or extensive supervision involved, *Id.* at 449-590.

Dr. Bhambhani sufficiently pleads an intimate nexus between Dr. Bhambhani and IHS because Dr. Bhambhani pleads the existence of a direct and ongoing purchasing relationship between Dr. Bhambhani and IHS's Sales Agents, including their direct involvement in the coding and billing of Dr. Bhambhani's services using IHS's fraudulent billing protocol as part of the "Full

Service Program." FAC ¶¶ 18, 26-27, 35-26, and Part II(A), *supra*. Further, like *Jacques*, the uniquely vulnerable nature of Medicare beneficiaries presents a heightened level of dependency on their treating providers, and, by extension, those entities that the Medicare providers rely upon to provide supporting products; and billing and coding advice and services for Medicare services. Like *Jacques*, 307 Md. at 540-41, this is the type of case where the intimate nexus analysis permits purely economic damages for negligent misrepresentation.

For the above reasons, the FAC adequately pleads a plausible claim for negligent misrepresentation, by pleading false statements made by IHS, or by a Sales Agent attributable to IHS, adequately pleading recoverable economic damages, and adequately pleading an intimate nexus relationship between IHS and Dr. Bhambhani which serves as a privity substitute; therefore, IHS's motion to dismiss must be denied.

## V.       DR. BHAMBHANI HAS ADEQUATELY STATED A CLAIM FOR NEGLIGENCE BECAUSE RECOVERY OF PURE ECONOMIC DAMAGES IS PERMITTED WHERE THERE IS AN INTIMATE NEXUS BETWEEN THE PARTIES.

IHS claims that Dr. Bhambhani has failed to sufficiently plead negligence because Dr. Bhambhani only alleged an economic injury, IHSb 11-12, and Dr. Bhambhani did not allege any privity of contract "or equivalent" with IHS, IHSb 12. Once again, IHS misconstrues Maryland law because Dr. Bhambhani can recover economic damages through a negligence cause of action without physical injury or privity between the parties where there is an intimate nexus between the parties, which Dr. Bhambhani plausibly pleads in the FAC.

The economic loss doctrine generally bars recovery of solely economic injuries for negligence claims where there is no privity between the parties, however, Maryland does not strictly require privity even with a negligence claim. *See* Part IV(A) and (B), *supra*. Pure economic

damages recovery is allowed in a negligence claim where the parties are not in privity when there is an intimate nexus between the parties. *Swinson*, 306 Md. at 477.

Like with negligent misrepresentation, see Part IV, *supra*, Dr. Bhambhani adequately pleads an intimate nexus relationship between IHS and Dr. Bhambhani in order for Dr. Bhambhani's negligence claim for pure economic damages to survive the pleading stage of litigation. *See* FAC ¶¶ 18, 26-27, 35-26, and Part II(B), *supra*. Therefore, IHS's motion to dismiss must be denied.

## VI.   DR. BHAMBHANI HAS ADEQUATELY STATED A CLAIM FOR CIVIL CONSPIRACY BECAUSE MULTIPLE INTENTIONAL UNDERLYING TORTS ARE PLAUSIBLY PLEADED.

IHS claims that Dr. Bhambhani has failed to sufficiently plead civil conspiracy because Dr. Bhambhani did not plead any viable intentional or negligent misrepresentation claims as the underlying tort for conspiracy, IHSb 12-13, and Maryland does not recognize a cause of action for conspiracy to commit negligence, IHSb 13-14. While there may be no Maryland tort for conspiracy to commit negligence, Dr. Bhambhani pleads multiple plausible intentional torts sufficient to sustain a cause of action for conspiracy. Further, IHS does not dispute that Dr. Bhambhani sufficiently pleads the agreement between the Defendants or the damages suffered by Dr. Bhambhani.

