IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| RITU BHAMBHANI, M.D., | : | Civil Action NO. 19-CV-355-RDB |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| INNOVATIVE HEALTH SOLUTIONS, | : | |
| INC., et al., | : | |
| | : | |
| Defendants. | : | |

**REPLY IN SUPPORT OF DEFENDANT INNOVATIVE HEALTH SOLUTIONS, INC.'S
MOTION TO DISMISS**

This Court should dismiss the Plaintiff's Amended Complaint. It fails to state valid claims for misrepresentation, conspiracy, and declaratory judgment. It fails to state specific facts giving rise to a plausible entitlement to relief—as distinct from legal labels and conclusions—as required under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly,* 550 U. S. 544 (2007), and it fails to meet Civil Rule 9(b)'s mandate to plead fraud with particularity.

In neither her first nor second Complaints has Plaintiff alleged a single specific representation to her by Defendant Innovative Health Solutions Inc. ("IHS"). Substantively that bars her claims for intentional and negligent misrepresentation against IHS, and in turn negates any potential underlying basis for her conspiracy and declaratory judgment claims.

Dr. Bhambhani attempts to avoid dismissal of this action by labelling Defendants Innovative Healthcare Solutions, Inc. ("Innovative Health*care*") and Acclivity Medical, LLC ("Acclivity") as "Sales Agents."  By doing so, she believes that she can exempt her Amended Complaint from Civil Rule 9(b)'s requirement to plead fraud claims with particularity and from Maryland's substantive law related to agency liability. However, without factual allegations to

support those theories, the claims fail. *See O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.1 (1st Cir. 1976) ("when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."), *cert. denied*, 431 U.S. 914 (1977).

After three attempts to explain her allegations, Dr. Bhambhani still has not met her burden. She initially alleged that statements contained in emails and a PowerPoint presentation by Innovative Health*care* were instead made by IHS. However, those very emails and PowerPoint, which Dr. Bhambhani attached to the original Complaint, confirmed the falsity of her allegations. On her second try, the Amended Complaint simply lumped everyone together and vaguely asserted that "Defendants" made the allegedly false statements. Nevertheless, the same documents are attached to the Amended Complaint and still confirm that Innovative Health*care*—not IHS—made the alleged misrepresentations to her. Asking this Court to believe that vague references to the acts of one defendant (Innovative Health*care*) "plausibly" apply to another defendant (IHS) is not how the applicable procedural or substantive law works.

**I.      Fraud claims cannot survive without a representation made by the accused defendant to the plaintiff. (Counts 1 & 2)**

It must be highlighted that Dr. Bhambhani has not identified a single statement (a) that she received <u>from IHS</u>, (b) that she relied upon in purchasing the NSS device; and (c) that encouraged her to seek Medicare reimbursement at any price or with any billing code. Her original Complaint identified none. Her Amended Complaint identified none. Her Memorandum in Opposition identified none. By failing to "identify any specific misrepresentation" by a defendant, "under *Iqbal* and *Twombly*, any claim of misrepresentation … fails to assert facts which could plausibly provide relief." *ACA Financial Guaranty Corp. v. City of Buena Vista, VA*, 917 F.3d 206, 217 (4th Cir. 2019).

The Amended Complaint presents every allegedly false statement about billing and reimbursement codes as being made by Innovate Health*care*. That entity can address those allegations. But without a false statement by IHS to Dr. Bhambhani, no claim for fraudulent, intentional, or negligent misrepresentation against IHS can survive. *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333, 439 A.2d 534, 537 (1982) (holding that fraudulent misrepresentation must include "the defendant [making] a false representation"); *Parillon v. Fremont Inv. & Loan*, 2010 WL 1328425, at *3 (D. Md.) ("Under Maryland law, a fraud claim requires proof that a 'defendant made a false representation to the plaintiff.'") (quoting *Maryland Env'tal Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512 (2002)).

