# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RITU BHAMBHANI, M.D., | * |
| Plaintiff, | * |
| v. | * |
| | Civ. Action No. RDB-19-0355 |
| INNOVATIVE HEALTH SOLUTIONS, INC., *et al.* | * |
| | * |
| Defendants. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Dr. Ritu Bhambhani ("Plaintiff" or "Dr. Bhambhani"), on behalf of herself and others similarly situated, brings this putative class action lawsuit against Defendants Innovative Health Solutions, Inc. ("IHS"), Innovative Healthcare Solutions, LLC ("IHCS"), and Acclivity Medical, LLC ("Acclivity"), alleging fraudulent misrepresentation (Count I); intentional misrepresentation by concealment or nondisclosure (Count II); negligent misrepresentation (Count III); negligence (Count IV); civil conspiracy (Count V); and a request for a declaratory judgment under 28 U.S.C. § 2201(a) (Count VI). Pending before this Court is Defendant Innovative Health Solutions' Motion to Dismiss (ECF No. 29). IHS challenges the sufficiency of each count in Plaintiff's First Amended Complaint (ECF No. 23) and insists that any fraudulent conduct may be attributed solely to IHCS and Acclivity. For the following reasons, Defendant's Motion to Dismiss (ECF No. 29) is GRANTED IN PART AND DENIED IN PART. Specifically, Counts III, IV, and VI are DISMISSED WITH PREJUDICE as to all Defendants. Counts I, II, and V remain pending.

**BACKGROUND**

When evaluating a motion to dismiss, this Court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The facts outlined below reflect the substance of Plaintiff's First Amended Complaint and will be accepted as true for the purpose of Defendant's Motion to Dismiss.

IHS is an Indiana-based corporation engaged in the distribution of medical devices in Maryland and throughout the continental United States. (ECF No. 23 ¶ 12). Since 2014, IHS has developed, marketed, and distributed the Neuro-Stim System ("Neuro-Stim"), an acupuncture device designed to alleviate pain through field stimulation of the peripheral and cranial nerves. (*Id.* ¶ 2, Ex. 4). As alleged by the Plaintiff, IHS sold the Neuro-Stim through a series of "exclusive-rights" agreements with various "Sales Agents"—including IHCS and Acclivity. (*Id.* ¶ 3). Together, IHS and its Sales Agents conducted an extensive advertising campaign, promoting the Neuro-Stim in various online and printed media, in trade shows, and in presentations to physicians. (*Id.* ¶¶ 3, 15).

Lead Plaintiff Ritu Bhambhani, M.D., is a board-certified doctor based in Abingdon, Maryland. (*Id.* ¶ 11). She is a certified anesthesiologist and the managing member of both Complete Care of Maryland, her private practice, and Box Hill Surgery Center, LLC, an ambulatory surgery center. (*Id.*). On August 17, 2015, Robert A. Smith, the Vice President of Sales and Marketing for IHCS, sent Dr. Bhambhani an email claiming his company had "exclusive rights" to the Neuro-Stim. (*Id.* ¶ 18, Ex. 3). Smith described the device as a market-

first, FDA-approved "nerve stimulator," and claimed that "extraordinary reimbursement" was available for the treatment.[1] (*Id.*). He encouraged Dr. Bhambhani to participate in IHCS's Full-Service Program, a payment pipeline that included support for billing and collections and a ninety-day return policy. (*Id.* ¶ 18, 21). Included in this email was an educational video marked "the property of Innovative Health Solutions," (*Id.*), and an IHCS Physician PowerPoint Slideshow ("the Slideshow"). (*Id.* ¶ 18, Ex. 2, Ex. 3). The Slideshow depicted the Neuro-Stim as FDA-approved for chronic and acute pain—and further claimed that the Neuro-Stim is fully reimbursable by health insurers, worker's compensation, and personal injury insurance. (*Id.*).

