## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RITU BHAMBHANI, M.D., *et al.*,                    *

    Plaintiffs,                                      *

v.                                                *

                      Civ. Action No. RDB-19-0355

INNOVATIVE HEALTH SOLUTIONS,                      *
INC., *et al.*,
                                                  *
    Defendants.
                                                  *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## <u>MEMORANDUM OPINION</u>

     Plaintiffs Dr. Ritu Bhambhani ("Dr. Bhambhani") and Dr. Sudhir Rao ("Dr. Rao") (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, bring this putative class action lawsuit against Defendants Innovative Health Solutions, Inc., Innovative Healthcare Solutions, LLC, Acclivity Medical, LLC, DragonSlayer Strategies LLC, Coleman Certified Medical Billing & Consultant, LLC, as well as Joy Long and Ryan Kuhlam in their individual capacities, alleging civil violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)  (Count One);  conspiracy to commit civil violation of RICO, 18 U.S.C. § 1962(d) (Count Two); fraudulent misrepresentation (Count Three); intentional misrepresentation by concealment or non-disclosure (Count Four); and civil conspiracy (Count Five) against all Defendants.  (Third Amended Complaint, ECF No. 97.)[1]

---

[1] The original Complaint in this case was filed on February 6, 2019 by Dr. Bhambhani on behalf of herself and others similarly situated.  (ECF No. 1.)  Dr. Rao was added as a Plaintiff in the Second Amended Complaint filed on August 28,

Presently pending is a Motion to Dismiss filed by Defendant Ryan Kuhlman ("Kuhlman"), through which he seeks dismissal of all five counts filed against him.  (ECF No. 102).  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, the Defendant's Motion (ECF No. 102) is DENIED.  The Plaintiffs have sufficiently alleged Kuhlman's violation of the RICO statute,[2] and this Court therefore has personal jurisdiction over him with respect to all five counts.  Furthermore, the Plaintiffs have satisfied the pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure with respect to all five counts of the Third Amended Complaint.  Counts Three, Four, and Five are not time barred, as the relation back doctrine applies.[3]

## BACKGROUND

When evaluating a motion to dismiss, this Court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Plaintiff Dr. Bhambhani is medical doctor practicing in Abingdon, Maryland and is board-certified in both Anesthesiology and Pain Medicine.  (ECF No. 97 ¶ 16.)  Dr. Rao is a medical doctor practicing primarily in Mount Airy,

---

2020.  (ECF No. 48.)  The Third Amended Complaint was filed on May 21, 2021, and is the operative pleading in this case.  (ECF No. 97.)

[2] The Racketeer Influenced and Corrupt Organizations Act ("RICO") provides a civil cause of action for acts performed as part of an ongoing criminal organization.  Violation of RICO under § 1962 requires at least two acts of racketeering activity, commonly referred to as "predicate offenses."  In this case, the RICO charges in Counts One and Two are predicated on mail fraud and wire fraud.  (ECF No. 97 ¶ 108.)

[3] As discussed *infra*, Rule 15(c) of the Federal Rules of Civil Procedure permits a party to amend his pleading after the expiration of the statute of limitations if the amendment "relates back" to the original pleading, considering certain factors such as whether the party effected by the amendment had adequate notice of the proceeding and claims against him and will be prejudiced by the change.

Maryland as well as other locations in Maryland, Virginia, and Pennsylvania. (*Id.* ¶ 17.) He is also board-certified in Anesthesiology and Pain Medicine. (*Id.*) Defendant IHS is an Indiana corporation alleged engaged in the marketing, selling, and distributing of a product known as the Neuro-Stim System ("Neuro-Stim").

In 2014, Neuro-Stim was cleared by the Food and Drug Administration ("FDA") for use in acupuncture. (*Id.* ¶ 2.) In the 510(k)-premarket clearance application[4] submitted to the FDA, IHS specifically described the device as "an electro acupuncture device for use in the practice of acupuncture by qualified practitioners of acupuncture as determined by the states." (*Id.* ¶ 2, Exh. 1.) However, IHS allegedly sold and marketed the device throughout the United States as a surgically implantable medical device. (*Id.* ¶ 3.)

According to the Plaintiffs, IHS sold, marketed, and distributed the Neuro-Stim in this manner through exclusive-rights sales-agent distributors ("Sales Agents"), including co-Defendants Acclivity Medical, LLC ("Acclivity") and Innovative Healthcare Solutions, LLC ("IHCS"). (*Id.* ¶ 3.) Acclivity was a Kentucky LLC, and prior to its dissolution in June of 2017, Acclivity was owned and controlled by its sole member, Defendant Kuhlman. (*Id.*) The Plaintiffs also allege that Kuhlman served IHS as its "National Director" and has been employed by IHS since January of 2013. (*Id.* ¶ 21.)

