## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| RITU BHAMBHANI, M.D. and SUDHIR RAO, M.D., *on behalf of themselves and all others similarly situated*, | : : : : | Civil Action No. 1:19-cv-00355-LKG |
| *Plaintiffs*, | : : | |
| - v. - | : : | |
| INNOVATIVE HEALTH SOLUTIONS, INC., et al., | : : | *[Filed via ECF]* |
| *Defendants*. | : : : | |

---

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT**

---

John W. Leardi (admitted *pro hac vice)*
Paul D. Werner ((admitted *pro hac vice*)
Nicole P. Allocca (admitted *pro hac vice*)
BUTTACI LEARDI & WERNER, LLC
212 Carnegie Center, Suite 202
Princeton, NJ 08540
609-799-5150

Robert A. Gaumont (Bar No. 26302)
GORDON FEINBLATT LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202
410-576-4007

Ugo Colella, Bar. No. 17443
John J. Zefutie, Jr. (admitted *pro hac vice*)
COLELLA ZEFUTIE LLC
4200 Wisconsin Avenue NW #106-305
Washington, DC 20016
202-920-0880

*Attorneys for Plaintiffs Ritu Bhambhani M.D.,
Sudhir Rao M.D., and the Putative Class*

## **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

LEGAL ARGUMENT ...................................................................................................... 4

I.      STANDARDS OF REVIEW. ................................................................................. 4

        A.      Article III Standing ................................................................................... 4

        B.      Statutory Standing Under RICO. .............................................................. 5

        C.      Evaluating Standing Prior to Class Certification. ..................................... 5

II.     PLAINTIFFS HAVE SUSTAINED REDRESSABLE INJURIES................................... 7

        A.      Plaintiffs are Individually Liable for Medicare Overpayments Suffered
                as a Result of Defendants' Fraud. ............................................................. 7

        B.      Plaintiffs' Claims Seek Relief for Direct Individual Injuries Not
                Derivative Injuries Suffered by their Medical Practice Entities. ............................ 13

III.    THE COURT SHOULD GRANT PLAINTIFFS' LEAVE TO FILE A FOURTH
        AMENDED COMPLAINT THAT ADDS THE PRACTICE ENTITIES AS
        ADDITIONAL NAMED PLAINTIFFS. ........................................................................ 17

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A Guy Named Moe, LLC v. Chipotle Mexican Grill of Colorado, LLC*,
223 Md. App. 240 (2015) ........................................................................................ 13

*Abdul-Mumit v. Alexandria Hyundai, LLC*,
896 F. 3d 278 (4th Cir. 2018) ................................................................................. 18

*Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*,
929 F.Supp.2d 502 (D. Md. 2013) .......................................................................... 13

*Albunio v. Int'l Safety Grp., Inc.*,
No. 15-CV-152 (VEC),
2016 WL 1267795 (S.D.N.Y. Mar. 30, 2016) ................................................... 5, 16

*Allen v. Dackman*,
413 Md. 132 (2010) ................................................................................................. 13

*Argiropoulos v. Kopp*,
No. CCB-06-0769,
2007 WL 954747 (D. Md. Mar. 26, 2007) ............................................................... 15

*Baehr v. Creig Northrop Team, P.C.*,
953 F.3d 244 (4th Cir. 2020) ..................................................................................... 5

*Blufeld v. Cohen*,
No. PX 15-2857,
2017 WL 1546406 (D. Md. Apr. 27, 2017) ............................................................. 15

*Clarian Health W., LLC v. Hargan*,
878 F.3d 346 (D.C. Cir. 2017) ................................................................................... 8

*Curtis v. Propel Prop. Tax Funding, LLC*
915 F.3d 234 (4th Cir. 2019) ..................................................................................... 6

*Davis v. Piper Aircraft Corp.*,
615 F.2d 606 (4th Cir. 1980) ................................................................................... 19

*Dreher v. Experian Info. Sols., Inc.*,
856 F.3d 337 (4th Cir. 2017) ..................................................................................... 5

*Easter v. Am. West Fin.*,
381 F.3d 948 (9th Cir. 2004) ..................................................................................... 6

*Electrolux Home Prods. v. Nat'l Trade Supply, LLC*,
   No. 3:21-CV-00246-FDW-DSC,
   2021 U.S. Dist. LEXIS 234169 (W.D.N.C. Dec. 7, 2021) ...................................................... 18

*Foman v. Davis*,
   371 U.S. 178 (1962)................................................................................................................ 19

*Franchise Tax Bd. v. Alcan Aluminium Ltd.*,
   493 U.S. 331 (1990)................................................................................................................ 14

*Galustian v. Peter*,
   591 F.3d 724 (4th Cir. 2010) ................................................................................................. 18

*Gen. Technology Applications, Inc. v. Exro Ltda.*,
   388 F. 3d 114 (4th Cir. 2004) ................................................................................................ 14

*Gonzalez v. Fairgale Props. Co., N.V.*,
   241 F. Supp. 2d 512 (D. Md. 2002) .................................................................................. 13, 14

*Gratz v. Bollinger*,
   539 U.S. 244 (2003)................................................................................................................... 6

*Heater v. Gen. Motors, LLC*,
   No. 1:21CV24,
   2021 WL 4896546 (N.D.W. Va. Oct. 20, 2021)................................................................... 6, 7

*Holmes v. Price*,
   No. 2:17-2491-BHH-BM,
   2018 U.S. Dist. LEXIS 222440 (D.S.C. Oct. 30, 2018) ........................................................... 8

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
   892 F.3d 613 (4th Cir. 2018) ................................................................................................... 5

*Ibikunle Ojebuoboh v. Sebelius*,
   No. 4:11-CV-00017-BR,
   2012 U.S. Dist. LEXIS 73821 (E.D.N.C. May 29, 2012).......................................................... 8

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011)................................................................................... 7

*Johnson v. Nissan N. Am. Inc.*,
   272 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................................................................ 6, 18