To survive a motion to dismiss, a claim for civil conspiracy must sufficiently allege the following elements: "[(]1) A confederation of two or more persons by agreement or understanding; [(]2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and [(]3) [a]ctual legal damage resulting to the plaintiff." *Lloyd*, 397 Md. at 154 (quoting *Van Royen v. Lacey*, 262 Md. 94, 97-98 (1971)); *Green v. Wash. Sub. San. Comm'n*, 259 Md. 206, 211 (1970). Unlike criminal conspiracy which centers on the agreement itself, civil conspiracy emphasizes the committed overt conduct pursuant

to the conspiracy and the harm that flows from such conduct. *Alleco, Inc. v. Harry & Jeanette Weinberg Found.*, 99 Md. App. 696, 704 (1994). Maryland does not impose a heightened pleading requirement for civil conspiracy; a plaintiff need only allege both an actionable conspiracy and a substantial act in furtherance of the conspiracy. *Mackey v. Compass Mktg.*, 391 Md. 117, 128 (2006). It is well accepted in Maryland that a conspirator is liable for the representations that a co-conspirator makes in furtherance of the civil conspiracy. *See Windesheim v. Larocca*, 443 Md. 312, 349 (2015) (citing *Mackey*, 391 Md. at 144).

IHS does not contest the first element of civil conspiracy: an agreement between two or more persons. Therefore, this element should be deemed admitted and plausibly plead in the FAC by Dr. Bhambhani as the FAC clearly alleges the agreement between the Defendants. FAC ¶ 3-6, 17-18, 81-82.

Dr. Bhambhani concedes that under Maryland law, a civil conspiracy to commit a negligent tortious act is not a viable cause of action. However, for the second element of civil conspiracy, commission of a substantial unlawful or tortious act in support of the conspiracy, Dr. Bhambhani plausibly pleads viable intentional tort claims for fraudulent misrepresentation and intentional misrepresentation by concealment. *See* Parts II-III, *supra*.

Finally, IHS does not contest the final element of civil conspiracy, actual legal damages, and so this element should be deemed admitted. Further, there is no bar to recovery of solely economic injuries under a claim for civil conspiracy. Dr. Bhambhani specifically pleads that she purchased $264,000.00 worth of NSS devices that were not reimbursable, and that she has received over $1,000,000.00 in refund demands from the Medicare program relating solely to the NSS device and its associated services. FAC ¶¶ 33, 38. With these facts stated, the FAC plausibly pleads actual damages.

For the above reasons, the FAC adequately pleads a plausible claim for civil conspiracy, by pleading viable tort claims against IHS, *see* Parts II-III *supra*, therefore, IHS's motion to dismiss must be denied.

## VII.   DR. BHAMBHANI HAS ADEQUATELY STATED A CLAIM FOR A DECLARATORY JUDGMENT.

IHS claims that Dr. Bhambhani has failed to sufficiently plead a cause of action for a declaratory judgment because all of Dr. Bhambhani's underlying claims fail, Dr. Bhambhani has an alternative source of relief via the Office of Administrative Law appeal process and other causes of action, and the Declaratory Judgment Act is discretionary. IHSb 14-15. IHS misconstrues the nature of the Declaratory Judgment Act's application as the federal Declaratory Judgment Act can stand alone as a cause of action when the court otherwise has subject-matter jurisdiction without underlying torts even where there are potential alternative sources of relief; the only exception being where there is a parallel state suit seeking identical resolution. The discretionary language in the Act applies to this specific instance of potential conflict between state and federal courts, not to the very viability of every Declaratory Judgment Act action.

### A.   Dr. Bhambhani Can Sustain a Declaratory Judgment Claim Without Underlying Tort Claims.

IHS contends that a Declaratory Judgment cause of action cannot be sustained under 28 U.S.C. § 2201(a) when there is no underlying claim asserted, citing *University Gardens Apartments Joint Venture v. Johnson*, 419 F. Supp. 2d 733, 742 (D. Md. 2006) and *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). However, IHS's interpretation of these cases is incorrect. *University Gardens* dismissed the plaintiff's declaratory judgment claim because the plaintiff's federal due process claim was dismissed and the court declined to exercise supplemental jurisdiction over the remaining state law claims for intentional interference with business relations and breach of contract because there was no diversity between the parties; without a separate

federal subject-matter jurisdiction based cause of action, the court would not hear the declaratory judgment claim. 419 F. Supp. 2d at 741-42. In *Schilling*, the Court also dismissed the federal subject-matter jurisdiction based claim, the Trading with the Enemy Act claim, subsequently there remained no other basis to provide federal subject-matter jurisdiction over the case so the declaratory judgment claim was dismissed. 363 U.S. at 676-77.