## II.  The Amended Complaint is not sufficient to pursue a claim of vicarious liability against IHS.

Dr. Bhambhani's Memorandum in Opposition is based primarily upon the position that she provided a "depiction of an agency relationship" and that "IHS can be held accountable for the misrepresentations… *of its agents'* successful efforts to sell the NSS device to Dr. Bhambhani." Doc. #35, p. 1 & 10 (emphasis added). That rhetoric is unsupported either by the actual pleadings or by applicable law. Dr. Bhambhani was obligated to provide much more than a "depiction" of an agency relationship or simply labelling Innovative Health*care* and Acclivity as "Sales Agents." *See* Doc. #23 at ¶3.

With respect to a potential agency theory, Dr. Bhambhani's actual allegations state only that (1) the NSS device at issue "was sold and marketed throughout the United States by IHS through a series of 'exclusive-rights' sales-agent distributors ('Sales Agents')"; (2) "IHS engaged multiple Sales Agents"; and (3) "IHS provided information and documents related to billing, coding, and reimbursement … to the Sales Agents…." Doc. #23 at ¶¶3 & 17. Those allegations fall far short of the factors that she acknowledges are required under Maryland law to establish an

agency relationship. *See* Doc. #35 at 10. She does not allege any direction or control by IHS over the purported "Sales Agents," any power or authority of the alleged agents, or that any of the allegedly false statements were made on behalf of IHS.

This complete absence of critical allegations is not merely a plausible theory with gaps to be filled in as the parties approach summary judgment or trial. Instead, the omission requires dismissal because those allegations, if they existed, must have already been set forth with particularity in a Complaint, not in a memorandum attempting to construe a deficient complaint.

As the United States Supreme Court noted, "[i]t is not … proper to assume that the [plaintiff] can prove facts that it has not alleged, or that the defendants have violated the … laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 256 (1983); *see also Estate Constr. Co. v. Miller & Smith Holding Co*., 14 F.3d 213, 221 (4th Cir. 1994) (quoting *Associated General Contractors*); *Corman v. Nationwide Life Ins. Co*., 347 F. Supp.3d 248, 255 (E.D. Pa. 2018)) ("The arguments relating to vicarious liability will be rejected because Plaintiffs failed to plead this theory of liability in the Complaint."). Judge Grimm addressed a similar circumstance where the plaintiff had alleged more details but still fell short of the pleading standard. In that case, the "conclusory allegations" did "not suffice to allege an agency relationship" because they did not include any duty owed by the alleged agent to the alleged principal and no duty to act for the alleged principal. *Lombel v. Flagstar Bank F.S.B.,* 2013 WL 5604543 at *5 (D. Md.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

Dr. Bhambhani's Opposition seeks solace in a "plausibility" pleading standard.  However, that is definitely not the standard applicable to the claims that Dr. Bhambhani has asserted. Her Amended   Complaint   purports   to   assert   "fraudulent   misrepresentation,"   "intentional

misrepresentation," conspiracy to make intentional misrepresentation claims, and if her Memorandum in Opposition is included, she is now seeking vicarious liability for fraud by an agent. *See* Doc. #23 at ¶¶49-55 (Count 1); ¶¶56-61 (Count 2), ¶81 (Count 5); Doc. #35 at 10-12. Under those circumstances, she was obligated to plead the alleged fraud, the alleged conspiracy, *and* the alleged agency relationship with particularity.

Civil Rule 9(b)'s particularity requirement "extends to allegations of fraud on the basis of any agency relationship." *Haley v. Corcoran*, 659 F. Supp.2d 714, 721 (D. Md. 2009). Specifically, "'[c]onclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b).'" *Id.* (quoting *Kolbeck v. LIT America, Inc*., 923 F. Supp. 557, 559 (S.D.N.Y. 1996)). Therefore, "when a plaintiff seeks to hold a defendant vicariously liable for the acts of its agent, it must allege the factual predicate for the agency relationship with particularity.'" *Id.* (quoting *Adams v. NVR Homes, Inc.,* 193 F.R.D. 243, 250 (D. Md. 2000)); *see also Lombel*, 2013 WL 5604543 at *5. That same particularity requirement applies to claims of conspiracy to commit fraud.  *Adams*, 193 F.R.D. at 250.