In the coming months, Dr. Bhambhani and IHCS exchanged several emails discussing the Neuro-Stim. (*Id.* ¶¶ 26–30). On September 8, 2015, the Director of Operations at IHCS sent Dr. Bhambhani an email with forms for billing, certification, and reporting for the Neuro-Stim. (*Id.* ¶ 26, Ex. 4). On September 9, the Vice President of Sales and Marketing for IHCS sent two more emails: one providing two short training videos produced by IHS, and another disclosing ongoing studies on the Neuro-Stim. (*Id.* ¶ 27, Ex. 5). The latter was copied to Brian Carrico, "one of the owners and pioneers of this technology" and the Vice President for Sales for IHS. (*Id.*). Allegedly impressed with this technology and with IHCS's promise of

---

[1] The Neuro-Stim was promoted using Current Procedural Terminology ("CPT"), a set of billing codes maintained by the American Medical Associations in accordance with the Health Insurance Portability and Accountability Act of 1996. (*Id.* ¶ 4). These codes are relied on by medical professionals to track services provided and determine reimbursement. (*Id.*). IHS promoted the Neuro-Stim as billable under CPT code 64555, Percutaneous Implantation of Neurostimulator Electrodes at a Peripheral Nerve. (*Id.* ¶ 5). According to Dr. Bhambhani, this code provided for an amount between $4,800 and $11,400 per patient in reimbursements, with few associated costs. (*Id.*). This "reimbursement-driven marketing," subsequently reaffirmed by IHCS in various emails throughout late 2015, was a significant factor in the Defendants' marketing campaigns. (*Id.*).

reimbursement, Dr. Bhambhani decided to enroll in the Full-Service Program. Between September 2015 and June 2016, she purchased 420 Neuro-Stim devices through Acclivity for a total of $264,000.00. (*Id.* ¶¶ 28–33).

Issues began to emerge in August 2016, when Notivas—Dr. Bhambhani's Medicare Administrative Contractor—released an opinion identifying Neuro-Stim as an acupuncture device and declaring that it would not be covered by Medicare. (*Id.* ¶ 37). On October 8, 2016, Novitas initiated audits of Dr. Bhambhani's practices based on her attempts to obtain reimbursements for the device. (*Id.* ¶¶ 34, 38). As alleged by Dr. Bhambhani, she responded to these developments by attempting to return her remaining supply directly to IHS. (*Id.* ¶¶ 35–36). In an email on September 1, 2016, Brian Carrico rejected her return attempts, asserting that "IHS has not and does not get involved in billing and coding in any way," and recommending assorted alternatives. (*Id.* ¶ 36, Ex. 8). Subsequently, Medicare filed over $1,000,000 in refund demands against Dr. Bhambhani's practices for prior reimbursements. (*Id.* ¶ 38). She has appealed to the Office of Administrative Law.[2] (*Id.*).

Representing a class of similarly situated healthcare providers, Dr. Bhambhani asserts that the Defendants knew or should have known that the Neuro-Stim could not be reimbursed with the code sequence they provided. Before marketing the Neuro-Stim, IHS was the FDA-registered primary distributor of the "P-STIM," an electro-acupuncture device produced by Austrian company Biegler GmbH and marketed throughout the United States. (*Id.* ¶¶ 15–16). The P-STIM, substantially equivalent in design to the Neuro-Stim, was deemed ineligible for

---

[2] Neither party clarifies what the "Office of Administrative Law" is. Appeals of decisions issued by the Centers for Medicare and Medicaid Services are heard by the Office of Medicare Hearings and Appeals. The identity of the specific administrative body to which Plaintiff has appealed is not dispositive in this case.

4

Medicare reimbursement in 2011. (*Id.* ¶¶ 16, 23, 31). Based on the substantial similarities in these devices, Dr. Bhambhani asserts that IHS knew or should have known that the Neuro-Stim would be ineligible for reimbursement under the same codes. (*Id.* ¶¶ 5–7).

On February 6, 2019, Dr. Bhambhani filed suit against Defendants IHS, IHCS, and Acclivity, raising counts of fraudulent misrepresentation (Count I); intentional misrepresentation by concealment or nondisclosure (Count II); negligent misrepresentation (Count III); negligence (Count IV); civil conspiracy (Count V); and a request for a declaratory judgment under 28 U.S.C. § 2201(a) (Count VI). On May 15, 2019, Defendant IHS moved to dismiss the First Amended Complaint for failure to state a claim against it. (ECF No. 29).