Dr. Bhambhani and Dr. Rao assert that IHS and its Sales Agents invested substantial sums in advertising and marketing the Neuro-Stim in a misleading manner throughout the

---

[4] A 510(k) is a premarket submission made to the FDA to demonstrate that a device to be marketed is as safe and effective as a legally marketed device. Applicants must compare their device to one or more similar legally marketed devices and make and support claims that their product is "substantially equivalent." *See* Food and Drug Administration, *Premarket Notification 510(k)*, https://www.fda.gov/medical-devices/premarket-submissions/premarket-notification-510k (last visited Aug. 2, 2021).

United States, including on websites, at trade shows, in brochures, in newsletters, in video, on phone calls, in emails, and in on-site presentations at physician offices and ambulatory surgery centers. (*Id.*) For example, they allege that in a slide show used by ICHS in promoting the device to Dr. Bhambhani and other medical providers, ICHS explicitly referred to the Neuro-Stim as being "FDA-approved," claiming that it was the "first and only FDA approved electro-auricular, peripheral nerve stimulator currently on the market to treat acute and chronic pain." (*Id.* ¶ 4. Exh. 2.) However, nowhere in the presentation did IHCS reference acupuncture or electroacupuncture. (*Id.*) Similarly, in a "[Frequently Asked Questions] Sheet for Clinicians" prepared by IHS and used by Acclivity and IHSC, the Neuro-Stim is referred to as "FDA cleared for targeting acute and chronic pain," but nowhere in the Frequently Asked Questions is the word acupuncture. (*Id.* ¶ 5, Exh. 3.)

The Plaintiffs allege that as a means of enticing Dr. Bhambhani, Dr. Rao, and other medical providers to purchase the Neuro-Stim and implement it into their clinical practices, the Defendants promoted the billing of the device using a specific set of codes used to report implantable nerve stimulators. (*Id.* ¶ 7.) This set of codes provided for between $4,800.00 and $11,400.00 per patient in reimbursement from payers for a procedure to implant the device. (*Id.*) IHS and its Sales Agents allegedly employed the services of independent coding consultants ("Coding Agents"), including but not limited to co-Defendant DragonSlayer Strategies LLC. (*Id.* ¶ 8.)

Dr. Rao was initially solicited to purchase the Neuro-Stim by Acclivity on or about September 15, 2015. (*Id.* ¶ 53.) That day she received an email from Matthew Miller, whose email signature identified him as a "Distributor/Principal of Acclivity." (*Id.*) Attached to the

email was a document entitled "ASC BILLING POST OP PAIN MANAGEMENT." (*Id.* ¶ 53; Exh. 14.) That document provided coding and reimbursement advice consistent with the slide show provided to Dr. Bhambhani by IHCS and the overall alleged coding scheme. (*Id.* ¶ 53; Exh. 14.) Dr. Rao alleged asked Miller to provide information on the Neuro-Stim to one of his staff members, Ginny Goldbach ("Goldbach"). (*Id.* ¶ 54.) In response to this request, Miller forwarded Goldbach an email with several attachments, including the FAQ Sheet for Clinicians prepared by IHS, a document titled "[Neuro-Stim System]—Science Overview," and a brochure. (*Id.* ¶ 54; Exhs. 3, 15, 16.) None of these documents stated that the Neuro-Stim was FDA-clear as an electroacupuncture device. (*Id.* ¶ 54.) Consistent with instructions from IHS President Brian Carrico, none of the materials provided even used the word "acupuncture." (*Id.* ¶¶ 29, 54.)

An hour after forwarding these documents, Miller also forwarded Goldbach an email from Defendant Kuhlman, attaching several "exemplar" Explanation of Benefits ("EOB") statements. (*Id.* ¶ 55; Exh. 17.) The attached EOBs provided by Kuhlman showed payments to other medical providers from a variety of insurance companies and other third-party payers, including Medicare, for bills submitted under the codes allegedly improperly promoted by the Defendants as a part of the Neuro-Stim coding scheme. (*Id.* ¶ 55.) The email forwarded by Miller from Kuhlman was originally sent to Miller on September 20, 2015. (*Id.* at Exh. 17.) The subject line of the email was "EOB's," and the text of the email read, "See attached." (*Id.*) The email is included in the Plaintiffs' list of "Chronological List of Communications Evidencing Wire Fraud." (*Id.* at Exh. 20.) In his email to Goldbach, Miller identified how the

EOBs demonstrated how Dr. Rao should code for the devices in order to receive large reimbursements. (*Id.* ¶ 55.)