*Johnson v. Oroweat Foods Co.*,
   785 F.2d 503 (4th Cir. 1986) ................................................................................................. 18

*Kroblin Refrigerated Express v. Pitterich*,
　805 F.2d 96 (3d Cir. 1986) ................................................................................ 15

*L.A. Haven Hospice, Inc. v. Sebelius*,
　638 F.3d 644 (9th Cir. 2011) ............................................................................ 12

*Laber v. Harvey*,
　438 F.3d 404 (4th Cir. 2006) ............................................................................ 19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
　572 U.S. 118 (2014) ............................................................................................ 5

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) ........................................................................................ 4, 5

*Matthews v. Headley Chocolate Co.*,
　130 Md. 523 (1917) .......................................................................................... 17

*Md. Dep't of Health & Mental Hygiene v. Ctrs. for Medicare & Medicaid Servs.*,
　542 F.3d 424 (4th Cir. 2008) .............................................................................. 7

*Michigan Nat'l Bank v. Mudgett*,
　444 N.W.2d 534 (Mich. Ct. App. 1989) ......................................................... 15

*O'Kane v. Impactivate Networks*,
　2021 WL 236493 (D.N.J. Jan. 25, 2021) ........................................................ 15

*Oliviera v. Sugarman*,
　451 Md. 208 (2017) .......................................................................................... 17

*Orgain v. City of Salisbury*,
　521 F. Supp. 2d 465 (D. Md. 2007) ................................................................. 14

*Pashby v. Delia*,
　709 F.3d 307 (4th Cir. 2013) .............................................................................. 7

*Perez v. Nidek Co., Ltd.*,
　711 F.3d 1109 (9th Cir. 2013) ............................................................................ 6

*Pittston Co. v. United States*,
　199 F.3d 694 (4th Cir. 1999) ............................................................................ 18

*Sedima, S.P.R.L. v. Imrex Co, Inc.*,
　473 U.S. 479 (1985) ........................................................................... 5, 6, 16, 17

*Senne v. Kansas City Royals Baseball Corp.*,
   114 F. Supp. 3d 906 (N.D. Cal. 2015) ............................................................ 6

*Shenker v. Laureate Educ.*,
   411 Md. 317 (2009) ....................................................................................... 14

*Singh v. Averett*,
   2020 WL 4431522 (E.D. Pa. July 31, 2020)................................................... 15

*Spokeo, Inc. v. Robins*,
   573 U.S. 330 (2016).............................................................................. 4, 5, 13

*Steel Co. v. Citizens for Better Env't*,
   523 U.S. 83 (1998)............................................................................................ 5

*Strougo v. Bassini*,
   282 F.3d 162 (2d Cir. 2002)............................................................................ 15

*Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*,
   743 F.2d 1039 (4th Cir. 1984) ........................................................................ 18

*Triple R. Ranch, LLC v. Pilgrim's Pride Corp.*,
   456 F. Supp. 3d 775 (N.D.W. Va. 2019) ......................................................... 14

*United States ex rel. Harris v. Dialysis Corp. of Am.*,
   No. JKB-09-2457,
   2013 U.S. Dist. LEXIS 142526 (D. Md. Oct. 1, 2013)..................................... 8

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.*,
   535 U.S. 635 (2002)......................................................................................... 5

*VFI Assocs., LLC v. Lobo Mach. Corp.*,
   No. 1:08CV00014,
   2012 WL 975705 (W.D. Va. Mar. 22, 2012)................................................... 17

*W. Va. v. Thompson*,
   475 F.3d 204, 212 (4th Cir. 2007) .................................................................... 7

*Waller v. Waller*,
   187 Md. 185 (1946) ........................................................................................ 14

*Zokoych v. Spalding*,
   344 N.E.2d 654 (Ill. 1976).............................................................................. 15

**Rules**

Fed. R. Civ. P. 15(a) ......................................................................................... 18

Fed. R. Civ. P.  23(a) ......................................................................................... 6

**Regulations**

42 C.F.R. § 424 ................................................................................................. 9

41 C.F.R. § 424.530(a)(6) ................................................................................. 9

**Other Authorities**

79 Fed. Reg. 72499 (December. 5, 2014) ......................................................... 9

79 Fed. Reg. 72500 (December 5, 2014). ......................................................... 9

79 Fed. Reg. 72506 (December 5, 2014) ......................................................... 9

Plaintiffs Ritu Bhambhani, M.D. ("Dr. Bhambhani") and Sudhir Rao, M.D. ("Dr. Rao"), (collectively, "Plaintiffs") by and through their undersigned counsel, hereby submit this Consolidated Memorandum of Law in Opposition to the Motion for Summary Judgment submitted by Defendant Innovative Health Solutions, Inc. ("IHS") (ECF No. 125), which was later joined by Defendant Acclivity Medical LLC ("Acclivity") (ECF No. 131) (collectively, "Defendants"), and in Support of Plaintiffs' Motion for Leave to File a Fourth Amended Complaint.

## PRELIMINARY STATEMENT

Defendants' motion for summary judgment is based entirely on a legal falsehood. The thrust of their argument is that Plaintiffs' medical practice entities have been injured, and not Plaintiffs individually. Defendants point the Court to the various overpayment letters to and from Medicare being addressed to Dr. Bhambhani's and Dr. Rao's practice entities, and to snippets of their deposition testimony. Starkly absent, however, is any mention of the Social Security Act, the regulations promulgated thereunder, or any other interpretive guidance from Medicare on who is responsible for a debt owed to the Medicare program when an overpayment is identified.

That speaks volumes about the merit of Defendants' arguments. Frankly, it's not surprising that the same entities who marketed a device affixed using scotch tape as a surgically-implantable neurostimulator would also fail to address a clear and unambiguous pronouncement from Medicare as to who Medicare will ultimately hold responsible for improper payments made to providers who billed according to this protocol. Simply put, the Medicare program, which is not bound by state-based distinctions between individual physicians and their medical practice entities, holds treating providers ***individually*** liable for any "Medicare debt" that accrues because of an overpayment. And that is precisely what happened here to Plaintiffs.