Unlike the plaintiffs in *University Gardens* and *Schilling*, Dr. Bhambhani is properly before this Court with federal subject-matter jurisdiction that is not derived from the Declaratory Judgment Act, 28 U.S.C. § 2201(a), but from the Class Action Fairness Act of 2005, 28 U.S.C. § 1332, and Dr. Bhambhani adequately pleads plausible and viable causes of action in order to sustain jurisdiction in this action under the Class Action Fairness Act of 2005. *See* Parts II-VI, *supra*. Therefore, Dr. Bhambhani adequately pleads her declaratory judgment claim and IHS's motion to dismiss must be denied.

**B.** **There is No Restriction on Asserting a Declaratory Judgment Action When a Plaintiff Pleads Other Causes of Action and an Unrelated Medicare Refund Appeal is Pending before the Office of Administrative Law.**

IHS contends that a declaratory judgment action is inappropriate "where alternative remedies are available." IHSb 15 (quoting *American Home Assurance Co. v. Evans*, 79 F.2d 61, 64 (6th Cir. 1986)). This statement is false and misconstrues the Sixth Circuit's holding in *American Home Assurance Co. v. Evans*. The snippet that IHS quotes is part of the following sentence: "Where complex factual issues are present *and the action parallels a state court action arising from the same facts and where alternative remedies are available*, declaratory judgment is inappropriate." *Id.* Therefore, *Evans* stands for the principal that a ***federal*** declaratory judgment cause of action cannot stand where there is a separate ***state court action***, which is not the case here.

That Dr. Bhambhani has sought appellate review of three Medicare refund demands seeking in excess of $1.1 million dollars through the Office of Administrative Law does not render

Dr. Bhambhani's declaratory judgment claim unsustainable either. Dr. Bhambhani is seeking certain declarations regarding Defendants' ongoing or future statements, not a "declaration as to how Medicare should apply its CPT billing codes for the NSS device." IHSb 15. More importantly, the existence of a pending Office of Administrative Law appeal does not qualify as a parallel state court action on the same subject matter as this case; indeed, the standards governing IHS's culpability for fraudulent sales of the NSS to Dr. Bhambhani are significantly different than those governing the process and substance of Medicare's refund demands directed to Dr. Bhambhani. And to suggest otherwise is ludicrous.

Likewise, IHS's characterization of the holding in *Chevron U.S.A. Inc. v. Apex Oil Co.*, 113 F. Supp. 3d 807, 824 (D. Md. 2015) is also misleading. This case, and those related to it, stands for the concept that a declaratory judgment action cannot stand where the declaration sought is merely that the defendant committed the other alleged causes of actions. Dr. Bhambhani's declaratory judgment claim here seeks the following two declarations: "(i) the NSS device is an electro acupuncture device for use in the practice of acupuncture by qualified practitioners of acupuncture and not properly billable to health insurers and other third-party payers under CPT 64555, Percutaneous implantation of neurostimulator electrode array; and (ii) that Defendant is unfairly misrepresenting both the manner in which the NSS device could be billed to third party payors and health insurers and the expected reimbursement to be generated per patient by the NSS services." FAC ¶ 89. Neither of these declarations are duplicative of the underlying claims asserted here for Defendant's past actions and representations, but instead concern how Defendants should proceed with characterizing the NSS device going forward. As such, Dr. Bhambhani adequately pleads her declaratory judgment claim and IHS's motion to dismiss must be denied.