The Seventh Circuit noted that "[c]ourts have a special institutional interest in seeing that [fraud] allegations are made with care so that claims advanced solely for their nuisance or settlement value can be quickly identified and valuable public judicial resources not wasted." *Lachmund v. Adm Inv. Serv*., 191 F.3d 777, 783 (7th Cir. 1999). Therefore "when the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim." *Id*. Simply declaring that two parties have a principal/agency relationship is not sufficient to avoid dismissal of a complaint that

tries to hold an alleged principal liable for the fraud of an alleged agent. *Id.*; *see also Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 916 (8th Cir. 2001) (affirming that "a plaintiff seeking to hold a principal liable for an agent's fraud must plead not only fraud, but also agency with particularity"); *Chou v. University of Chicago*, 254 F.3d 1347, 1362 (Fed. Cir. 2001) (affirming dismissal of fraud claims against alleged principal because of plaintiff's failure to plead agency and scope of alleged agent's authority with particularity).

III.     **The Amended Complaint does not identify any "affirmative act" by IHS to conceal anything from Dr. Bhambhani. (Count 2 and Count 5)**

    Count 2 attempted to allege fraudulent concealment/nondisclosure. That claim suffers from additional flaws beyond just failing to plead the claim with particularity.

    The Amended Complaint does not comport with the Maryland law that Dr. Bhambhani cites on fraudulent concealment. For example, Dr. Bhambhani cites a Maryland case for the proposition that "a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action…." Doc. #35, at 20 (quoting *Frederick Road Ltd. Partnership v. Brown & Sturm*, 360 Md. 76, 100 n.14, 756 A.2d 963 (2000)). The Amended Complaint does not identify even one affirmative action by IHS to conceal anything. Similarly, her brief states that "if in addition to nondisclosure [defendant] makes some active misstatements of fact… the legal situation is entirely changed." *Id.* at 21 (quoting *Brager v. Friedenwald*, 128 Md. 8, 31-32 (1916)). But the Amended Complaint only contains an allegedly "active misstatement of fact" by Innovative Health*care*, but not by IHS.

    Dr. Bhambhani's brief states, "'if a defendant does speak, he must disclose enough to prevent his words from being misleading.'" *Id.* at 21 (quoting *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2000 n. 3 (2016)). But the Amended Complaint cannot identify a single occasion where IHS spoke to Dr. Bhambhani about Medicare billing or

reimbursement codes for the NSS device – other than when IHS informed her that IHS did *not* get involved in those topics with physicians. And finally, the most telling legal citation in Dr. Bhambhani's brief on this topic is: "Where one is under no legal obligation to speak, his mere silence or his mere non-disclosure of material facts will not be sufficient…." *Id*. at 21 (quoting *Brager*, 128 Md. at 31-32). That is exactly the situation presented by Dr. Bhambhani's Amended Complaint.  She has identified no legal obligation for IHS to have spoken and no occasion on which IHS actually spoke to her about how to bill or code the NSS device. Therefore, even under the Maryland precedent cited by Dr. Bhambhani, she has not and cannot state a claim for fraudulent concealment/nondisclosure against IHS.

Dr. Bhambhani's conclusion is completely flawed. She advocates that: "*IHCS* was required to disclose any information required to prevent Dr. Bhambhani from being misled… and thus *IHS* is deemed to have concealed the information." *Id*. at 22 (emphasis added). That is neither the substantive law of Maryland nor does it satisfy the Federal Rules' pleading standards. Accordingly, this Court should dismiss Dr. Bhambhani's claims for concealment (Count 2) and conspiracy to conceal (Count 5).

**IV.     Dr. Bhambhani's negligence and negligent misrepresentation claims are subject to Maryland's economic loss rule. (Counts 3 & 4)**

Dr. Bhambhani's first argument to avoid dismissal of her negligence and negligent misrepresentation claim is a curious one. She acknowledges that the Court of Appeals of Maryland's recent ruling in *Balfour Beatty Infrastructure Inc. v. Rummel Klepper & Kahl, LLP* held that "the economic loss doctrine… bars recovery of economic injury where there is no physical injury by negligent conduct between parties not in privity with one another." *See* Doc. #35 at 23 (citing *Balfour Beatty*, 451 Md. 600, 612 (2017)). The parties in this case agree on that

rule of law, and that alone should suffice to undermine any efforts to continue with Count 4 - Negligence. *See* Doc. #23 at ¶¶71-78.