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). "At the motion to dismiss stage, we

5

accept as true all of the well-pleaded allegations and view the complaint in the light most favorable to [Plaintiff]." *Quintana v. City of Alexandria, et al.*, 692 F. App'x 122, 125 (4th Cir. June 6, 2017) (citing *LeSeur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012). Nevertheless, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

When the gravamen of a complaint entails allegations of fraud, Rule 9(b) requires that "the circumstances constituting fraud be stated with particularity." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, the plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). A court "should hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

6

**ANALYSIS**

**I.        Agency Relationship between IHS, IHCS, and Acclivity**

As a threshold matter, Defendant IHS asserts that the First Amended Complaint fails to indicate any actionable misrepresentations that may be attributed to IHS. (*Id.* at 3, 5, 10). Dr. Bhambhani counters that IHCS and Acclivity are agents of IHS, rendering IHS liable for their misconduct. (ECF No. 35, at 10). Under traditional vicarious liability rules, principals are vicariously liable for the tortious acts of their agents within the scope of their authority. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 659–60 (4th Cir. 2019) (citing *Meyer v. Holley*, 537 U.S. 280, 285–86 (2003)). "Generally, the existence and scope of agency relationships are factual matters, and are therefore often appropriately left to the jury." *Id.* (internal quotations omitted); *accord Proctor v. Metro. Money Store Co.*, 579 F. Supp. 2d 724, 735 (D. Md. 2008). Nevertheless, "[w]here a plaintiff is seeking to hold a defendant vicariously liable for the [fraudulent] acts of its agents, it must allege the factual predicate for the agency relationship with particularity." *Adams*, 193 F.R.D. 243, 250 (D. Md. 2000).[3] The party alleging an agency relationship bears the burden of demonstrating its nature and its extent. *Green v. H & R Block, Inc.*, 355 Md. 488, 503 (1999).

"As a general matter, an agency relationship arises from the manifestation of the principal to the agent that the agent will act on the principal's behalf." *Adobe Sys. Inc. v. Gardiner*, 300 F. Supp. 3d 718, 729 (D. Md. 2018) (internal quotations omitted). Maryland has

---

[3] This requirement is drawn from the policy considerations that animate Rule 9(b): When a complaint alleges fraud on the part of multiple defendants, conclusory assertions of agency, control, or association fail to inform each defendant of its role in the purported fraud. *Haley v. Cocoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009); *see also Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) ("Courts have a special institutional interest in seeing that [fraud] allegations are made with care so that claims advanced solely for their nuisance or settlement value can be quickly identified and valuable public judicial resources not wasted.").

identified three characteristics that are particularly relevant to the existence of an agency relationship: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Danner v. Int'l Freight Sys. of Wa., LLC*, 855 F. Supp. 2d 433, 454 (D. Md. 2012) (citing *Green*, 355 Md. at 503). These are not mandatory elements: the Court of Appeals of Maryland has characterized them as guiding considerations that "should be viewed within the context of the entire circumstances of the transaction or relations." *Green*, 355 Md. at 506; *see also Costley v. Serv. Prot. Advisors, LLC*, JKB-12-1574, 2013 WL 952237, at *4 (D. Md. 2013) (further highlighting this distinction).

Courts have found agency in the absence of one or more of these factors. For example, in *Green v. H & R Block, Inc.*, the Court of Appeals of Maryland addressed whether H & R Block could be considered an agent of its customers. 355 Md. at 503. The trial court granted summary judgment to H & R Block, characterizing the factors—"control," "duty," and "legal relations"—as mandatory considerations. *Id.* at 505. The Court of Appeals reversed, rejecting the trial court's characterization in favor of a holistic evaluation of the relationship between the parties. *Id.* at 506 ("The trial court . . . overstated the significance of the three factors when it labeled them 'essential elements' of an agency relationship."). Although Green failed to demonstrate that H & R Block had a duty to act primarily for the benefit of its customers, his allegations were enough to support the "control" and "legal relations" elements. *Id.* at 507–13. Moreover, H & R Block's advertising campaign lent independent weight to the allegation of agency by supporting the plaintiff's narrative of customer trust. *Id.* at 513.