Overall, the Plaintiffs allege that these exchanges between Miller, Kuhlman, Dr. Rao, and Goldbach demonstrated that "from the start, the promise of extraordinary reimbursement was the foundation of Acclivity's (on behalf of and as directed by IHS) pitch to Dr. Rao and his staff. (*Id.* ¶ 57.)  Miller continued to advise Dr. Rao and his staff to use specific codes to bill for the device throughout 2015 and 2016. (*Id.* ¶¶ 58-59.)  In all, between September 2015 and October 2016, Dr. Rao purchased 90 Neuro-Stims for a total of $45,194.00 paid directly to Acclivity. (*Id.* ¶ 61.)  Acclivity shipped hundreds of the Neuro-Stim devices to the Plaintiffs and others in Maryland from the address 456 Glengarry Way, Covington, KY 41011. (*Id.* at Exh. 10.)

The Plaintiffs allege that Kuhlman is personally responsible for misrepresentations made to the Plaintiffs and others as a Sales Agent for IHS promoting the Neuro-Stim. (*Id.* ¶ 21.)  They allege that Acclivity, Kuhlman, and Miller were each members of the "NSS Enterprise." (*Id.* ¶ 69.)  "Kuhlman and Miller were officers and/or executives with Acclivity, tasked with marketing and selling the [Neuro-Stim"] in defined geographic areas using the [Neuro-Stim System] Sales Materials or modified versions thereof." (*Id.* ¶ 71(h).)  Acclivity and other Sales Agents processed orders made by accounts, took payments from ordering medical providers, and then remitted payment to IHS who in turn would fulfill each order. (*Id.* ¶ 71(m).)

On February 6, 2019, Dr. Bhambhani filed suit against Defendant Innovative Health Solutions, Inc. ("IHS") and Acclivity Medical, LLC ("Acclivity") alleging fraudulent

misrepresentation, intentional misrepresentation by concealment or non-disclosure, negligent misrepresentation, and negligence and seeking declaratory judgment that the Defendants knew or should have known of their misrepresentations. (ECF No. 1.) Acclivity was served at the 456 Glengarry Way address from where the company shipped the Neuro-Stims to the Plaintiffs. (ECF No. 107 at 33; ECF No. 4 at 2.) The Plaintiffs allege that Defendant Kuhlam, the sole member of the Acclivity LLC, accepted service on behalf of the company. (ECF No. 107 at 33.) An Amended Complaint filed a month later included Defendant Innovative Healthcare Solutions, LLC ("IHCS"). (ECF No. 23.)

On February 11, 2020, this Court granted in part and denied in part a motion to dismiss filed by Defendant IHS, allowing Dr. Bhambhani's claims for fraudulent misrepresentation and intentional misrepresentation by concealment against IHS to go forward. (ECF No. 37.) Defendant IHS sought dismissal of the misrepresentation claims arguing that the First Amended Complaint failed to indicate any actionable misrepresentations attributable to IHS, rather than its Sales Agents. (*Id.* at 7.) This Court found that Plaintiff Dr. Bhambhani had adequately alleged the existence of a legal agency relationship between Acclivity and IHCS and IHS such that IHS could be vicariously liable for the actions of the two Sales Agents. (*Id.* at 10.) This Court also held that the Plaintiff had adequately alleged claims for fraud under the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure in both misrepresentation counts. (*Id.* at 11.) This Court noted that throughout the First Amended Complaint was replete with allegations that IHS knew that its representations were false; that it intended to induce Dr. Bhambhani and the class members to purchase the Neuro-Stim; and that it had made partial disclosures regarding FDA approval. (*Id.* at 11-15.)

7

On August 28, 2020, Dr. Rao joined Dr. Bhambhani in filing a Second Amended Complaint on behalf of themselves and other medical providers similarly situated in which they asserts claims against the already-named Defendants, as well as DragonSlayer Strategies LLC, Joy Long, Terri Anderson, Ryan Kuhlman, and Coleman Certified Medical Billing & Consultant, LLC.  (ECF No. 48.)  After two attempts to serve Kuhlman at two different addresses, Kuhlman was ultimately served at the same 456 Glengarry Way address from where Acclivity shipped the Neuro-Stims and where Acclivity was served with the first Complaint in this case.  (ECF Nos. 54, 66, 73.)