To be clear, there is no factual dispute over who the "billing provider" was here in the

context of the Neuro-Stim claims Plaintiffs submitted to Medicare. In each instance, those claims were submitted by Ritu Bhambhani LLC and Box Hill Surgery Center LLC, in the case of Dr. Bhambhani, and Pain and Spine Specialists of Maryland LLC and SimCare ASC LLC, in the case of Dr.Rao (collectively, the "Practice Entities"). In most instances, the Practice Entities purchased the Neuro-Stim devices in issue in this case from either IHS or one of its surrogate distributors. And, yes, as Plaintiffs confirmed in their depositions, the Practice Entities are to whom Medicare addressed its overpayment findings. But these "undisputed" facts miss the point.

The Medicare Claims Processing Manual, which the Fourth Circuit has acknowledged as presumptively authoritative on the matters contained therein, clearly and unambiguously states that "treating providers," i.e., physicians who render the services billed to Medicare on a particular claim form, are jointly and severally liable for any overpayment made with respect to those same services regardless of whether that treating provider is also the "billing provider," i.e., the physician or medical practice entity that received the overpayment in question. Moreover, regulations promulgated under the Social Security Act also permit the Medicare program to deny reenrollment privileges to _**any**_ beneficial owner of a billing provider with an unresolved Medicare debt, which includes any overpayment that has been assessed but for which administrative appeals may nevertheless remain. So, Plaintiffs are both (i) personally liable for the Medicare debts stemming from overpayments made to the Practice Entities and (ii) will be unable to reenroll with Medicare until such time as either those debts are satisfied, or some acceptable repayment plan is approved by Medicare. That is real-world harm that gives Plaintiffs standing in this case.

The Defendants are simply wrong on the legal issue of who "owns" the Medicare debts referenced in the operative complaint and borne out in discovery, and all the other individual injuries that flow from them. And because the Defendants are simply wrong on the law, there is

no need to engage in a point-by-point rebuttal of facts, nor the need to proffer any other evidence of a factual dispute to oppose their motion; the motion is dead on arrival.

That said, Defendants' motion does illustrate that the Practice Entities have suffered their own discreet injuries, separate and apart from those sustained by Plaintiffs individually. And so, while the Practice Entities are irrefutably part of the Putative Class on whose behalf Plaintiffs filed this lawsuit, Plaintiffs' forthcoming motion for class certification may very well seek to certify multiple classes and/or sub-classes, including a sub-class seeking relief on behalf of the group of providers (treating or billing) that purchased the Neuro-Stim devices in question based on the misrepresentations made by IHS and its surrogates. Thus, in addition to opposing Defendants' motion, Plaintiffs now cross move for leave to file a Fourth Amended Complaint, with the sole change to now add the Practice Entities as named plaintiffs.

Under Rule 15(a), leave to replead is "liberally granted" when "justice requires." The touchstone to evaluating an application under Rule 15(a) requires a Court to grant such a motion so long as the application is not futile, and the non-moving party will not suffer undue prejudice. As Defendants own motion papers concede, no reasonable argument can be made that the Practice Entities have not been harmed; this is, in essence, the main thrust of Defendants' motion, of course. So, futility is not on the table. And as to undue prejudice, there is none for two main reasons. First, discovery is not yet complete: there are still two months' worth of class discovery left, and at least another 90 days' worth of merits discovery ***after*** the Court decides Plaintiffs' forthcoming motion for class certification. Even if the proposed amendment would require the Defendants to conduct additional discovery into the Practice Entities' claims, there is more than enough time.

But merely adding the Practice Entities as named plaintiffs requires no further discovery because any relevant information or document in the possession, custody, or control of the Practice

Entities was already produced—by their beneficial owners, Dr. Bhambhani and Dr. Rao. For example, any employee or agent of the Practice Entities with knowledge or information of the underlying facts was identified in answers to interrogatories. The entirety of the Medicare overpayment files, including all correspondence to, from, or copying the Practice Entities, was produced in discovery; after all, how else would IHS have had the documents its attached as exhibits to its motion. And finally, Dr. Bhambhani and Dr. Rao already provided testimony responsive to the subpoenas served on the Practice Entities in June 2021.

Adding the Practice Entities would not prejudice the Defendants because the Practice Entities have already been active participants in this case. Plaintiffs now move simply to formalize that participation, and to permit those entities to seek their own damages, either individually, or perhaps as class representatives should the Court certify one or more classes.

## LEGAL ARGUMENT

### I.   STANDARDS OF REVIEW.

#### A.   Article III Standing

The doctrine of standing is rooted in Article III's requirement of a "case or controversy." *Spokeo, Inc. v. Robins*, 573 U.S. 330, 338 (2016). Generally stated, standing consists of three elements: "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Injury-in-fact is the "first and foremost" of standing's three elements. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998).

To establish injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 573 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

Importantly, "[i]n a class action matter, [courts] analyze standing *based on the allegations of personal injury made by the named plaintiffs*." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (emphasis added); *accord Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018).

    B.    <u>Statutory Standing[1] Under RICO.</u>

"To establish RICO standing, a plaintiff must plead at a minimum, (1) a defendant's violation of I, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Albunio v. Int'l Safety Grp., Inc.*, No. 15-CV-152 (VEC), 2016 WL 1267795, at *3 (S.D.N.Y. Mar. 30, 2016). As the Supreme Court recognized long ago, "RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purpose.'" *Sedima, S.P.R.L. v. Imrex Co, Inc.*, 473 U.S. 479, 497-98 (1985).