**C.     The Court's Discretion to Hear a Declaratory Judgment Action Extends Only to Situations Where There is a Parallel and Potentially Conflicting State Action.**

Finally, IHS states that "district courts have discretion in deciding whether to hear a declaratory judgement action." IHSb 15. The Declaratory Judgment Act does use the phrase "may declare," 28 U.S.C. § 2201(a), however *Mitcheson v. Harris*, cited by IHS, specifically states "[i]n other words, in declaratory actions Congress has afforded the federal courts a freedom not present in ordinary *diversity* suits to consider the state interest in having state court determine questions of state law." 955 F.2d 235, 238 (4th Cir. 1992). Again, like the *Evans* case, the *Mitcheson* case concerned a federal case with a parallel pending state court action. *Id.* In such a circumstance where the federal courts would be deciding state law under the declaratory judgment act simultaneously while the same question is before the state court would, of course, be the type of situation that was contemplated when the Act was made discretionary to protect the significant state interest at play. However, the present case neither has a parallel state court action competing for a ruling on the same issues, nor is it an "ordinary diversity suit" because the United States District Court District of Maryland derives its jurisdiction here through subject-matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332. Therefore, Dr. Bhambhani's declaratory judgment action should stand.

For the above reasons, and for the reasons detailed in Parts II-VI, *supra*, Dr. Bhambhani adequately pleads plausible and viable causes of action in order to sustain a declaratory judgment action here and the declaratory judgment claim is properly before this court. Therefore, IHS's motion to dismiss must be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant

Innovative Health Solutions, Inc.'s Motion to Dismiss.

Dated: June 19, 2018

Respectfully submitted,

**BUTTACI LEARDI & WERNER LLC**

By:  /s/ Elizabeth A. Rice
Elizabeth A. Rice, Bar No. 20426
John W. Leardi (admitted *pro hac vice)*
Nicole Allocca (admitted *pro hac vice*)
Buttaci Leardi & Werner, LLC
212 Carnegie Center, Suite 202
Princeton, NJ 08540
(609) 799-5150 telephone
(609) 799-5180 facsimile

Ugo Colella, Bar. No. 17443
John J. Zefutie (admitted *pro hac vice*)
CULHANE MEADOWS PLLC
4200 Wisconsin Avenue NW #106-305
Washington, DC 20016
(202) 539-2616

*Attorneys for Plaintiff Ritu Bhambhani M.D.*
*and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's Opposition to Defendant Innovative Health Solutions, Inc.'s Motion to Dismiss was served by electronic means through the Court's ECF system on June 19, 2019 on all counsel of record as follows:

Joel I. Sher, Bar No. 00719
Paul Mark Sandler, Bar No. 00145
Eric R. Harlan, Bar No. 23492
Shapiro Sher Guinot & Sandler
250 West Pratt Street, Suite 2000
Baltimore, MD 21201
(410) 385-4277

Jeffrey R. Teeters (admitted *pro hac vice*)
Wood + Lamping
600 Vine Street, Suite 2500
Cincinnati, OH 45202
(513) 852-6050

*Attorneys for Defendant*
*Innovative Health Solutions, Inc.*

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's Opposition to Defendant Innovative Health Solutions, Inc.'s Motion to Dismiss was sent by United States Priority Mail on June 19, 2019 to Acclivity Medical, LLC as follows:

Acclivity Medical, LLC
456 Glengarry Way
Fort Wright, KY 41011

*Defendant*
*Acclivity Medical, LLC*

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's Opposition to Defendant Innovative Health Solutions, Inc.'s Motion to Dismiss was sent by United States Priority Mail on June 19, 2019 to Innovative Healthcare Solutions, LLC as follows:

Innovative Healthcare Solutions, LLC
5820 Prince William Court, Unit 3
Louisville, Kentucky 40207

*Defendant*
*Innovative Healthcare Solutions, LLC*

/s/ Elizabeth A. Rice
Elizabeth A. Rice