Dr. Bhambhani then interprets the *Balfour Beatty* decision as only applying to negligence claims rather than to what she perceives to be an entirely different claim of negligent misrepresentation. She further argues that the *Balfour Beatty* court made that distinction at page 614 of its opinion. *See* Doc. #35 at p.23. That is not what *Balfour Beatty* says. At page 614 of its opinion, the Court of Appeals summarizes one of its prior decisions which held that "the prospect of physical injury was sufficient to warrant imposing a duty in the absence of privity." *Balfour Beatty*, 451 Md. at 614 (discussing *Council of Co–Owners Atlantis Condo., Inc. v. Whiting–Turner Contracting Co.*, 308 Md. 18 (1986)). That does nothing to support Dr. Bhambhani's position. *Nothing* in the Amended Complaint has *anything* to do with physical injury.

Second, the only part of page 614 of the *Balfour Beatty* decision that is relevant to the current proceedings is the final statement on that page: "In cases where there were no safety concerns and the risk was purely economic, as in this case, the privity requirement did not erode so quickly or so far.  Instead, in such cases we have refrained from finding a tort duty absent privity or its equivalent – i.e., an 'intimate nexus.'" 451 Md. at 614 (citing *Jacques v. First Nat'l Bank*, 307 Md. 527, 537, 515 A.2d 756 (1986)). That undermines rather than supports Dr. Bhambhani's argument.

Third, to the extent that *Balfour Beatty* addresses any purported distinction between negligence and negligent misrepresentation, it rejects that distinction. Specifically, the Court of Appeals stated that they are not entirely different claims but rather "'[n]egligent misrepresentation is one variety of a negligence action.'" *Id*. at 627 (quoting *Walpert Smullian & Blumenthal, P.A. v.*

*Katz*, 361 Md. 645, 655, 762 A.2d 582 (2000)). That too rejects rather than supports Dr. Bhambhani's position.

And fourth, two of the questions that the *Balfour Beatty* court addressed were: whether the economic loss doctrine bars a claim for negligent misrepresentation and a claim under Restatement (Second) of Torts §552. *Id*. at 609. The Court's summary was simple and direct: "we answer yes" to both questions. *Id*. (affirming dismissal of negligence and negligent misrepresentation claims).

If further precedent is necessary, this Court recognized the applicability of Maryland's economic loss rule to negligent misrepresentation claims just a few months ago. Specifically, this Court stated: "'For claims of economic loss based on negligent misrepresentation, the injured party must demonstrate it had an 'intimate nexus' relationship with the defendant in order to establish that the defendant owed a duty to the injured party.'" *Steven B. Snyder, M.D., P.A. v. Cynosure, Inc*., 2019 WL 1386727 at *4 (D. Md.).

The Maryland courts and this Court have settled this issue. Dr. Bhambhani's reliance on earlier cases is of no help in salvaging her claim.

## V.   Contrary to Dr. Bhambhani's argument, the Amended Complaint does not allege an intimate nexus between IHS and Dr. Bhambhani.

Dr. Bhambhani again attempts to conflate Innovative Health*care* with IHS to advocate that there was an "intimate nexus" between her and IHS.  For this iteration of that approach, she claims that she "pleads an intimate nexus between Dr. Bhambhani and IHS because Dr. Bhambhani pleads the existence of a direct and ongoing purchasing relationship between Dr. Bhambhani and IHS's Sales Agents…." Doc. #35 at 25.

The reality again, however, is that her Amended Complaint does not live up to her representations. She cites ¶¶18, 26-27, and 35-26 of the Amended Complaint as her support. Paragraph 18 only states that Robert Smith from Innovative Health*care* was selling the NSS device

and that he provided Dr. Bhambhani with an Innovative Health*care* PowerPoint presentation about the NSS device. Paragraphs 26 and 27 describe two email messages that Innovative Health*care*'s Mr. Smith sent to Dr. Bhambhani, with Mr. Smith also sending one of those messages to a representative of IHS. And Paragraphs 35 and 36 merely describe IHS's refusal to accept a "return" of devices that Dr. Bhambhani had purchased from Innovative Health*care* and confirmation that "IHS had not and does not get involved in billing and coding in any way." There is nothing intimate about those interactions. The substance of those allegations actually prove the reverse; they confirm that *no* relationship existed between Dr. Bhambhani and IHS.