The alleged existence of a brokerage relationship, absent additional allegations, does not suffice. In *Harmon v. BankUnited*, WDQ-08-3456, 2009 WL 3487808 (D. Md. Oct. 22, 2009), this Court found BankUnited, a federal savings bank, could not be liable for material misrepresentations by Smart Money, a broker within its network. *Id.* at *4. Smart Money's use of underwriting services at BankUnited's direction and proprietary software with BankUnited's supervision were enough to allege a right of control. *Id.* Nevertheless, Harmon failed to allege that the brokerage relationship was exclusive—a fact that "would tend to show that an agent is acting *primarily* on behalf of a principal." *Id.* at *4. Moreover, nothing suggested that Smart Money had the power to alter the legal relations of BankUnited. *Id.*

Dr. Bhambhani has alleged agency on a theory of actual authority: She claims that IHS marketed and sold the Neuro-Stim through IHCS and Acclivity in accordance with an exclusive rights agreement. (ECF No. 35, at 12; ECF No. 23 ¶ 3). An exclusive distributorship would suggest that IHCS and Acclivity are acting under IHS's right of control and distributing the Neuro-Stim in accordance with the movant's terms. Additionally, the exclusivity of this relationship would provide an element that was missing in *Harmon*, suggesting IHCS and Acclivity are acting primarily for IHS's benefit. *See* 2009 WL 3487808, at *4 n.19. Whether an agreement would also grant IHCS and Acclivity the power to alter IHS's legal relations would depend on the specific mechanics of their arrangements and the nature of the transactions between them.

At this early stage, Dr. Bhambhani is not required to prove her claims—for now, it is enough to plead "the factual predicate" of this relationship with particularity. She has done so here. Her argument is predicated on her communications with IHCS, which appear to

9

depict the relationship she alleges. (ECF No. 35, at 12). IHCS claimed it had the exclusive rights to the Neuro-Stim device in its email solicitations, (ECF No. 23, at ¶ 18), and IHS labelled IHCS and Acclivity as its "distributors" in this Motion to Dismiss. (ECF No. 29, at 7). Each of the Neuro-Stim promotional videos shared by IHCS during September 2015 was branded "the exclusive property of Innovative Health Solutions," and marked private on the host website—suggesting that they could only have been given to IHCS with IHS's approval. (ECF No. 35, at 12). Additionally, Dr. Bhambhani highlights a level of coordination between the parties in their communications: IHS Vice President of Sales Brian Carrico was copied on the IHCS email received September 8, 2015 and contacted her directly following her return request on September 1, 2016. (*Id.* at 13). These communications, each pled with particularity, provide "substantial pre-discovery evidence" of the exclusive distributor agreement at the core of Dr. Bhambhani's agency theory. *Harrison*, 176 F.3d at 784.

Whether this agreement exists, and whether it is enough to demonstrate agency, is ultimately a matter that will be further developed through discovery. *Krakauer*, 925 F.3d at 660. For now, Plaintiff has provided enough allegations in support for her theory to give IHS notice of its alleged role in the putative fraud, and the claims it will have to defend at trial. *C.f. Haley*, 659 F. Supp. 2d at 721. In these circumstances, the policies that animate Rule 9 would not be served by dismissal. *Harrison*, 176 F.3d at 784. Accordingly, Dr. Bhambhani has adequately alleged the existence of an agency relationship, and IHS may be considered vicariously liable for the actions of its co-Defendants within the context of this Motion to Dismiss.