The now operative Third Amended Complaint (ECF No. 97) asserts claims for civil violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)  (Count One);  conspiracy to commit civil violation of RICO, 18 U.S.C. § 1962(d) (Count Two); fraudulent misrepresentation (Count Three); intentional misrepresentation by concealment or non-disclosure (Count Four); and civil conspiracy (Count Five) against all Defendants.[5]  On June 3, 2021, Defendant Kuhlman filed a Motion to Dismiss the Third Amended Complaint (ECF No. 102) seeking dismissal of all five counts against him.  Since Kuhlman's filing of his Motion, co-Defendant IHS and Acclivity have filed Answers to the Third Amended Complaint.  (ECF Nos. 103, 106.)

## STANDARD OF REVIEW

### I.   Motion to Dismiss Under 12(b)(2)

---

[5] The Third Amended Complaint did not name Terri Anderson as a Defendant.  Anderson has been terminated as a Defendant in this case.

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The jurisdictional question is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Id.* A court may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, but it also may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, No. ELH-13-03702, 2015 WL 751344, *3 (D. Md. Feb. 20, 2015). In the latter situation, a plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp.*, 561 F.3d at 276. When considering whether the plaintiff has made the requisite showing, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

## II. Motion to Dismiss Under 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

While under Rule 8(a)(2), a plaintiff need only state a plausible claim for relief, Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). "A 'complaint fails to meet the particularity requirements

of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud.'" *Kimberlin v. Hunton & Williams LLP*, No. GJH-15-723, 2016 WL 1270982, at *7 (D. Md. Mar. 29, 2016) (citing *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000)).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## ANALYSIS

Defendant Kuhlman makes several arguments in support of dismissal of all five counts of the Third Amended Complaint as alleged against him. (ECF No. 102-1.) First, Kuhlman asserts that this Court lacks personal jurisdiction over him. He contends that Counts Three, Four, and Five must be dismissed because he does not have minimum contacts with the State

of Maryland.  He then asserts that Counts One and Two must also be dismissed because of extreme inconvenience or unfairness of proceedings in this district.  Second, Kuhlman contends that with respect to all five counts in the Third Amended Complaint, the Plaintiffs have failed to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a plaintiff to assert fraud claims with particularity. Third, Kuhlman asserts that the Plaintiffs have failed to comply with the general rules of pleading under rule 8(a).  Finally, he asserts that Counts Three, Four, and Five are time-barred.  For the reasons that follow, these arguments are without merit in the context of a Motion to Dismiss.

## I.     This Court has jurisdiction over Defendant Kuhlman.

Rule 4(k)(l) of the Federal Rules of Civil Procedure provides that a federal district court may exercise personal jurisdiction over a defendant only if it is in accordance with the law of the state where the district court is located.  *Carefirst of Maryland*, 334 F.3d at 396.  "[T]o assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."  *Id.*  However, "[i]n defining the reach of Maryland's long-arm statute, Maryland courts have concluded that the state legislature intended to expand Maryland's exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment."  *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996) (citing *Camelback Ski Corp. v. Behing*, 513 A.2d 874, 876 (Md. 1986), *vacated and remanded on other grounds*, 480 U.S. 901 (1987)).  Accordingly, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one."  *Id.* at 135-36 (citing *Ellicott Mach. Corp.*

*v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993)).  The United States Supreme Court has long held that personal jurisdiction over a non-resident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Defendant Kuhlman asserts that Counts Three, Four, and Five of the Third Amended Complaint must be dismissed because he lacks sufficient minimum contacts with the State of Maryland.  (ECF No. 102-1.)  However, as noted above, Count I and II of the Third Amended Complaint allege civil violations of RICO against all Defendants.  The Fourth Circuit has construed RICO § 1965(d) as "authoriz[ing] nationwide service of process and, thus, the exercise of personal jurisdiction in any district court." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 386 (E.D. Va. 2003) (citing *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997)). As Judge Chasanow of this Court has explained, RICO provides a basis for exercising personal jurisdiction over a defendant as to RICO claims, therefore making it permissible to assert pendent personal jurisdiction[6] over a RICO defendant as to a plaintiff's state law claims.  *See Swarey v. Desert Capital REIT, Inc.*, No. DKC-11-3615, 2012 WL 4208057, at *7-*8 (D. Md. Sept. 22, 2012).  Therefore, if the Plaintiffs have sufficiently stated a claim against Kuhlman in Counts One and Two which allege civil RICO violations, this Court may exercise pendent personal jurisdiction over Defendant Kuhlman, and an analysis of his contacts with the State