Since *Spokeo*, to sustain a statutory cause of action, plaintiffs must have suffered a concrete harm because of the "defendant's statutory violation that is the type of harm Congress sought to prevent when it enacted the statute." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 254 (4th Cir. 2020) (quoting *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 240-41 (4th Cir. 2019)). Indeed, RICO's remedial purposes "are nowhere more evident than in the provision of a private action for those [like Plaintiffs here] injured by racketeering activity." *Id.* at 498.

    C.    <u>Evaluating Standing Prior to Class Certification.</u>

There is no mandatory requirement in this Circuit that Plaintiffs establish Article III

---

[1] As Justice Scalia noted in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140,, "statutory standing" is not a "standing" or jurisdictional issue. Instead, whether a claimant can sustain a cause of action under a particular statute "does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case." *Id.* (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 642-644 (2002).

standing prior to class certification. Courts in the Fourth Circuit have referred to, and endorsed, a Ninth Circuit holding that "[d]istrict courts have the discretion to defer questions of standing until after class certification . . . ." *Heater v. Gen. Motors, LLC*, No. 1:21CV24, 2021 WL 4896546, at *12 (N.D.W. Va. Oct. 20, 2021) (internal quotations omitted) (citing *Johnson v. Nissan N. Am. Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017).[2] As to standing for class certification purposes, "[d]istrict Courts within the Fourth Circuit have consistently held that plaintiffs do not having standing to bring claims under the statutes or laws of a state where they: (1) do not reside; and, (2) have not been harmed. . . Likewise, district courts in other circuits have applied this principle to class action allegations." *Heater v. Gen. Motors, LLC*, No. 1:21CV24, 2021 WL 4896546, at *12 (N.D. W. Va. Oct. 20, 2021) (internal quotations omitted); *see also In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) (explaining that named plaintiffs lack "standing to assert claims under the laws of states in which they do not reside or in which they have suffered no injury"). The Fourth Circuit, moreover, has not addressed whether a plaintiff has standing to bring a "nationwide class action allegations based on violations of individual state statutes, or

---

[2] Defendants also look to various other circuits, and in particular the Ninth Circuit, to argue that this Court ***must*** consider the named plaintiff's standing before considering class certification. They cite *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004). However, at best for Defendants, courts in the Ninth Circuit are split on the issue: "Courts in this district are split on the question of whether the standing inquiry can be deferred until after class certification." *Senne v. Kansas City Royals Baseball Corp.*, 114 F. Supp. 3d 906, 921 (N.D. Cal. 2015). *Senne* recognized that *Easter* "should be read more narrowly to stand for the unremarkable proposition that for a class action to proceed between the named parties, each named plaintiff must have standing to sue at least each named defendant; to hold each defendant in the case, there must be one named plaintiff with standing to sue said defendant." *Id.* at 921-22. In a subsequent decision, *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109 (9th Cir. 2013), the Ninth Circuit recognized that it was an open question whether class certification should be decided before standing and pointed to the Supreme Court's recognition that "there is a tension in [its] prior cases" as to whether the variation among class members as to the injury suffered "is a matter of Article III standing . . . . or whether it goes to the propriety of class certification pursuant to Federal Rule of Civil Procedure 23(a)." *Gratz v. Bollinger,* 539 U.S. 244, 263 & 263, n. 15 (2003).

whether this issue must be reserved for the class certification stage." *Heater v. Gen. Motors, LLC*, No. 1:21CV24, 2021 WL 4896546, at *12 (N.D. W. Va. Oct. 20, 2021).

Here, and as set out fully below at Point II, *infra*, Plaintiffs easily satisfy the individual injury requirements to have standing under both Article IIII and the substantive claims they bring; and matters of class certification need not be addressed until a class motion is filed. So, whether the Court adjudicates this motion before, during, or after a class motion, is of no moment.

## II.    PLAINTIFFS HAVE SUSTAINED REDRESSABLE INJURIES.

### A.    Plaintiffs are Individually Liable for Medicare Overpayments Suffered as a Result of Defendants' Fraud.

Contrary to Defendants' arguments, the Plaintiffs have sustained a redressable injury that is unique to the Plaintiffs in their capacity as individual medical practitioners. As stated by the Centers for Medicare and Medicaid Services ("CMS"), Plaintiffs are individually liable for the Medicare overpayments caused by the Neuro-Stim scheme at issue here. As a threshold matter, courts in the Fourth Circuit grant tremendous deference to CMS's legal interpretations. *Pashby v. Delia*, 709 F.3d 307, 338 (4th Cir. 2013). Further, courts view CMS guidance in light of the Administrative Procedure Act, and only set aside CMS findings when they are found to be arbitrary, capricious, or otherwise not in accordance with the law. *Md. Dep't of Health & Mental Hygiene v. Ctrs. for Medicare & Medicaid Servs.*, 542 F.3d 424, 427 (4th Cir. 2008). Additionally, courts defer to CMS's interpretation of the Social Security Act because it is extraordinarily complex and technical. *W. Va. v. Thompson*, 475 F.3d 204, 212 (4th Cir. 2007). Indeed, courts in the Fourth Circuit routinely consult the CMS guidance regarding the administration of Medicare. *See United States ex rel. Harris v. Dialysis Corp. of Am.*, No. JKB-09-2457, 2013 U.S. Dist. LEXIS 142526, at *9 (D. Md. Oct. 1, 2013); *Ibikunle Ojebuoboh v. Sebelius*, No. 4:11-CV-00017-BR, 2012 U.S. Dist. LEXIS 73821, at *8 (E.D.N.C. May 29, 2012); *Holmes v. Price*, Civil Action No.

2:17-2491-BHH-BM, 2018 U.S. Dist. LEXIS 222440, at *16 (D.S.C. Oct. 30, 2018).