Dr. Bhambhani's second argument is that Medicare beneficiaries (i.e. her patients) are "uniquely vulnerable" with a "heightened level of dependency on their treating providers." Doc. #35 at 25-26. Even if those "allegations" had actually been included in her pleadings rather than her Memorandum in Opposition, they would still offer nothing helpful to the relevant analysis. Dr. Bhambhani's patients and their reliance on her medical care has nothing to do with whether she had a relationship with IHS.

## VI. There can be no cause of action for conspiracy to commit intentional torts unless there are valid underlying tort claims and the supporting facts have been pled with particularity. (Count 5)

There is no question under the substantive law of Maryland that without an underlying tort, there can be no liability for a civil conspiracy. *See* Doc. #29-1 at 12-13. Dr. Bhambhani's response was to argue that Maryland state law does not impose a heightened pleadings standard for alleging conspiracy to commit intentional misrepresentation so she can rest on a "plausible" theory of fraud and conspiracy rather than plead them with particularity. *See* Doc. #35 at 27-28.

As an initial matter, Maryland state court pleading rules do *not* control the pleading standards in this Court. *See* Fed. R. Civ. P. 1 ("These Rules govern the procedure in all civil actions and proceedings in the United States District Courts…."); *Kerr v. Marshall Univ. Bd. of*

*Governors*, 824 F.3d 62, 74 (4th Cir. 2016) ("we apply state substantive law and federal procedural law when reviewing state-law claims"). Under the law of *this jurisdiction*, "[c]laims of conspiracy to commit fraud must satisfy the particularity requirements of Rule 9(b)." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000); *see also Adobe Sys. Inc. v. Gardiner*, 300 F. Supp.3d 718, 732 (D. Md. 2018) ("Rule 9(b) requires more for a claim of conspiracy to commit fraud."); *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp.2d 814, 823  (D. Md. 2005) ("Claims of conspiracy to commit fraud must abide by Rule 9(b)'s particularity requirement."). Dr. Bhambhani has neither recognized, disclosed to the Court, nor complied with the correct procedural standard. Accordingly, Count 5 should be dismissed.

Even if Maryland's state court pleading standards were to apply, no support for Dr. Bhambhani's arguments can be found in the three cases she cites for the purported purpose of avoiding the federal courts' heightened pleading standard.

Dr. Bhambhani cites *Mackey v. Compass Mktg*., for the proposition that "Maryland does not impose a heightened pleading requirement for civil conspiracy." Doc. #35 at 28 (citing *Mackey*, 391 Md. 117, 128, 892 A.2d 79 (2006)). In reality, the *Mackey* decision addressed whether Maryland would recognize a "conspiracy theory of jurisdiction." *Mackey*, 391 Md. at 129. To set the context for that legal issue, the Mackey court noted the basic elements of a civil conspiracy but there is absolutely no discussion about the particularity required at the pleadings stage. *See id*. at 128.

Dr. Bhambhani asks the Court to rely on *Lloyd v. General Motors Corp*., as purportedly providing the standard for how one can "survive a motion to dismiss" on a civil conspiracy claim. Doc. #35 at 27 (citing *Lloyd*, 397 Md. 108, 154, 916, A.2d 257 (2007)). That citation really offers just the three basic elements for proving civil conspiracy. *Lloyd*, 397 Md. at 154. The court's

holding comes a few pages later, after recounting five paragraphs from the plaintiff's complaint that outlined the details of how, when, and where the defendants allegedly agreed to a conspiracy. The defendant challenged whether that complaint pled "the fraud and conspiracy claims with *sufficient particularity* to state a cognizable claim." *Lloyd*, 397 Md. at 121 (emphasis added). The *Lloyd* court held that, "It is clear to this Court that the facts pled… were not vague assertions, but rather were *pointed facts alleging specific acts* of conspiracy" by the defendants. *Id.* at 156 (emphasis added). Meanwhile, in this case, Dr. Bhambhani's pleadings offer none of those details or even mention an agreement other than in purely conclusory fashion. *See* Doc. # 23 at ¶¶81-82.