## II. Fraudulent Misrepresentation – Count I.

Next, IHS argues Dr. Bhambhani fails to state a claim for fraudulent misrepresentation. (Count I). (ECF No. 29, at 6). "Under Maryland law, '[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Topline Solutions, Inc. v. Sandler Sys, Inc.*, 2017 WL 1862445, at *32 (D. Md. 2017) (quoting *Sass v. Andrew*, 152 Md. App. 406, 432 (2003)). To state a claim for fraudulent misrepresentation under Maryland law, a plaintiff must allege:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S & R, Inc.*, 334 Md. 398, 415 (1994). As this claim is grounded in fraud, its elements must be pled in accordance with Rule 9(b).

Taking the First Amended Complaint as true, Dr. Bhambhani's reliance is adequately pled through her purchase of $264,000.00 worth in Neuro-Stim devices, and her damages are demonstrated by the $1,000,000.00 in refund expenses and legal fees she spent defending Medicare audits. (ECF No. 23 ¶¶ 28, 38). Likewise, Dr. Bhambhani's allegations of fraudulent intent are noncontroversial. Throughout the complaint, she insists that IHS knew that its representations were false and intended to induce the Plaintiff Class to purchase the Neuro-Stim. (ECF No. 23 ¶¶ 51–53, 67–69). Although these claims are more generalized, they fall within the parameters of Rule 9, which provides that circumstances demonstrating scienter "may be alleged generally." Fed. R. Civ. P. 9(b).

IHS argues that it has made no actionable misrepresentations to Dr. Bhambhani. Unless IHS has made a false statement, it cannot be liable for fraudulent misrepresentation. *See Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333 (1982) (holding fraudulent misrepresentation requires that "the defendant made a false representation"). Absent any grounds for vicarious liability, this argument would prove fruitful: the only communication made to Dr. Bhambhani by IHS is the September 1, 2016 email from Brian Carrico in response to her return request. This email could not possibly have induced her decision to purchase the Neuro-Stim one year earlier.

Nevertheless, as Dr. Bhambhani has pled agency, IHS may be vicariously liable for the misrepresentations of its co-Defendants. *Krakauer*, 925 F.3d at 659–60. In this light, the First Amended Complaint is replete with actionable allegations of falsity. Dr. Bhambhani argues that IHCS and Acclivity advertised the Neuro-Stim as eligible for reimbursement despite their knowledge to the contrary. (ECF No. 23 ¶¶ 5–7). In its initial email to Dr. Bhambhani, IHCS emphasized the "extraordinary reimbursement" available for Neuro-Stim therapy. (*Id.* ¶ 18, Ex. 3). This was reinforced by the contents of the Slideshow, the IHS videos, and the subsequent communications between the parties. (*Id.* ¶¶ 18, 26–30, Ex. 3). These communications were enumerated in the First Amended Complaint with particularity. Accordingly, IHS's Motion to Dismiss is DENIED as to Count I.

### III. Intentional Misrepresentation by Concealment or Nondisclosure – Count II.

IHS next contends that it cannot be held liable for intentional misrepresentation by concealment or nondisclosure (Count II). (ECF No. 29, at 6). Under Maryland law, this claim requires that: "(1) Defendant owed Plaintiff a duty to disclose a material fact; (2) Defendant failed to disclose that fact; (3) Defendant intended to defraud or deceive Plaintiff; (4) Plaintiff took action in justifiable reliance on the concealment; and (5) Plaintiff suffered damages as a result of Defendant's concealment." *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 628 (D. Md. 2003) (citing *Green*, 355 Md. at 525 (1999)). "The plaintiff must prove *either* that Defendant had a duty to disclose a material fact and failed to do so, or that Defendant concealed a material fact for the purpose of defrauding Plaintiff." *Nordstrom, Inc. v. Schwartz*, No. GJH-18-3080, 2019 WL 4221475, at *4 (D. Md. Sep. 5, 2019) (internal citation omitted) (emphasis in original). Although this claim is grounded in fraud, the stringent requirements of Rule 9(b) are relaxed in the context of fraud by omission. *Shaw v. Brown & Williamson Tobacco Co.*, 973 F. Supp. 539, 552 (D. Md. 1997) (noting omissions "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation." (internal citation omitted)).