---

[6] "Pendent personal jurisdiction" is a type of supplemental jurisdiction which allows a court to exercise personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative fact with a claim in the same suit over which the court does have personal jurisdiction. *See Internat'l Union, United Mine Workers of America v. CONSOL Energy, Inc.*, 465 F. Supp. 3d 556, 579 (S.D.W. Va. 2020) (citing *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004)).

of Maryland is unnecessary.  For the reasons stated *infra*, this Court is satisfied that the Plaintiffs have adequately alleged claims against Kuhlman in Counts One and Two of the Third Amended Complaint, and this Court need not conduct a minimum contacts analysis.[7]

Additionally, exercising personal jurisdiction over Defendant Kuhlman pursuant to § 1965 comports with due process.  Kuhlman conclusively asserts that Maryland is an inconvenient forum for him, a purported resident of Ohio, but he has "not show[n] that a Maryland forum 'would be so extremely inconvenient as to outweigh the Congressional policy of permitting the exercise of personal jurisdiction pursuant to RICO's nationwide service of process provisions." *See Swarey*, 2012 WL 4208057, at *8 (quoting *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 267, 271 (D.S.C. 1999) (internal citation omitted)).  The Fourth Circuit has noted that when a defendant resides within the United States, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *ESAB Grp.*, 126 F.3d at 627 (internal quotation and citation committed).  Therefore, asserting personal jurisdiction over him as to the Plaintiffs' RICO claims and the rest of the claims in the Third Amended Complaint will not violate the Fifth Amendment. *Swarey*, 2012 WL 4208057, at *8.

## II.     Counts Three, Four, and Five are not time-barred.

Counts Three, Four, and Five assert claims under Maryland law.  (ECF No. 97.)  The parties agree that the applicable statute of limitations for such claims is provided by Md. Code Ann., Cts. & Jud. Proc. § 5-101, which is Maryland's general three-year statute of limitations. (ECF No. 102-1 at 21; ECF No. 107 at 29.)  According to Kuhlman, Plaintiff Dr. Bhambhani

---

[7] The exercise of supplemental jurisdiction over Kuhlman as to Counts Three, Four, and Five remain dependent on the RICO claims in Count I and II.

alleges that she knew of the injuries complained of in the Third Amended Complaint at the latest in August of 2016.  (ECF No. 97 ¶ 17.)  Dr. Rao alleges he knew of the injuries at the latest in March of 2017.  (*Id.* at 23-24.)  Kuhlman was first named as a Defendant in this action in the Plaintiffs' Second Amended Complaint filed on August 28, 2020.  (ECF No. 48.)  This was more than three years after both named Plaintiffs allegedly became aware of their purported injuries.

However, the original Complaint in this case was filed on February 6, 2019.  (ECF No. 1.)  Rule 15(c) of the Federal Rules of Civil Procedure allows a party to amend his pleading after expiration of the statute of limitations if the amendment relates back to the original pleading.  When adding a new party, the amendment only relates back if:

(1) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading;" Fed. R. Civ. P. 15(c)(1)(B)-(C);

(2) the new party "*received such notice* of the action that it will not be prejudiced in defending on the merits," Fed. R. Civ. P. 15(c)(l)(C)(i) (emphasis added);

(3) the new party "*knew or should have known* that the action would have been brought against it, but for a mistake concerning the proper party's identity," Fed. R. Civ. P. 15(c)(1)(C)(ii) (emphasis added); and

(4) requirements three and four are satisfied "within the period provided by Rule 4(m)," Fed. R. Civ. P. 15(c)(1)(C).

These "core requirements" of the Rule "preserve for the new party the protections of a statute of limitations.  They assure that the new party had adequate notice within the limitations period and was not prejudiced by being added to the litigation." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 470 (4th Cir. 2007).  Accordingly, the U.S. Court of Appeals for the Fourth Circuit has explained that the type of "mistake" required by Rule 15(c)(3)(B) is "textually limited to

describing the notice that the new party had, requiring that the new party have expected or should have expected, within the limitations period, that it was meant to be named a party in the first place." *Id.* at 471. Overall, when a newly named party "has been given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back." *Id.*

In *Western Contracting Corp. v. Bechtel Corp.*, the Fourth Circuit held that the relation back doctrine did not apply where the plaintiffs originally named a corporation and later sought to add certain employees of that corporation as defendants outside of the applicable statute of limitations. 885 F.2d 1196, 1201 (4th Cir. 1989). However, as the Court later explained in *Goodman*, because the original pleading "set out claims only *against the corporation*, without mention of individual employees responsible, the individual employees had not reason to notice they should also have been parties." 494 F.3d at 472. Nevertheless, the case at hand is distinguishable from both *Western Contracting* and *Goodman*.