CMS issues interpretive rules through agency manuals ("CMS Manuals"), which explain how the agency interprets existing statutes and regulations. *See Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 358 (D.C. Cir. 2017). These manuals provide procedural guidance as to how various Medicare provisions will be enforced. *Id.* at 382. The CMS Manual – "General Billing Requirements" – lists the relevant liability standard surrounding Medicare Overpayments. *See* Medicare Claims Processing Manual ("MCPM"), Chapter 30 ¶2.7.[3] The MCPM explains that a carrier may make a payment to a provider entity that submits services provided by an individual provider, so long as the contractual agreement between the entity and the provider have program integrity safeguards. *Id.* It further provides that ***joint and several liability is shared between the entity submitting the claim and the person furnishing the service, for any Medicare overpayment relating to such claim. Id.*** (emphasis added). In other words, a physician who is the "treating provider," i.e., the Plaintiffs here, is always individually liable for Medicare overpayments regardless of whether or not a bill is submitted by that provider individually or through some other "billing provider," i.e., the Plaintiffs' Practice Entities. Medicare, therefore, ignores the state law distinction between a physician and the entity through which they bill and are paid. This alone is dispositive of Defendants' challenge to Plaintiffs' individual standing.

In addition to this direct financial harm caused by the Defendants' fraud, Plaintiffs' injury is exacerbated because they cannot now re-enroll in Medicare. Specifically, a regulation promulgated by CMS in 2014 allows CMS to deny reenrollment to ***any physician*** who had an ownership relationship with any provider/supplier one year prior to termination of the entity's

---

[3]     Available    at    https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/
Internet-Only-Manuals-IOMs-Items/CMS018912.

Medicare enrollment. *See* Requirement for the Medicare Incentive Reward Program and Provider Enrollment, 79 Fed. Reg. 72499 (Dec. 5, 2014) (to be codified at 42 C.F.R. pt. 424). The Rule, codified at 41 C.F.R. § 424.530(a)(6), would deny Plaintiffs' reenrollment based on a Medicare debt[4] solely due to their respective beneficial ownership of the Practice Entities. As such, this Rule goes further than the MCPM imposition of joint and several liability for treating providers and creates a separate penalty for ***any*** owner of a billing provider. The practical effect of this is that the Plaintiffs will be forced to pay the full amount of the Medicare debts in issue (or enter a payment schedule with Medicare to personally pay the amount in full) to reenroll with the Medicare program, regardless of whether (as IHS contends) that the overpayment recovery letters were addressed solely to the Practice Entities. Thus, but for Defendants' fraudulent inducement, Plaintiffs would not have an existing Medicare debt that blocks Medicare re-enrollment.

The record contains ample evidence of Plaintiffs' real-world injury-in-fact. For example, Dr. Bhambhani testified in her deposition that she is the sole member of Ritu Bhambhani, LLC and Box Hill Surgery Center, LLC. *See* Declaration of John W. Leardi ("Leardi Decl."), Ex. 1,[5] T17:5-21; 20:10-18. Dr. Bhambhani was also crystal clear that she is ***individually*** liable for the Medicare overpayments caused by Defendants' fraud:

---

[4] Medicare debt is the exact sort of liability that Plaintiffs have suffered in this action. CMS defines the term "Medicare debt" broadly, specifically noting; "[a]n existing Medicare liability, simply put, is an unpaid Medicare debt. As such, an existing debt to the Medicare program—regardless of its type, or how the debt was incurred or discovered—may result in the denial of Medicare enrollment under § 424.530(a)(6). *See* Medicare Program; Requirements for the Medicare Incentive Reward Program and Provider Enrollment 79 Fed. Reg. 72500, 72506 (December 5, 2014). And notably, the Medicare program has repeatedly refused to limit the term "Medicare debt" to those debts that have undergone and completed the CMS appeals process and final administrative adjudication. *See id.* An unpaid overpayment is a Medicare debt regardless of whether the responsible provider(s) have exhausted any applicable appeals.

[5] Relevant portions of the transcripts of Dr Bhambhani and Dr. Rao are attached to the Leardi Decl. as Ex. 1 and 2, respectively. The report of Plaintiffs' expert, Michael D. Miscoe, CPC, is attached to the Leardi Decl. as Ex. 3.

Q.      But is it correct that in the context of Medicare overpayment demands and the appeals process, et cetera, it was just Box Hill, LLC and Ritu Bhambhani, LLC that were involved with overpayment demands and appeals?

A.      Versus?

Q.      Versus you individually.

A.      Well, their overpayment – I'm trying to remember. If it's their letters that very nicely remind me of what the CMS HIPAA [sic] form says on the back of it, **that I'm individually responsible.** But they are addressed if you're asking, to Ritu Bhambhani, LLC and Box Hill Surgery Center, LLC.

*See id.*, T47:1-13 (emphasis added). Dr. Bhambhani references form CMS 1500,[6] Health Insurance Claim Form ("HICF"), the standard claim form that accompanies all providers' claims for benefits to Medicare. This liability is so fundamental that the HICF explains that the Provider's Certification amounts to their agreement with the following;

*I* further agree to accept, as payment in full, the amount paid by the Medicaid program for those claims submitted for payment under that program … *I understand that payment and satisfaction of this claim* will be from Federal and State funds, and that any false claims, *statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal or State laws.*

HICF (emphasis added). The HICF indicates exactly what the CMS rules provide and what Dr. Bhambhani already knew, which is that she is *individually* liable for claims submitted for payment under the Medicaid program where she is the treating provider, regardless of which of her practice entities is the billing provider, i.e., the party to whom payment is or was made. Given her individual liability for those overpayments, she personally sought to resolve the issue with Medicare, to no avail. *See id.* T48:4-9; 49:15-17; 57:16-19. In addition, Dr. Bhambhani has personally engaged

---

[6]   Available at https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/CMS1500.pdf

counsel, who represents her individually in connection with her liability for overpayments, which

was occasioned by IHS's fraud. *See id.*, T125:4-10.