The pattern continues with Dr. Bhambhani's citation to *Green v. Washington Sub. San. Comm'n*, 259 Md. 206, 211 (1970). Page 211 of that opinion is a detailed description of trial testimony, with absolutely no mention of pleading standards. To the extent that the *Green* court addressed conspiracy law, it only (a) listed the elements of civil conspiracy; and (b) ruled that various acts of violence were "individual and spontaneous eruptions" rather than the result of a conspiracy. *Green*, 259 Md. at 221. Therefore, even if Maryland state law could replace Federal Rule of Civil Procedure 9(b), there are no reasonable grounds to rely upon any of these three Maryland cases to excuse the errors and omissions in Dr. Bhambhani's pleadings.

**VII.   Dr. Bhambhani's attempt to justify her request for declaratory judgment falls under its own weight.  (Count 6)**

To seek declaratory relief, allegations of "past exposure to illegal conduct" are insufficient; instead, the plaintiff "'must establish an ongoing or future injury in fact.'" *Kenny v. Wilson*, 885 F.3d 280, 287-88 (4th Cir. 2018) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). There are no allegations that any of the allegedly false statements are ongoing or will be made in the future. Dr. Bhambhani does not give any indication that she will ever be purchasing another NSS device or billing it to Medicare. Dr. Bhambhani possesses all the information she needs to bill

Medicare properly. This is undoubtedly the case because she now asserts that she has known the critical facts since a few weeks after she began purchasing the device. *See* Doc. #35, at 16.[1]

### A.      Dr. Bhambhani has clarified that she does *not* seek a declaration related to the application of Medicare's billing codes.

The Amended Complaint requested a declaration that "the NSS device is an electro acupuncture device… *not properly billable* to health insurers and other third-party payers under CPT 64555." *See* Doc. #23 at ¶89(i) (emphasis added). Dr. Bhambhani now appears to denounce that request by assuring the Court that she is "not [seeking] a 'declaration as to how Medicare should apply its CPT billing codes for the NSS device." Doc. #35 at 31.   If Dr. Bhambhani does not actually want the ruling she requested, then proceeding on that claim would only serve as a useless advisory opinion which the federal courts are prohibited from issuing.   *See Shenandoah Valley Network v. Capka*, 669 F.3d 194, 201-02 (4th Cir. 2012).

### B.      A declaration that dictates billing procedures for *all* health insurers and third-party payers is well beyond the scope of Dr. Bhambhani's allegations.

It must be noted that Dr. Bhambhani's request stretches to all "health insurers and other third-party payers." Doc. #23 at ¶89(i); Doc. #35 at 31. That clearly exceeds the scope of her allegations and the harm that she allegedly suffered entirely through the Medicare program. *See* Doc. #23 at ¶38. Therefore with no foundation, legal claim, or due process to adjudicate all U.S. commercial "health insurers and third-party payers," Dr. Bhambhani would still have this Court address how those insurers would contract with medical providers and insureds. There is

---

[1] Dr. Bhambhani's Memorandum in Opposition acknowledges that she received an FDA Clearance Letter on September 17, 2015. Doc. #35 at 16. She asserts that this document contained the truthful information that she needed in billing to Medicare. Doc. #23 at ¶2.  Meanwhile her purchases of the device, allegedly on the premise of not having access to that information, continued "between September 2015 and June 2016." *Id.* at ¶33. Therefore, Dr. Bhambhani has either conceded that (a) the alleged omission of that information was not material to her decisions or (b) she was knowingly submitting false Medicare reimbursement requests for over 9 months.

absolutely no legal theory presented here under which countless private insurers should be banned from offering medical device reimbursements.

### C.    A declaration against "Defendant" making unfair billing statements in the future has no applicability to IHS because the only statements identified in the Amended Complaint are those made by Innovative Health*care*.

Dr. Bhambhani's second requested declaration is that "Defendant is unfairly misrepresenting both the manner in which the NSS device could be billed to third party payors and health insurers and the expected reimbursement to be generated per patient by the NSS services." Doc. #23 at ¶89(ii). As noted above, Innovative Health*care* is the only entity that could fit that description, and even that controversy occurred in the past with no allegation of any future impact. Therefore, Dr. Bhambhani does not present a controversy between her and IHS "of sufficient immediacy and reality to warrant the issuance" of a declaratory judgment. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

### D.    Congress, the United States Supreme Court, and the Fourth Circuit have all confirmed that the District Court has discretion in whether to issue a declaratory judgment.