A claim based on nondisclosure requires that the defendant owed a duty to disclose. *Nordstrom, Inc.*, 2019 WL 4221475, at *4. While "Maryland recognizes no general duty upon a party to a transaction to disclose facts to the other party," *Md. Envtl. Trust v. Gaynor*, 376 Md. 89, 97 (2002) (citing *Fegeas v. Sherrill*, 218 Md. 472, 476 (1958)), a duty to disclose arises "'when one party is in a fiduciary or confidential relationship with the other,' or 'when one party makes a partial and fragmentary statement of fact.'" *Agropex Int'l, Inc. v. Access World (USA), LLC*,

No. ADC-19-1232, 2019 WL 6218319, at *7 (D. Md. 2019) (quoting *Hill v. Bush Engineered Mat., Inc.,* 383 F. Supp. 2d 814 (D. Md. 2005)). "[O]rdinarily when one owes no legal obligation to speak, mere silence is not actionable; but if what is stated amounts to a 'partial and fragmentary' disclosure, that misleads because of incompleteness, the 'legal situation is entirely changed.'" *Odyssey Travel Ctr., Inc.*, 262 F. Supp. 2d at 629 (internal citation omitted).

Dr. Bhambhani alleges several partial or fragmentary statements of fact that support imposition of a duty to disclose and attendant liability for misrepresentation by nondisclosure.[4] Dr. Bhambhani asserts that the Defendants advertised the Neuro-Stim as eligible for Medicare reimbursement despite knowledge to the contrary—an "active misstatement of fact." (ECF No. 35, at 22). She further insists they described the device as FDA-approved without disclosing the limited scope of that approval—a "partial and fragmentary" disclosure. (*Id.*). *C.f. Odyssey Travel Ctr.*, 262 F. Supp. 2d at 629 (finding cruise line's advertisement of pending voyage, and failure to disclose vessel's lack of certification, a "partial or fragmentary assertion of fact."). Accepted as true, these allegations support Dr. Bhambhani's claim that IHS had a duty to disclose the limited utility and eligibility of the Neuro-Stim. Viewed alongside the allegations of fraudulent intent, reliance, and damages described above, they state a claim for

---

[4] An argument on a theory of concealment would be unavailing. Intentional misrepresentation by concealment requires that "the defendant took affirmative action to conceal the [fraud] and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence." *Frederick Road Ltd. v. Brown & Sturm*, 360 Md. 76, n.14 (2000); *accord Lloyd*, 397 Md. at 138 ("[F]raudulent concealment includes the situation where the defendant actively undertakes conduct or utters statements designed to, or that would, divert attention away from the defect."). The First Amended Complaint does not allege that the Defendants took active efforts to prevent Dr. Bhambhani from acquiring material facts—rather, it asserts that they simply withheld facts regarding the approval status of the Neuro-Stim and its eligibility for reimbursement. (ECF No. 23, at ¶¶5–7).

14

intentional misrepresentation by concealment. Accordingly, IHS's Motion to Dismiss is DENIED as to Count II.

**IV. Negligence Claims – Counts III, IV.**

IHS challenges the counts for negligence (Count IV) and negligent misrepresentation (Count III) by invoking Maryland's economic loss doctrine.[5] (ECF No. 29, at 11). A plaintiff claiming negligence must allege that: "(1) the defendant owes the plaintiff a duty of care; (2) the defendant breached that duty; (3) the plaintiff sustained an injury or loss; (4) the defendant's breach of the duty was the proximate cause of the plaintiff's injury." *Id.* at 610. To determine whether a tort duty exists, we examine: (1) 'the nature of the harm likely to result from a failure to exercise due care,' and (2) 'the relationship that exists between the parties.'" *Balfour Beatty*, 451 Md. at 611 (quoting *100 Inv. Ltd. Partnership v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 213–14 (2013)). The existence of a tort duty is a matter of law, *100 Inv. Ltd. P'Ship*, 430 Md. at 211, without which there can be no liability for negligence. *Balfour Beatty*, 451 Md. at 611.