In this case, Kuhlman was not a mere "employee" of Acclivity, which was named in the initial Complaint filed on February 6, 2019, well within the three-year statute of limitations. As alleged by the Plaintiffs, he was the sole and controlling member of the LLC before he dissolved the company in June of 2017. The Plaintiffs also allege that Kuhlman was served on behalf of Acclivity. As the issued summons show, both Acclivity and Kuhlman were served at the same address in Kentucky—the same address from which Acclivity mailed the Neuro-Stim devices to the Plaintiffs in Maryland. Finally, the Plaintiffs have asserted that they would have named Kuhlman as a plaintiff in the original Complaint "but for" a mistake. (ECF No.

107 at 33.)   They suggest that they were unaware that it was Kuhlman who personally perpetrated the various alleged acts of fraud against them on behalf of Acclivity.   (*Id.*)

As Judge Russell of this Court noted in *Dreher v. Maryland*, when considering the relation back doctrine in the context of a motion to dismiss, this Court, as always, "must accept the truth of [a plaintiff's] plausible allegations and draw all reasonable inferences in his favor." No. GLR-17-3832, 2019 WL 528192, at *7 (D. Md. Feb. 11, 2019).   Given the Plaintiffs' allegations that Kuhlman was the sole and controlling member of Acclivity at the time the company was served and that he in fact accepted served on the company's behalf, the Plaintiffs have sufficiently alleged that he had knowledge of the suit and that he knew or should have known that he was an appropriate defendant in this case.   In consideration of the liberal amendment polices of the Federal Rules and the overall purpose of the relation back doctrine to provide a defendant with adequate notice of the claims against him, this Court will deny the Motion to Dismiss Counts Three, Four, and Five on limitation grounds.   Accepting the facts as alleged by the Plaintiffs as true, this Court is satisfied that the Plaintiffs' amendment adding Kuhlman as a party relates back to the filing of the original Complaint.

### III.   The Plaintiffs have sufficiently stated claims for fraud against Defendant Kuhlman in all five counts of the Third Amended Complaint.

As noted above, a Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a plaintiff state only a plausible claim for relief.   Rule 9(b) imposes a higher pleading standard for fraud claims, requiring that a plaintiff state the circumstances constituting fraud with "particularity."   "It is well established that Rule 9(b) applies to RICO claims where the alleged predicate acts involved fraud."   *Superior Bank, F.S.B. v. Tandem Nat. Mortgage, Inc.*, 197 F. Supp. 2d 298, 326 (D. Md. 2000).   Courts have also held that RICO conspiracy causes of action

17

sounding in fraud are required to be pled in accord with the specificity demanded by Rule 9(b).

*See Lachmund v. ADM Inv'r Servs., Inc.*, 191 F.3d 777, 785 (9th Cir. 1999).  The parties do not

appear to dispute that Rule 9(b) applies to all five counts of the Third Amended Complaint.

Defendant Kuhlman contends that the Plaintiffs have failed to meet both the Rule 8(a)(2)

pleading standard, as well as the heightened standard under Rule 9(b).  His primary argument

in favor of dismissal for failure to state a claim is that the Plaintiffs may not impose personal

liability on him for the activities of the Acclivity LLC.

As the parties agree, the liability of a member of a Kentucky LLC such as Acclivity is

governed by the Kentucky Revised States ("KRS").  In Section 275.150, the KRS provides:

(1) Except as provided in subsection (2) of this section or as otherwise specifically set forth in other sections in this chapter, no member, manager, employee, or agent of a limited liability company, including a professional limited liability company, shall be personally liable by reason of being a member, manager, employee, or agent of the limited liability company, under a judgment, decree, or order of a court, agency, or tribunal of any type, or in any other manner, in this or any other state, or on any other basis, for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise. The status of a person, as a member, manager, employee, or agent of a limited liability company, including a professional limited liability company, shall not subject the person to personal liability for the acts or omissions, including any negligence, wrongful act, or actionable misconduct, of any other members, manager, agent, or employee of the limited liability company.  <u>That a limited liability company has a single member or a single manager is not a basis for setting aside the rule otherwise recited in this subsection.</u>

(2) Notwithstanding the provisions of subsection (1) of this section, under a written operating agreement or under another written agreement, a member or manager may agree to be obligated personally for any of the debts, obligations, and liabilities of the limited liability company.

(3) Subsection (1) of this section shall not affect the liability of a member, manager, employee, or agent of a limited liability company for his or her own negligence, wrongful acts, or misconduct.