Defendant IHS selectively quotes from Dr. Rao's deposition, in which he states SimCare

purchased the devices, but it neglects to quote his testimony in full, demonstrating his personal

liability to pay back the Medicare debt as owner of SimCare:

> Q. Is there only one owner of SimCare?
>
> A. There is.
>
> Q. Who is that owner?
>
> A. Me.
>
> Q. ***Do you have any understanding if SimCare were not able to pay this – recoup this money to Medicare, if anyone would be personally liable?***
>
> A. ***I would be.***
>
> Q. Is it your understanding that you would be personally liable for this?
>
> A. Yes.
>
> Q. And how much would you be personally liable for, to the best of your understanding?
>
> A. Around $340,000. …
>
> A. My understanding is if – as the owner of SimCare, I am responsible for – personally responsible for paying back Medicare.

*See* Leardi Decl., <u>Ex. 2</u>, T175:2-15; 176:1-3. What is more, Plaintiffs' expert Michael Miscoe

opined that ***physicians***—not corporate entity medical practices—would be personally liable for

repayments, which is what this entire case is about:

> IHS, as a result of its reckless misrepresentations, exposed its clients to substantial financial harm***. Because the coding it and its surrogates recommended was not accurate, physicians, regardless***

11

> *of any appeals, will be forced to re-pay 100% of the monies paid*
> *by Medicare and other federal healthcare program contractors for*
> *these NSS services*. With that in mind, it is important to understand
> that the monies those *physicians* received was not all profit. They
> ultimately lose the amount they paid for the device, the value of their
> professional time and administrative costs associated with the
> provision, billing, collection and repayment associated with the
> billing of these services. They also endure costs of obtaining
> professional and/or legal assistance with identifying and disclosing
> overpayments beyond what may have been identified by an integrity
> contractor.

*See* Leardi Decl., Ex. 3 (emphasis added). Both Dr. Bhambhani and Dr. Rao understand that they

are personally liable for the overpayment demands from Medicare and that liability is undoubtedly

a cognizable Article III injury-in-fact. *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655

(9th Cir. 2011) (holding that "individual liability for the claimed overpayments, is sufficient to

support its claim of Article III standing.").

Dr. Bhambhani and Dr. Rao did not simply suffer financial harm based on some diminution

of value to their Practice Entities. They suffered distinct injury—in real dollars—in their individual

capacities. They have suffered direct injury from Defendants' actions. Defendants fed Plaintiffs

misleading information about the Neuro-Stim devices, including falsities about FDA-approval and

proposed billing codes, to secure Plaintiffs' purchases of the Neuro-Stim devices. *See infra* II-A;

Compl., ¶¶4-5, 35-48. Those purchases in turn resulted in direct harm because Plaintiffs are

individually liable for the Medicare overpayments and are barred from reenrolling in Medicare

due to the Medicare debt they hold. Thus, Plaintiffs suffered injury, distinct from their Practice

Entities, and have Article III standing to bring their claims directly.

Plaintiffs also meet the two other standing requirements—an injury that is traceable to the

challenged conduct of the defendant, and that is likely redressable by a favorable judicial decision.

*Spokeo*, 573 U.S. 338 (2016). Here, the Plaintiffs' injuries were directly caused by Defendants'

flagrantly fraudulent representations surrounding their product, and, through the relief Plaintiffs seek in this lawsuit, those injuries plainly can be resolved by this Court.

      B.    <u>Plaintiffs' Claims Seek Relief for Direct Individual Injuries Not Derivative Injuries Suffered by their Medical Practice Entities.</u>

Defendants' motion focuses principally on the issue of "shareholder standing." Generally, shareholder standing refers to the ability of a shareholder—here, Plaintiffs—to seek redress for injuries on her own behalf, not just on behalf of a corporation—here, the Practice Entities. Corporation shareholders and LLC members are treated in a similar fashion – "[f]or liability purposes, an LLC is treated like a corporation." *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F.Supp.2d 502, 515 (D. Md. 2013) (citing *Allen v. Dackman*, 413 Md. 132, 153 (2010)).[7] *Gonzalez v. Fairgale Props. Co., N.V.*, 241 F. Supp. 2d 512, 515 (D. Md. 2002). Defendants argue that Plaintiffs didn't purchase the devices at issue and, therefore, have no standing. The devices, Defendants contend, were purchased by the Practice Entities. *See* Mot. Sum. J. at 2-9. Defendants also claim that neither Plaintiff "suffered even a penny's worth of damage." Mot. Sum. J. at 2. Defendants are very plainly wrong.

To be sure, as a general proposition, a member of an LLC cannot directly assert LLC claims. *Gen. Technology Applications, Inc. v. Exro Ltda.*, 388 F. 3d 114, 118-19 (4th Cir. 2004) (holding that a member of a limited liability company lacked standing to assert the LLC's claims). *See also Orgain v. City of Salisbury*, 521 F. Supp. 2d 465, 476 (D. Md. 2007) (holding that "Shareholders (or in the case of an LLC, its members) do not have standing to sue on the corporation's behalf"). But, as we have explained, that's neither what this case is about, nor is it

---

[7] *See also A Guy Named Moe, LLC v. Chipotle Mexican Grill of Colorado, LLC*, 223 Md. App. 240, 250 (2015) (explaining further similarities between LLCs and Corporations: "an LLC, like a corporation, is a separate and distinct legal entity and possesses some of the features of a corporation . . . [the Court could not] conceive of any reason to treat an LLC different from a corporation with respect to the right to file or maintain a suit.")

what Plaintiffs have alleged. Plaintiffs have suffered individual and distinct injury and, as such, may proceed with direct claims on behalf of themselves and the Putative Class.