IHS set forth the plain language of the Declaratory Judgment Act and related case law to confirm that the Court has discretion whether to address such claims. Dr. Bhambhani countered by noting that the Court's jurisdiction here arises under the Class Action Fairness Act. Doc. #35 at 32. That response entirely misses the point and ignores Supreme Court and Fourth Circuit precedent. Specifically, "***even when a court has jurisdiction***, **it 'is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment**.'" *Riley v. Dozier Internet Law, PC*, 371 Fed.Appx. 399, 401(4ᵗʰ Cir. 2010) (emphasis added) (quoting *Wilton v. Seven Falls Co.*, 510 U.S. 277, 288 (1995)). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 510 U.S. at 288; *Ellis v.*

*Louisiana-Pacific Corp.*, 699 F.3d 778, 788 (4th Cir. 2012) (stating that a district court's dismissal of a declaratory judgment claim is reviewed for "abuse of discretion").

This standard arises from the simple fact that the Declaratory Judgment Act is only procedural and does not create substantive rights. *Cumberland County Hosp. System, Inc. v. Burwell*, 816 F.3d 48, 57 (4th Cir. 2016) (quoting *Medtronic Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 134 S. Ct. 843, 849 (2014)). Therefore, upon the dismissal of the proposed underlying causes of action, a request for a declaratory judgment is also subject to dismissal. *Id.*

**VIII.   Dr. Bhambhani's acknowledges that the portion of Count 5 related to conspiracy to commit negligence should be dismissed.**

Dr. Bhambhani has now conceded that "under Maryland law, a civil conspiracy to commit a negligent tortious act is not a viable cause of action." Doc. #35 at 28. Therefore, those allegations should be stricken and dismissed.

<u>**CONCLUSION**</u>

Dr. Bhambhani cannot identify a single representation made by IHS to her. That bars Counts 1, 3, 4, and 5. She has not identified any legal duty that IHS owed to her. That bars Counts 2, 3, 4, and 5. She does not plead with particularity either fraud, conspiracy, or her newly raised vicarious liability theory. That bars Counts 1, 2, 3, 4 and 5. And finally, her requests for declaratory judgment (Count 6) are entirely discretionary, beyond the scope of her factual allegations, and inapplicable to IHS.

Accordingly, IHS respectfully requests that all claims against IHS in Dr. Bhambhani's Amended Complaint be dismissed with prejudice.

/s/
_____
Joel I. Sher, Bar No. 00719
Paul Mark Sandler, Bar No. 00145
Eric R. Harlan, Bar No. 23492
Shapiro Sher Guinot & Sandler, P.A.
250 West Pratt Street, Suite 2000
Baltimore, MD 21201
(410) 385-4277

Jeffrey R. Teeters (pro hac vice)
Wood and Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202
(513) 852-6050
*Attorneys for Defendant Innovative Health Solutions, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY, on this 1st day of July, 2019, copies of the foregoing *Reply in Support of Defendant Innovative Health Solutions, Inc.'s Motion to Dismiss* were served on the parties listed below by first-class mail, unless said party is a registered CM/ECF participant and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party.

Elizabeth A. Rice, Esquire
John W. Leardi, Esquire
Nicole P. Allocca, Esquire
BUTTACI LEARDI & WERNER LLC
212 Carnegie Center, Suite 202
Princeton, New Jersey 08540
*Counsel for Plaintiff*

ACCLIVITY MEDICAL, LLC
456 Glengary Way
Fort Wright, Kentucky 41011

Ugo Colella, Esquire
John J. Zefutie, Jr., Esquire
CULHANE MEADOWS, PLLC
4200 Wisconsin Avenue NW, #106-305
Washington, DC 20016
*Counsel for Plaintiff*

INNOVATIVE HEALTHCARE SOLUTIONS, LLC
213 East Broadway
Louisville, Kentucky 40202

/s/ *Eric R. Harlan*
Eric R. Harlan