Generally, Maryland does not permit recovery in tort for purely economic losses. *Id.* at 611–15. The economic loss doctrine represents a judicial refusal to extend tort liability to claims that more properly sound in contract. *Cash & Carry Am., Inc. v. Roof Solutions, Inc.*, 223 Md. App. 451, 466 (2015) (describing the doctrine as "a boundary between contract law, the purpose of which is to enforce the expectations of the parties to an agreement, and tort law, the purpose of which is to protect people and property from foreseeable risks of harm"). This

---

[5] "Negligent misrepresentation is one variety of a negligence action," and is equally subject to the economic loss doctrine. *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 627–28 (2017); *accord Snyder v. Cynosure, Inc.*, RDB-18-2049, 2019 WL 1386727, at *4 (D. Md. 2019) (applying economic loss doctrine to bar negligent misrepresentation claim).

15

rule does not apply where the defendant owes a duty of care "independent of any contract obligation" that gave rise to the cause of action. *Snyder*, 2019 WL 1386727, at *5; *accord Blondell v. Littlepage*, 991 A.2d 80, 94 (Md. 2010) ("[T]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort."). Such a duty exists where the plaintiff has an "'intimate nexus'" with the defendant through preexisting "'contractual privity or its equivalent.'" *Dierker v. Eagle Nat'l Bank*, 888 F. Supp. 2d 645, 655 (D. Md. 2012).

Dr. Bhambhani asserts that her purchase of Neuro-Stims and her participation in the "Full-Service Program"—a support pipeline including technical and logistical assistance— created an intimate nexus with IHCS and Acclivity. (ECF No. 23, at ¶¶ 18, 21, 26–33). This contention misstates the purpose of the economic loss doctrine. The Full-Service Program is a part of Dr. Bhambhani's contractual arrangements with the Defendants and does not support finding an independent duty of care. *See Snyder*, 2019 WL 1386727, at *5 (rejecting assertion that "contract alone is sufficient to overcome . . . the economic loss doctrine."). Before entering these arrangements, Dr. Bhambhani dealt with the Defendants exclusively at arm's length. These circumstances are insufficient to establish an intimate nexus and overcome the bar on tort recovery for purely economic damages. Accordingly, Counts III and IV are DISMISSED.

V.     **Civil Conspiracy – Count V.**

IHS next contends that the conspiracy count (Count V) was not pled with particularity. Under Maryland law, a civil conspiracy requires: (1) "A confederation of two or more persons by agreement or understanding;" (2) "some unlawful or tortious act done in furtherance of

the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal;" and (3) "actual legal damage resulting to the plaintiff." *Lloyd*, 397 Md. at 154. "Similar to claims for fraud, 'conspiracy to commit fraud must abide by Rule 9(b)'s particularity requirement." *Adobe Sys. Inc.*, 300 F. Supp. 3d at 730. "The more specific requirements for an allegation of conspiracy are that the pleader provide, whenever possible, some details of the time, place and alleged effect of the conspiracy." *Hill*, 383 F.Supp.2d 814 (D. Md. 2005) (internal quotation omitted). Although "plaintiffs need not state 'exactly how the agreement was made,'" they must show that there was a "'communication, consultation, cooperation, or command' from which such an agreement may be inferred." *OT, LLC v. Harford County*, GLR-17-2812, 2018 WL 9944996, at *2 (D. Md. 2018); *Weathers v. Ebert*, 505 F.2d 514, 517 (4th Cir. 1974).

Each of these elements is adequately pled. Dr. Bhambhani has alleged that she suffered damages and the counts of fraudulent and intentional misrepresentation fulfill the requirement of an unlawful or tortious act.[6] *OT, LLC*, 2018 WL 9944996 at *2 (for the purpose of a conspiracy claim, "[t]he overt act of one conspirator is imputed to the other members of the conspiracy."). At this stage, Dr. Bhambhani is not expected to come to court with a private agreement in hand—the same "communication[s], consultation[s], [and] cooperation" that provide factual grounding for an agency relationship are enough to suggest a confederation by