KSR 275.150 (emphasis added).  As emphasized above, this section provides that the fact that

"a limited liability company has a single member or a single manager is not a basis for setting

aside the rule otherwise recited in this subsection." *Id.* Another provision of the KRS provides that dissolution of an LLC "shall not . . . [a]bate or suspend KRS 275.150(1)." KRS 275.205(3)(i).

Relying on this language, the Supreme Court of Kentucky held in *Pannell v. Shannon* that "[t]o the extent that any liability is claimed solely because [the defendant] was a manager or agent of the LLC," the trial court was correct to grant summary judgment in favor of that defendant. 425 S.W.3d 58, 78 (Ky. 2014). The Kentucky court reasoned that "[t]he business statutes of th[e] Commonwealth disfavor personal liability" and that "allowing personal liability [was] 'antithetical to the purpose of a limited liability company.'" *Id.* at 66 (citing *Racing Investment Fund 2000, LLC v. Clay Ward Agency, Inc.*, 320 S.W.3d 654, 659 (Ky. 2010)). Similarly, in *Pulaski Properties, Inc. v. Haney*, the Court of Appeals of Kentucky rejected a plaintiff's arguments that an individual defendant should be liable for an LLC's breach of contract because he was, as the managing member of the two-member LLC, "effectively and legally" the LLC itself for all purposes pertaining to the agreement between the plaintiff and the LLC. 2019 WL 5092461, at *3 (Ky. Ct. App. Oct. 11, 2019). The court noted that any such argument "disregard[ed]" KRS 275.150. *Id.* In this case, Kuhlman cannot be liable *solely* on the basis of his status as a member or agent of the Acclivity LLC.

Nevertheless, Kuhlman's membership in an LLC cannot shield him from liability for his own tortious misconduct. As provided above, Subsection (3) of KRS 275.150 explicitly states, that "Subsection (1) of this section shall not affect the liability of a member, manager, employee, or agent of a limited liability company for his or her own negligence, wrongful acts, or misconduct." This subsection prevents an individual member of an LLC from using the

"business form" of his company as a "shield" from liability for his own alleged violations of law. *McQueen v. Huddleston*, No. 13-CV-00302V(F), 2017 WL 5170961, at *6 (W.D.N.Y. Oct. 16, 2017) (applying KSR 275.150). Although Subsection (3) did not become effective until 2010, the section merely codified a long history of Kentucky courts imposing liability upon individual members of LLCs and corporations for their own tortious conduct. As the Supreme Court of Kentucky stated in *Smith v. Isaacs*, "the agent of a corporation, albeit a principal shareholder and officer of the corporation, 'is personally liable for a tort committed by him although he was acting for the corporation.'" 777 S.W.2d 912, 914 (Ky. 1989) (quoting *Peters v. Frey*, 429 S.W.2d 847, 849 (Ky. 1968)). In other words, "'an agent of a corporation is liable in damages for injuries suffered by third persons because of his (the agent's) tort, regardless of whether he acted on his own account or in behalf of a corporation, and regardless of whether or not the corporation is also liable.'" *Conn v. Markwest Hydrocarbon, Inc.*, 2006 WL 782728, at *5 (E.D. Ky. 2006) (quoting *Pirtle's Adm'x v. Hargis Bank & Trust Co.*, 44 S.W.2d 541, 546 (Ky. 1932)).

In *Pirtle's Adm'x*, the Supreme Court of Kentucky found a defendant's status as a bank president could not shield him from liability for his direct involvement in the management and operation of a hotel of which the bank was a trustee. 44 S.W.2d at 542-43. The court noted that the duties he assumed were not in conjunction with the obligations he owed to the bank as president—they were duties assumed as the bank's servant or agent in fulfilling the bank's trust obligations. *Id.* Relying on *Pirtle's Adm'x*, the court in *Conn* allowed claims against three individual employees of a group of related corporations and LLCs to go forward despite a lack of allegations of specific acts or omissions made by each of them. 2006 WL 782728,

*6-*8.  The court noted that the plaintiffs had named the three particular employees "because they believed them to be the primary employees responsible for work that was or should have been performed" by the defendant companies.  *Id.* at *6.  Similarly, in *McQueen*, relying explicitly on KRS 275.150(3), the court held that the sole member and employee of a law firm structured as an LLC could be held liable for the acts of the law firm, conduct attributable solely to him.  2017 WL 5170961, at *6.