It has long since been the law of Maryland that the distinction between a direct versus derivative claim is that "the cause of action for injury to the property of a corporation or for impairment or destruction of its business is ***in the corporation***," and therefore such injuries can only be brought derivatively, that is, on the corporation's behalf. *Waller v. Waller*, 187 Md. 185, 189-90 (1946) (emphasis added). By contrast, Maryland law also provides that "a shareholder may bring a direct action . . . against corporate wrongdoers when the shareholder suffers the harm directly . . . ." *Shenker v. Laureate Educ.*, 411 Md. 317, 345 (2009); *see also Gonzalez*, 241 F. Supp. 2d at 515-16 (noting the general proposition that a shareholder with a "direct, personal interest in a cause of action" may bring a claim "even if the corporation's rights are also implicated") (quoting *Franchise Tax Bd. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336, (1990)). For Plaintiff to avoid "the limitations of the limited liability company member standing rule is to allege facts showing he has been injured directly and independently [of the LLC]." *Triple R. Ranch, LLC v. Pilgrim's Pride Corp.*, 456 F. Supp. 3d 775, 782 (N.D.W. Va. 2019).

Put another way, "the question Maryland courts ask is not whether the shareholder suffered injury; if a corporation is injured those who own the corporation are injured too. The inquiry, instead, is whether the shareholders' injury is 'distinct' from that suffered by the corporation." *Strougo v. Bassini*, 282 F.3d 162, 170 (2d Cir. 2002) (applying Maryland law); *see also Blufeld v. Cohen*, No. No. PX 15-2857, 2017 WL 1546406, at *3 (D. Md. Apr. 27, 2017) ("[W]here a shareholder alleges an injury that is distinct from the corporation . . . the individual shareholder has standing to redress that injury.") (quoting *Argiropoulos v. Kopp*, No. CCB-06-0769, 2007 WL 954747, at *5 (D. Md. Mar. 26, 2007)). This bedrock proposition of law is recognized in many

14

other jurisdictions. *See, e.g.*, *Kroblin Refrigerated Express v. Pitterich*, 805 F.2d 96, 104 (3d Cir. 1986) ("Since Refrigerated directly injured the Lakes shareholders by refusing to continue payments on the Lakes note, we hold that the district court did not err in concluding that these plaintiffs had standing to sue under the Lakes note."); *O'Kane v. Impactivate Networks*, 2021 WL 236493, at *5-*6 (D.N.J. Jan. 25, 2021) ("Where, however, an individual shareholder has alleged a direct injury to himself rather than harm to the corporation, that shareholder is not barred from bringing his own claims."); *Singh v. Averett*, 2020 WL 4431522, at *2 (E.D. Pa. July 31, 2020) (noting "[i]t is well established that, absent a direct individual injury, the president and principal shareholder of a corporation lacks standing to sue for an injury to the corporation") (internal citations omitted); *Zokoych v. Spalding*, 344 N.E.2d 654, 663 (Ill. 1976) (shareholder standing "where the wrongful acts are not only against the corporation but are also violations of a duty arising from a contract or otherwise, and owed directly by the wrongdoer to the stockholders"); *Michigan Nat'l Bank v. Mudgett*, 444 N.W.2d 534, 536 (Mich. Ct. App. 1989) (establishing both the shareholder-standing rule and the exception for shareholders who have an individual injury).

Regardless of whether a litigant labels her claim as direct or derivative, "the court must look to the nature of the action as set forth in the complaint to determine wither it is derivative or direct." *Blufeld*, 2017 SL 1546406, at *3. From that lens, the distinct harm/individual liability exception is particularly appropriate in claims involving fraudulent inducement. *See Albunio*, 2016 WL 1267795, at *4.

As set forth at Point II.A, *supra*, the evidence developed so far makes abundantly clear that Plaintiffs have suffered their own direct injuries that are distinct from their Practice Entities in the form of direct overpayments they individually owe and their inability to reenroll in Medicare on a going-forward basis. This is not a case about diminution of value to a practice entity that affects

the physicians solely as owners/shareholders of the practice. The injury here is real, direct, and substantial, consisting of the direct costs and harm that Plaintiffs individually sustained when their practices were audited by Medicare, leaving Plaintiffs ***individually*** on the hook for Medicare debts, fees, and costs. *See supra* Point II-A; *see also* Compl., ¶¶ 52, 66.

Plaintiffs also have standing to assert claims based on the distinct injury they suffered due to Defendants' fraudulent enterprise. This is especially true in the context of RICO. As previously noted, to establish RICO standing, a plaintiff must plead (1) a defendant's violation of § 1962, (2) an injury to the plaintiff's business and (3) causation of the injury by the defendant's violation. *Albunio*, 2016 WL 1267795, at *3. As the Supreme Court recognized long ago, "RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purpose.'" *Sedima*, 473 U.S. at 497-98. Indeed, RICO's remedial purposes "are nowhere more evident than in the provision of a private action for those [like Plaintiffs here] injured by racketeering activity." *Id.* at 498.

The record evidence amply supports this theory, and as such, significant issues of disputed fact preclude Defendants' summary judgment motion. As previously demonstrated, Plaintiffs clearly allege Defendants' violation of § 1962 which directly resulted in Plaintiffs' injuries. Given RICO's liberal construction to effectuate its remedial purpose, Plaintiffs have easily demonstrated standing under the statute. *Sedima, S.P.R.L.* 473 U.S 497-98 (1985)

The same is true of Plaintiffs' state law claims for fraudulent misrepresentation, intentional misrepresentation by concealment or non-disclosure, and civil conspiracy. As discussed above, in Maryland individually aggrieved shareholder plaintiffs may sue directly and bring a direct claim where "they have suffered some peculiar injury independent of what the company has suffered."

16

*Matthews v. Headley Chocolate Co.*, 130 Md. 523, 536 (1917). In doing so, the remedy "that a shareholder seeks must benefit the shareholder as an individual, not the corporate entity." *Oliviera v. Sugarman*, 451 Md. 208, 230 (2017).

Corporation shareholders and LLC members are treated in the same manner for this distinct injury route: "Shareholders in a corporation, or members in a limited liability company, cannot maintain a direct action for injuries to the corporation.  Rather, such actions must be brought derivatively . . .There may be exceptions to this rule where the shareholder/member can show that it suffered injury independent and distinct from that suffered by the corporation." *VFI Assocs., LLC v. Lobo Mach. Corp.*, no. 1:08CV00014, 2012 WL 975705, at *6 (W.D. Va. Mar. 22, 2012).