---

[6] IHS also notes that there is no legal basis for a conspiracy to commit negligence under Maryland law. (ECF No. 29, at 13). *See, e.g., Lombel v. Flagstar Bank F.S.B.*, No. PWG-13-704, 2013 WL 5604543, at *7 (D. Md. Oct. 11, 2013) (calling such a claim "a logical impossibility [that] borders on the incoherent."); *Bennett v. Skyline Co.*, 52 F. Supp. 3d 796 (2014) ("By its very definition . . . a civil conspiracy claim does not sound in negligence."). As both claims grounded in negligence are dismissed, and as Dr. Bhambhani concedes this point, this Court does not address this question. (ECF No. 35, at 28). Nevertheless, Plaintiff may allege a conspiracy to commit fraudulent misrepresentation (Count I) or intentional misrepresentation by concealment or nondisclosure (Count II).

agreement or understanding. *Id.* Accordingly, IHS's Motion to Dismiss is DENIED as to Count V.

## VI. Declaratory Judgment – Count VI.

Finally, IHS moves to dismiss Dr. Bhambhani's declaratory judgment request (Count VI). Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201(a): "In a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration..." *Id.* at § 2201. This Court has wide discretion on whether to grant a request for a declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). This discretion is guided by "considerations of practicality and wise judicial administration." *Id.* at 288.

> Count VI of the First Amended Complaint requests the following declarations:
>
> (i) the [Neuro-Stim] device is an electro acupuncture device for use in the practice of acupuncture by qualified practitioners of acupuncture and not properly billable to health insurers and other third-party payers under CPT 64555, Percutaneous implantation of neurostimulator electrode array; and
>
> (ii) that Defendant is unfairly misrepresenting both the manner in which the [Neuro-Stim] device could be billed to third party payors and health insurers and the expected reimbursement to be generated per patient by the [Neuro-Stim] services.

(ECF No. 23, at ¶ 89).

The first question is beyond this Court's authority to address. "A plaintiff seeking a declaratory judgment still must be able to state a claim upon which relief can be granted." *Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Technology Finance Group, Inc.*, 299 F. Supp. 2d 505, 528 (D. Md. 2004); *see also* Fed. R. Civ. P. 8(a). The appropriate administrative

body must apply its expertise concerning the billing eligibility of medical devices before this Court addresses the issue. Answering this question would require this Court to render an opinion in an area ill-suited to judicial determination. *C.f. Greene v. Sprint Commc'ns*, 340 F.3d 1047, 1053 (9th Cir. 2003) (declining to "put interpretation of a finely-tuned regulatory scheme squarely in the hands of private parties and some 700 federal district judges, instead of in the hands of the Commission."). Accordingly, as Dr. Bhambhani's administrative appeals are still pending, any attempt to determine the eligibility of the Neuro-Stim would be premature. *McKart v. United States*, 395 U.S. 185, 194 (1969) ("[S]ince agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise.").

The second question is redundant with Dr. Bhambhani's misrepresentation claims. "When declaratory relief would be duplicative of claims already alleged, dismissal is warranted." *Chevron U.S.A., Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807 (D. Md. 2015). Plaintiff's request that IHS is "unfairly misrepresenting" the Neuro-Stim's eligibility and billing requirements directly overlaps with the counts of fraudulent and intentional misrepresentation alleged above. *C.f. Sharma v. OneWest Bank, FSB*, 2011 WL 5167762, at *6 (D. Md. 2011) (dismissing request for declaration that "Plaintiffs have absolute ownership, possession, and the right of disposition of [the property]" as redundant with actions for possession and breach of contract); *Chevron*, 113 F. Supp. 3d at 824 (finding requests for declaration regarding discharge of petroleum redundant with common law tort and breach of contract claims). Therefore, Count VI of the First Amended Complaint is DISMISSED.

## CONCLUSION

For the foregoing reasons, Defendant Innovative Health Services' Motion to Dismiss (ECF No. 23) is GRANTED IN PART AND DENIED IN PART. Specifically, Counts III, IV, and VI are DISMISSED WITH PREJUDICE as to all Defendants. Counts I, II, and V remain pending.

Dated: February 11, 2020.

/s/
Richard D. Bennett
United States District Judge