The Plaintiffs in this case have alleged that Kuhlman was the sole and controlling member of Acclivity at all times relevant to this dispute, until he personally dissolved the LLC in 2017.  They allege that he and Matthew Miller were personally responsible for all actions of Acclivity, including the fraudulent misrepresentations made to the Plaintiffs on behalf of Acclivity.  They have attached to their Third Amended Complaint an email sent by Defendant Kuhlman on behalf of Acclivity containing Explanation of Benefits statements ("EOBs"), which may demonstrate the fraudulent coding scheme alleged by the Plaintiffs.   They have also provided documentation that shows that the Neuro-Stim devices were mailed from the same address in Kentucky at which Kuhlman and Acclivity were served, supporting allegations that he was the central figure for operation of the LLC's business.  The fact that Kuhlman was a member of the Acclivity LLC cannot shield him from liability for his own tortious acts.  He may be held accountable for any misconduct.

The question then is whether the facts, as alleged, state with sufficiently particularity the circumstances of the fraud alleged in all counts of the Third Amended Complaint.  With respect to Counts Three and Four, this Court previously held in its Memorandum Opinion of February 11, 2020 that the facts alleged by the Plaintiffs were sufficient to meet the Rule 9(b)

pleading requirements with respect to Defendant IHS.  (ECF No. 37.)  In that Memorandum Opinion, the Court held that Dr. Bhambhani had plausibly alleged an agency relationship between IHS and its Sales Agents, Acclivity and IHCS.  (*Id.* at 10.)  In then holding that the facts alleged stated with particularity claims for fraudulent misrepresentation and intentional misrepresentation by concealment or nondisclosure, this Court impliedly held that the facts were sufficient to state a claim against Defendant Acclivity as well.  Indeed, Defendant Acclivity did not file a Motion to Dismiss in this case and has submitted an Answer to the Third Amended Complaint.  (ECF No. 106.)  As discussed in detail above, this Court is satisfied that the Plaintiffs have sufficiently alleged that Kuhlman was personally involved in the allegedly fraudulent conduct of Acclivity and cannot use his membership in the LLC as a shield from liability.  Accordingly, this Court is satisfied that the Plaintiffs' allegations are sufficient at this stage to state claims for fraud (as well as the conspiracy claim based on such fraud alleged in Count Five) with the particularity required by Rule 9(b) against Kuhlman. There is no basis for this Court to deviate from its previous ruling in this case.  *See Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (noting that a court should not deviate from its previous ruling "in the absence of extraordinary circumstances").

With respect to Counts One and Two, alleging civil violation of RICO and RICO conspiracy pursuant to 18 U.S.C. § 1962(c) and (d)1962, this Court is again satisfied that the Plaintiffs have met the Rule 8(a)(2) and Rule 9(b) pleading requirements.  In the specific context of pleading a RICO claim against multiple defendants, this Court has determined "that is not necessary that a plaintiff elucidate every single detail of the alleged fraud."  *WW, LLC v. Coffee Beanery, Ltd.*, No. WMN-0503360, 2012 WL 3728184, at *10 (D. Md. Aug. 27, 2012)

(quoting *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 798-99 (D. Md. 1998) (internal citation omitted)). Additionally, "[d]espite the high standard demanded by the Rule 9(b) particularity requirement, in the context of RICO mail fraud," as is relevant in this case, "the Court may also consider the interplay of the more liberal notice pleading standard of Rule 8, which simply requires 'a short and plain statement.'" *Id.* at *10 (citing *Kerby*, 992 F. Supp. at 799). In *Coffee Beanery*, this Court held that the plaintiffs had alleged predicate mail and wire fraud with sufficient particularity to satisfy Rule 9(b) where they had alleged the circumstances surrounding the use of the mails by the defendants (*i.e.*, when certain documents were mailed), as well as identified which representations made by the defendants were false or how some representations may have included fraudulent omissions. *Id.* at *11.

In this case, the Plaintiffs have specifically alleged why several of the Defendants' statements regarding the Neuro-Stim were false or were misleading due to omissions regarding the intended and FDA-approved use of the device, pointing to specific documents and materials prepared and distributed by the Defendants and alleging when and how such documents were in fact distributed. (*See e.g.*, ECF No. 97 ¶¶ 9, 35-51, 53-60.) For much of the same reasons discussed by this Court in its previous Memorandum Opinion regarding claims for fraudulent misrepresentation and intentional misrepresentation by concealment, this Court is satisfied that the Plaintiffs have sufficiently stated a claim for relief in Counts One and Two.

## CONCLUSION

For the foregoing reasons, the Defendant Kuhlman's Motion to Dismiss (ECF No. 102) is DENIED.

A separate Order follows.

Dated: August 3, 2021

                                       /s/

Richard D. Bennett
United States District Judge