Plaintiffs did not simply suffer as members of the Practice Entities. They suffered distinct injury in their individual capacities—Plaintiffs individually were audience to Defendants' fraudulent misrepresentations, including oral representations, labeling, advertisements, and marketing about the Neuro-Stim devices. Compl. ¶¶ 35-48. Due to Defendants' intentional misrepresentations, both Plaintiffs had to pay tens of thousands of dollars in expenses related to the resulting Medicare audits. Compl. ¶ 52. And as noted in Point II.A, *infra*, Plaintiffs are individually liable for the substantial Medicare debts levied by CMS on their Practice Entities based upon their adherence to the billing protocols provided to them by IHS and its surrogates. Thus, Plaintiffs suffered direct injuries distinct from the Practice Entities.

## III.   THE COURT SHOULD GRANT PLAINTIFFS' LEAVE TO FILE A FOURTH AMENDED COMPLAINT THAT ADDS THE PRACTICE ENTITIES AS ADDITIONAL NAMED PLAINTIFFS.

While Plaintiffs have shown that they have individual standing to press their claims against Defendants, Plaintiffs respectfully move for leave to amend their complaint. Pursuant to Local Civil Rule 6(a), a copy of the proposed Fourth Amended Complaint and a redline comparison are attached to the Leardi Decl. as Ex. 4 and 5, respectively. Rule 15(a) provides that a party shall be

17

"freely" given leave to replead "when justice so requires." Fed. R. Civ. P. 15(a).

The Fourth Circuit has stated that its policy is to "liberally allow amendment. *Electrolux Home Prods. v. Nat'l Trade Supply, LLC*, No. 3:21-CV-00246-FDW-DSC, 2021 U.S. Dist. LEXIS 234169, at *2 (W.D.N.C. Dec. 7, 2021) (citing *Abdul-Mumit v. Alexandria Hyundai, LLC*, 896 F. 3d 278, 293 (4th Cir. 2018)). Additionally, Courts in the Fourth Circuit have concluded that Rule 15(a) applies to amendments which seek to add new parties. *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010). The Fourth Circuit has held that delay alone is not sufficient to deny leave to amend. *Johnson*, 785 F.2d 509 (4th Cir. 1986). Courts routinely grant motions for leave to amend during and ***after*** discovery. *See eg. Pittston Co. v. United States*, 199 F.3d 694, 706 (4th Cir. 1999) (overturning a District Court's holding that found that lateness and delay constituted prejudice per se); *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1044 (4th Cir. 1984) (holding that an amendment on the day of trial did not unduly prejudice the nonmoving party).

As this Court is aware, a motion to amend should be granted when the amendment is not futile and the non-moving party will not suffer any undue prejudice. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986). As Defendants' summary judgment motion makes clear, amendment certainly would not be futile. And, there is no undue prejudice here because the purpose for amendment is to merely add parties. No additional discovery will be required. *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (permitting amendment because "[a]ny discovery . . . conduct[ed] need not be duplicated because [the] proposed complaint does not put any new facts at issue but merely states an 'alternative theory'); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("[a]bsence of prejudice, though not alone determinative, will warrant granting leave to amend").

Here, Defendants cannot point to any cognizable undue prejudice because the Practice

Entities, in addition to being part of the Putative Class set forth in every version of the complaint filed in this action, have been active participants in this case throughout discovery. For example, the individuals involved in the Plaintiffs' discussions with IHS and its surrogates, the device purchases in issue, and the claims to Medicare that followed thereafter were all largely employees or representatives of the Practice Entities, all of whom were identified in Plaintiffs' answers to interrogatories propounded by Defendant IHS. *See* Leardi Decl. at Ex. 6 (Dr. Bhambhani's Answers to IHS's Interrogatories) and Ex. 7 (Dr. Rao's Answers to IHS's Interrogatories). Similarly, these same employees and representatives were identified as custodians whose emails and other document repositories were searched pursuant to the ESI Stipulations executed by and between Plaintiffs and Defendant IHS. *See* Leardi Decl. at Ex. 8 (ESI Stipulation between Dr. Bhambhani's and IHS) and Ex. 9 (ESI Stipulation between Dr. Bhambhani's and IHS). And finally, while IHS did serve subpoenas on the Practice Entities in June 2021, *see* Leardi Decl. at Ex. 10, the parties agreed that there was no need to conduct separate depositions of the Practice Entities based on supplemental productions and interrogatory answers provided, and more importantly the testimony provided by Dr. Bhambhani and Dr. Rao, which certainly covered each of the topics identified by IHS in the subpoenas they served on the Practice Entities.

In short, IHS's own motion and the exhibits annexed thereto make abundantly clear that Plaintiffs' motion for leave to file a Fourth Amended Complaint to add the Practice Entities as named plaintiffs is neither futile nor unduly prejudicial.

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment should be denied in all respects. Further, Plaintiffs should be granted leave to file a Fourth Amended Complaint.

Dated: February 25, 2022

Respectfully submitted,

BUTTACI LEARDI & WERNER LLC

By: /s/ *John W. Leardi*
John W. Leardi (admitted *pro hac vice*)
Paul D. Werner (admitted *pro hac vice*)
Nicole P. Allocca (admitted *pro hac vice*)
212 Carnegie Center, Suite 202
Princeton, NJ 08540
609-799-5150

Ugo Colella, Bar. No. 17443
John J. Zefutie (admitted *pro hac vice*)
COLELLA ZEFUTIE LLC
4200 Wisconsin Avenue NW #106-305
Washington, DC 20016
202-920-0880

Robert A. Gaumont (Bar No. 26302)
GORDON FEINBLATT LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202
(410) 576-4007

*Attorneys for Plaintiffs Ritu Bhambhani, M.D.,*
*Sudhir Rao, M.D., and the Putative Class*

20