**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| Ritu Bhambhani, M.D., et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.: 19-cv-00355-LKG |
| Innovative Health Solutions, Inc., et al., | * | |
| Defendants. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**DEFENDANT INNOVATIVE HEALTH SOLUTIONS, INC.'S**
**REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Innovative Health Solutions, Inc. ("Innovative Health"), by undersigned counsel and pursuant to Fed. R. Civ. P. 56, submits the following Reply in Support of its Motion for Summary Judgment.[1]

## I.      SUMMARY OF THE ARGUMENT

Innovative Health's Motion for Summary Judgment established, through admissible evidence, that neither Plaintiff (i) purchased a single NeuroStim (NSS) device, (ii) submitted a single claim to Medicare, (iii) received a single payment from Medicare, (iv) was the target of a single overpayment demand from Medicare; or (v) had a single dollar of theirs recouped by Medicare.  Drs. Bhambhani and Rao have acknowledged and conceded this, as they must. Nor does either physician dispute the fact that neither of them incurred legal fees in connection with

---

[1] In response to Innovative Health's Motion for Summary Judgment (ECF No. 125), Plaintiffs filed a combined Opposition to the motion, and cross moved for leave to file a Fourth Amended Complaint (ECF No. 132). This paper replies to Plaintiffs' Opposition to Summary Judgment. Innovative Health is filing a separate paper in opposition to Plaintiffs' Motion for Leave to Amend the Complaint.

any Medicare appeals.  Any such expenses or demands were incurred by non-party LLCs in which Plaintiffs are members.  Plaintiffs now concede that they have no right, or standing, to seek recovery for any alleged harm to the non-party LLCs.

Nevertheless, Plaintiffs maintain they have standing under Article III because: (i) the physicians and the practice entities are jointly and severally responsible for Medicare overpayments to the entities; and (ii) each physician Plaintiff *may* be denied reenrollment in Medicare because of an overpayment debt.  Neither of these claims is sufficient to confer standing, because neither is a concrete and particularized injury, nor an actual or imminent one.  At best they are hypothetical or conjectural.  In well more than five years since Plaintiffs allege that the overpayment demands began, the undisputed facts are that at no time has Medicare taken any action against either individual Plaintiff.  Plaintiffs' memorandum theorizes a contingent liability that has no present impact on them.  The *mere possibility* that Medicare *may* deny them reenrollment at some point in the future, with no evidence that such denial has occurred, is also not enough.

In addition, those same facts confirm that Plaintiffs cannot, as a matter of law, prove the predicate acts of mail fraud or wire fraud to support their RICO claims, nor can they prove the necessary element of reliance for their common law fraud and conspiracy claims.  Accordingly, and as set forth more fully below, the Court should grant Innovative Health's Motion for Summary Judgment.

## II.     <u>PLAINTIFFS HAVE FAILED TO ESTABLISH STANDING</u>

The party invoking federal jurisdiction bears the burden of establishing the elements of standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) and *Warth v. Seldin*, 422 U.S. 490, 508 (1975).  First and foremost of

these elements is that the plaintiff has suffered an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 560. (citations omitted).  Because the elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (citations omitted).

The requirements and strictures of Article III standing "are no less important in the context of class actions." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020), citing *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 652 (4th Cir. 2019). Therefore, "[i]n response to a summary judgment request, the named plaintiff is obliged to 'set forth by affidavit or other evidence *specific facts*' that, when taken as true, establish each element of Article III standing." *Id*. at 253, (quoting *Lujan,* 504 U.S. at 561) (emphasis added). Plaintiffs have presented no such affidavit or other evidence.

### A.  Plaintiffs' Standing Must be Addressed Now  to Comply with District of Maryland Precedent.

Plaintiffs assert that it "is of no moment" whether the Court addresses the validity of their standing at this stage. *See* Plaintiffs' Memo, ECF No. 132-1, at 7.  Innovative Health submits that the multiple precedential cases of this District cannot be ignored. Specifically, Plaintiffs' standing must be resolved now because in this District "a plaintiff must establish personal standing to sue each defendant *before* attempting to satisfy the requirements of class certification under Rule 23." *Herlihy v. Ply-Gem Indus*., Inc., 752 F. Supp. 1282, 1291 (D. Md.  1990) (emphasis added); *see also*, *Edmondson v. Eagle Nat'l Bank*, 336 F.R.D. 108 (D. Md. 2020); *Zaycer v. Sturm Foods, Inc*., 896 F. Supp. 2d 399, 407 (D. Md. 2012).

**B.  Plaintiffs' "Medicare Debt" is a Contingent Liability with no Present Impact.**

Plaintiffs do not dispute that their (non-party) practice entities—and not Plaintiffs individually—purchased the NSS devices at issue, submitted the claims to Medicare, received overpayment demands, paid the legal fees associated with the Medicare appeals process, and were the subject of recoupments by Medicare to reduce Medicare's claimed overpayments.  They contend however, that Medicare's treatment of individual physicians under its Claims Processing Manual as "jointly and severally responsible" for alleged overpayments to the practice entities suffices as an "injury" for standing purposes. Nevertheless, they were unable to cite a single case that authorized standing under RICO or Maryland common law fraud under this theory.

The Medicare overpayment demands to the third-party practice entities began as early as November 2016 in the case of Dr. Bhambhani's practice entities, and as early as September 2017 for Dr. Rao's entities.  *See* Plaintiff's Third Amended Complaint, ECF No. 97, at ¶¶ 52 and 64.[2] Yet, at no time has Medicare made a single payment demand against either Dr. Bhambhani or Dr. Rao, nor has Medicare sought to recoup *any* monies that may be payable to them, nor has it otherwise proceeded against them to recover *any* funds.  Clearly, Medicare has elected not to proceed against either Plaintiff individually; that is the very nature of joint and several liability. As Black's Law Dictionary defines it, joint and several liability is liability that "*may* be apportioned either among two or more parties or to only one of a few select members of the group, *at the adversary's discretion*."  *Black's Law Dictionary* 933 (9th ed. 2009) (emphasis added); *accord, The Corner Associates v. W.R. Grace & Company-Conn*., 173 F.3d 424 (unpublished table decision), No. 98-1153, 1999 WL 95511, at * 4 (4th Cir. Feb. 19, 1999) (recognizing that the

---

[2] Plaintiffs have conceded that payments by the separate entities cannot constitute damages for them individually. Therefore, the only payments that remain at issue are necessarily those (1) that have not yet been paid; and (2) for which Medicare is seeking payment from the business entities.

creditor has discretion as to which joint and several obligors to pursue). Thus, Plaintiffs' "liability" is purely speculative and contingent, depending solely upon when—or *if*—Medicare ever elects to pursue them.[3]

Moreover, if the business entities have paid (or will pay) Medicare for any of the remaining amounts that Medicare may still be seeking, those entities' payments will necessarily extinguish any conceivable liability that the individuals might have had to Medicare. *See Conklin v. Commissioner*, 897 F.2d 1027, 1029 (10th Cir. 1990) ("Just as with any other joint and several obligation, however, payment by one obligor extinguishes the liability of both."); *Stable v. Walmac Stud Mgmt., LLC*, Civil Action No. 5:11-374-DCR, 2014 WL 1093091, at *3 (E.D. Ky. Mar. 19, 2014 ) ("If the obligation is joint or joint and several, then the alleged payment made by [party] would satisfy the other parties' obligations."). That uncertainty as to what *may* happen at some *unknown future time* provides even further proof that the Plaintiffs' potential "damage" is speculative and carries at least one more contingency before it might ever become a reality.

Courts "have recognized that the *present*, detrimental effect on a plaintiff of a future contingent liability can constitute an injury in fact." *Liberty Univ., Inc. v. Geithner*, 753 F. Supp. 2d 611, 624 (W.D. Va. 2010) (collecting cases) (emphasis in original), *vacated on other grounds*, 671 F.3d 391 (4th Cir. 2011). This concept has been applied with respect to Medicare liability. In *Protocols, LLC v. Leavitt*, 549 F.3d 1294 (10th Cir. 2008), plaintiff Protocols provided consulting services for the settlement of workers' compensation claims, and held itself out as an expert in

---

[3] As Dr. Rao acknowledged at his deposition, he believed he would be personally liable *if* SimCare, his practice entity, were not able to satisfy Medicare's repayment demand. (*See* Rao deposition transcript, at 175:6-9, ECF No. 132-4, at p. 3 of 4). It should also be noted that Plaintiffs allege that "substantial portions" of the overpayments to the practice entities have already been recouped and offset by Medicare against other claims payable to the practice entities. (ECF No. 97, at ¶¶ 52, 66). As soon as those recoupments are complete, the practice entities' overpayment debt will be extinguished, as will be the Plaintiffs' contingent liability.

structuring settlements that complied with Medicare regulations. *Id.* at 1295. Protocols sought declaratory relief after CMS issued a memo that Protocols claimed misinterpreted the Medicare statute and regulations under it. *Id.* As a result of its erroneous interpretation, Medicare could later determine that it was not required to pay for medical treatment an injured employee received after a Medicare-approved settlement, and could then seek reimbursement of those expenses from anyone who received settlement proceeds. *Id.* at 1296. Because Protocols typically received its consulting fee from settlement proceeds, it was exposed to future liability if Medicare sought reimbursement for treatment despite a previously approved settlement. *Id.*

Standing based upon contingent liability must be more than theory; it must be established by actual evidence, especially in the context of a motion for summary judgment. The Tenth Circuit found that Protocols had Article III standing because the contingent Medicare liability was presently and concretely affecting Protocols. It made this determination based on evidence Protocols submitted *via affidavit* that: "(1) the company's value is decreased because of contingent liabilities; (2) the uncertainty of the liability harms Protocols' ability to plan how much revenue it may use for capital and operating costs; and (3) the company has postponed discussions with potential investors . . . ." *Id*. at 1299. *See, e.g, Lac Du Flambeau Band of Lake Superior v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005) (holding that the *present impact* of a future harm may establish injury in fact for standing purposes); *Jones v. Gale*, 470 F.3d 1261, 1267 (8th Cir. 2006) (holding plaintiff had standing to challenge the constitutionality of a law that had a *direct negative effect* on their borrowing power, financial strength, and fiscal planning).

No *evidence* exists of any present or concrete impact of the contingent Medicare liability on the Plaintiffs. Indeed, the Plaintiffs have chosen not to present any for themselves, and they have not disputed the extensive authorities that prohibit the individuals from claiming expenses or

loss of value in their ownership of the practice entities. *See* Plaintiffs' Memo, ECF No. 132-1, at 13: "To be sure . . . a member of an LLC cannot directly assert LLC claims" and "Shareholders (or in the case of an LLC, its members) do not have standing to sue on the corporation's behalf." Ignoring Civil Rule 56, Plaintiffs issued a self-serving conclusion: "[T]here is no need to engage in a point-by-point rebuttal of the facts, nor the need to proffer any other evidence . . . ." (Plaintiffs' Memo, ECF No. 132-1, at 2-3). Unlike the plaintiff in *Protocols*, neither Dr. Bhambhani nor Dr. Rao has submitted an affidavit or any other evidence to demonstrate how the *future possibility* of Medicare pursuing them individually has caused either one of them present, particularized harm. Nor does the Third Amended Complaint even *allege* that Dr. Bhambhani or Dr. Rao has suffered specific individual harm from Medicare's claims against their practice entities; the Complaint *does not even allege* a joint Medicare liability with their practices. And even if it did, mere allegations of harm at this stage of the proceedings are inadequate to establish standing or to withstand summary judgment. *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 253 (4th Cir. 2020) ("[i]n response to a summary judgment request, the named plaintiff is obliged to 'set forth by affidavit or other evidence *specific facts*' that, when taken as true, establish each element of Article III standing"), quoting *Lujan,* 504 U.S. at 561 (emphasis added).[4]

---

[4] The Court should reject out of hand Plaintiffs' attempt to support their "Medicare liability" injury theory by reference to the report of their expert, Michael Miscoe. Regardless of his stated opinions on who is or may be liable, Miscoe is not permitted to offer that *legal opinion*. "Even in cases involving complex legal or regulatory schemes, 'the jury must be instructed on the law by the court and not by the witnesses,' and the court generally should not permit experts 'to give opinions on what the law means or how it is interpreted.'" *United States v. Coontz*, 810 F. App'x 201, 204 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1385 (2021) (quoting *United States v. Wilson*, 133 F.3d 251, 265-66 (4th Cir. 1997)). Nor does the law permit Miscoe to draw a legal conclusion regarding who will be forced to pay Medicare. "'[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts' generally is unhelpful . . . and, thus, inadmissible.'" *Id.* (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)).

Moreover, both Dr. Bhambhani and Dr. Rao have confirmed that their *personal* financial condition—and financial condition is what framed the injury analysis in *Protocols* and *Jones* —is *not relevant* to any issue in this litigation.  In discovery, Innovative Health asked both Dr. Bhambhani and Dr. Rao to produce "income statements, balance sheets, and other financial statements for Dr. Bhambhani/Dr. Rao for the period January 1, 2015 through the present." Each responded as follows:  Dr. Bhambani/Dr. Rao "objects to this Request because it seeks confidential information *irrelevant to the claims at issue*." (*See* Dr. Bhambhani's Responses and Objections to IHS's 1st Set of Requests for Production of Documents, attached hereto as **Exhibit 1**, Response No. 24; Dr. Rao's Responses and Objections to IHS's 1st Set of Requests for Production of Documents, attached hereto as **Exhibit 2,** Response No. 43. (emphasis added)). Each also refused to produce individual tax returns on the ground that they were confidential and *irrelevant*. (*See* Ex. 1 at Response No. 21; Ex. 2 at Response No. 37).[5]  Even in light of their current damages theory, Plaintiffs have maintained their discovery objections that the topic is "irrelevant."   Most importantly though, they have failed to provide the Court with the evidence required by Civil Rule 56 that might have helped them navigate this perceived, unpleaded escape route that has been postulated for the first time in their Opposition Brief. *See Cray Comm. v. Novatel Computer Sys.*, 33 F.3d 390, 394 (4th Cir. 1994) (granting summary judgment because non-moving party "devoted no fewer than three pages" to an argument but "did not refer the district court to any competent record evidence" on the key issue).

In other words, if the Medicare debt that CMS is pursuing against the non-party practice entities—but which it has yet to pursue against the Plaintiffs—actually caused a present, concrete

---

[5] Plaintiffs' confidentiality objection is not a valid basis to withhold this information, as the parties agreed to a Stipulated Order Regarding Confidentiality of Discovery Material.  (ECF No. 57).

and particularized injury to Drs. Bhambhani and Rao individually, they would have: (i) alleged it somewhere in the Complaint; (ii) not have maintained that their financial conditions were irrelevant; and (iii) submitted admissible evidence to identify the nature and specifics of the claimed harm.  Because Plaintiffs have failed to come forward with evidence of a sufficiently concrete and particularized injury, they lack standing, and the Court should grant summary judgment in favor of Innovative Health.[6]

### C. Plaintiffs' Mere Allegation Concerning Medicare "Reenrollment" is not an "Injury" nor is it Supported by Evidence as Requried by Civil Rule 56.

Having failed to establish their contingent Medicare liability as a present, concrete, or particularized harm, Drs. Bhambhani and Rao attempt to manufacture an "injury" in the form of a theoretical, but not actual, "Medicare reenrollment denial."   Citing the Code of Federal Regulations and rulemaking commentary from the Federal Register, Plaintiffs claim that "they cannot now re-enroll in Medicare."  (Plaintiffs' Memo, ECF No. 132-1, at 8).   However, this "sanction" to health care providers based on an alleged Medicare debt is purely permissive.  And, more importantly, Plaintiffs have provided no evidence they that have *actually* lost enrollment, *applied for or been denied* re-enrollment in Medicare, as required at the summary judgment stage. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 607 (D. Md. 2003), *aff'd.*, 85 F. App'x 960 (4th Cir.

---

[6] Plaintiffs cite *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011) for the proposition that liability for claimed CMS overpayments is sufficient to support a claim for Article III standing.  (Plaintiffs' Memo, ECF No. 132-1, at 12).  However, *L.A. Haven Hospice* is inapposite because part and parcel of the Court's holding was that the plaintiff was the "object of the governmental action" in the form of an "*individualized demand for repayment*." 638 F.3d at 655 (emphasis added).  Here, there has been no individualized demand from CMS as to either Dr. Bhambhani or Dr. Rao—and there may never be one, as it is up to CMS whether to even pursue recovery from either doctor.  Because Plaintiffs have presented no evidence that Medicare's actions vis à vis their practice entities have affected them presently, no harm will arise, if at all, unless and until Medicare takes direct action against them.

2004) ("A genuine issue as to a material fact exists *if the evidence that the parties present to the court is sufficient* to indicate the existence of a factual dispute that could be resolved in the non-moving party's favor through trial.") (emphasis added) (citing *Anderson  v. Liberty Lobby*, *Inc.*, 477 U.S. 242,  248-49 (1986)).

42 C.F.R. §424.530, upon which Plaintiffs rely, states explicitly:

(a) Reasons for denial. CMS *may* deny a provider's or suppliers' enrollment in the Medicare program for the following reasons:
…
(6) Medicare debt

42 C.F.R. § 424.530(a)(6) (emphasis added).  And the Federal Register information upon which they rely similarly states "an existing debt to the Medicare program—regardless of its type, or how the debt was incurred or discovered—*may* result in the denial of Medicare enrollment . . . ." Requirement for the Medicare Incentive Reward Program and Provider Enrollment, 79 Fed. Reg. 72499, 72506 (Dec. 5, 2014) (emphasis added).

Because the Plaintiffs have failed to present evidence that they have lost enrollment, applied for or that Medicare has denied either of them re-enrollment into the program, neither has demonstrated a concrete and particularized harm sufficient to confer standing under Article III. By federal regulation, Medicare's decision to deny a practitioner re-enrollment into the program is purely discretionary, and there is no evidence that Medicare has acted against either Dr. Rao or Dr. Bhambhani in the many years since it claimed a Medicare debt against their practice entities. And neither Plaintiff has brought forth evidence of any present, particularized harm sustained by virtue of any *possibility* of a re-enrollment denial at some uncertain point, if at all, in the future. *See Protocols, LLC v. Leavitt,* 549 F.3d 1294 (10th Cir. 2008).

**D. The Undisputed Facts Confirm that Plaintiffs Have Not Suffered Individual or Distinct Injuries that can Establish Standing for Their Alleged RICO and Common Law Fraud Claims.**

Plaintiffs maintain they have suffered "distinct injuries"—separate from those of their practice entities—that provide a basis for standing to assert RICO and common law fraud claims. Plaintiffs are wrong.  Not only did they not suffer injuries sufficient to confer Article III standing, but the evidence confirms that neither plaintiff can establish the commission of a predicate act required to support their RICO claims, nor can they establish the required element of reliance for their common law fraud claims.

To begin, Plaintiffs acknowledge that they, individually, are not permitted to pursue claims for alleged injuries to their practice entities: "To be sure . . . a member of an LLC cannot directly assert LLC claims" and "Shareholders (or in the case of an LLC, its members) do not have standing to sue on the corporation's behalf."  (Plaintiffs' Memo, ECF No. 132-1, at 13).  And as the record evidence has established, it was the practice entities—not the Plaintiffs individually—that purchased the NSS devices, received Medicare overpayment demands, had money recouped from them by Medicare, and incurred legal fees in connection with their Medicare appeals.  (*See* Innovative Health Memorandum in Support of Summary Judgment, ECF No. 125-1, at 2-9).

In light of these undisputed facts, Plaintiffs premise RICO and fraud standing on having allegedly suffered "their own direct injuries that are distinct from their Practice Entities" in the form of the as-yet unasserted Medicare liability and the *possibility* that they *may* be denied Medicare reenrollment. As demonstrated above, neither of these suffices as a concrete, particularized, or imminent injury for Article III standing.   Nevertheless, these "injuries," according to the Plaintiffs, are relevant to "claims involving fraudulent inducement," and support

standing for both RICO and common law fraud.  In fact, the evidence negates the existence of these claims.

### 1.  Plaintiffs Cannot Establish a RICO Violation.

Plaintiffs argue that they have standing to assert RICO claims "based on the distinct injury they suffered due to Defendants' fraudulent enterprise," and claim that "[g]iven RICO's liberal construction to effectuate its remedial purpose, Plaintiffs have easily demonstrated standing under the statute."  (Plaintiffs' Memo, ECF No. 132-1, at 16). However, the Court need not even reach the issue of whether Plaintiffs' asserted "distinct" injuries support RICO standing because the undisputed evidence negates the existence of a critical and required element of RICO—the predicate act—and therefore requires the Court to enter summary judgment as to Plaintiffs' RICO claims.  Plaintiffs' alleged predicate RICO acts of wire fraud and mail fraud require that the Plaintiffs be defrauded of money or property.  Neither has occurred.

This entire case is premised on alleged fraudulent misrepresentations and/or non-disclosures that Plaintiffs claim *induced them to purchase* the NSS device. Indeed, the very first paragraph of the Complaint states that the Plaintiffs "are but two among many medical professionals . . . who *agreed to purchase* a medical device known as the Neuro-Stim System ("NSS") after being given false and/ or fraudulent advice . . . ." (*See* Third Amended Complaint, ECF No. 97, at ¶1) (emphasis added).  Plaintiffs go on to claim how the alleged misrepresentations were designed as "a means of enticing Dr. Bhambhani, Dr. Rao, and other medical providers *to purchase the NSS* . . ."  and claim that Defendants "intended their misrepresentations to induce Dr. Bhambhani and Dr. Rao . . . to rely upon said misrepresentations and upon which Dr. Bhambhani, Dr. Rao . . . did, indeed, justifiably rely to their detriment *when deciding to purchase the NSS* . . . ." (Id. at ¶¶ 7; 10) (emphasis added); *see also*, id. at ¶87 (purporting to be a member of a class of

providers "who purchased one or more NSSs").[7]   However, discovery revealed that neither Dr.

Bhambhani nor Dr. Rao purchased a single NSS device, and thus not a penny belonging to either

Dr. Rao or Dr. Bhambhani went to any defendant because of any fraud or misrepresentation. (*See*

Innovative Health's Memo in Support of Summary Judgment, (ECF No. 125-1, at pp. 3, 7);

Bhambhani Deposition, (ECF No. 125-4, at 281:3-17); Memo, Exhibit C (ECF No. 125-5); Rao

Deposition, (ECF No. 125-19, at 25:3-10; 26:15-21; 29:11-18); Memo, Ex. R (ECF No. 125-20).

A RICO plaintiff must demonstrate a "pattern of racketeering activity" consisting of at

least two instances of racketeering activity.  18. U.S.C. §1961(5); *Mylan Labs, Inc., v. Matkari*, 7

F.3d 1130, 1135 (4th Cir. 1993).  Both mail and wire fraud qualify as predicate acts under RICO,

18 U.S.C. § 1961(1), and Plaintiffs have alleged both mail fraud and wire fraud as the predicate

upon which they rely to establish a violation of RICO.  (ECF No. 97, at ¶¶ 76-78).  Plaintiffs

further maintain that the alleged mail and wire fraud were "made for the purpose of deceiving

Plaintiffs and obtaining their property for the Defendants' gain."  (ECF No. 97, at ¶80).  The fatal

barrier to Plaintiffs' RICO claim is the undisputed fact that no money or property was obtained

from either Plaintiff.

The Supreme Court has made it clear that, to prove wire fraud or mail fraud, the

perpetrators must have obtained money or property from their fraudulent scheme.  *Kelly v. United

States*, 140 S. Ct. 1565, 1571-74 (2020) (explaining that to prove wire fraud, the Government

needed to prove *property fraud* because the wire fraud statute prohibits "only deceptive 'schemes

to deprive [the victim of] money or property.'") (quoting McNally v. United States, 483 U.S. 350,

---

[7] Even the Plaintiffs' Memo continues to acknowledge that the central focus of their Complaint
and purported class action is a "group of providers (treating or billing) that ***purchased*** the Neuro-
Stim devices in question...." Plaintiffs' Memo, ECF No. 132-1, at 3 (emphasis added). With these
multiple admissions, it is inexplicable that Plaintiffs continue to base their arguments on facts that
simply do not exist.

356 (1987)); *Cleveland v. United States*, 531 U.S. 12, 15, 26-27 (2000) (holding that "[f]or purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim" . . . "§ 1341 requires the object of the fraud to be 'property' in the victim's hands . . ."). Here, we know that the individual Plaintiffs transferred no money or property whatsoever. Innovative Health established that in its Motion which shifted the burden to Plaintiffs to present any evidence to contrary, and they did not do so.

Failure to satisfy the predicate act requirement of the RICO statute, which has occurred here, mandates dismissal of a plaintiff's RICO claim. *Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.*, 204 F.3d 1368 (Fed. Cir. 2000). *Semiconductor Energy Laboratory* ("*SEL*") involved an intellectual property dispute in which SEL sued Samsung for patent infringement. Samsung defended on the grounds that SEL's patent was not enforceable because of SEL's inequitable conduct before the Patent and Trademark Office ("PTO"), and asserted RICO counterclaims against SEL. 204 F.3d at 1370-71. Samsung's RICO claims were based on allegations that SEL committed both mail fraud and wire fraud to induce the PTO to grant it the patents at issue, which patents SEL then employed to extort Samsung and others. *Id*. at 1379. However, the Court ruled that because a patent does not constitute "property," the PTO had not been defrauded under the mail or wire fraud statutes, and thus Samsung "failed to satisfy the predicate act requirement for its federal RICO counterclaims." *Id*. at 1380. Consequently the *SEL* court affirmed the district court's grant of summary judgment dismissing the RICO claims.

The same is true here. Even assuming the defendants made fraudulent misrepresentations via wire and the mails—which Innovative Health denies—no purported act of mail fraud or wire fraud "deprived [Dr. Bhambhani or Dr. Rao] of money or property" as required by *Kelly* and *Cleveland.* No defendant obtained a single dollar of NSS purchase money from Dr. Bhambhani

or Dr. Rao because, as they confirmed in deposition, neither Plaintiff purchased a single NSS device.  Just as SEL failed to obtain actual property from the PTO by virtue of its alleged acts of mail and wire fraud, no money or property was obtained from the Plaintiffs by any defendant. Indeed, the sole "injuries" upon which Plaintiffs rely in support of their RICO claims—contingent Medicare liability and possible Medicare reenrollment denial—are neither "money or property" within the meaning of the mail and wire fraud statutes, nor do they constitute anything that the defendants "obtained" from them.

Accordingly, because the undisputed facts foreclose Plaintiffs from any ability to establish or prove the predicate acts of mail fraud or wire fraud, their RICO claims fail, and the Court should grant summary judgment in favor of Innovative Health as to those claims.

### 2. The Undisputed Facts Prove that Plaintiffs Did not Act in Reliance on any Alleged Misrepresentations or Concealment, and Therefore their Claims for Common Law Fraud and Conspiracy Fail.

To plead and prove a claim of fraud under Maryland common law—be it an intentional misrepresentation or a fraudulent concealment—a necessary and required element is that the plaintiff must have *acted in reliance* on the misrepresentation or concealment.  *Hoffman v. Stamper*, 385 Md. 1, 28, 867 A.2d 276, 292 (2005) (intentional misrepresentation); *Green v. H & R Block, Inc.,* 355 Md. 488, 525, 735 A.2d 1039, 1059-60 (1999) (concealment/nondisclosure). The act of reliance that Plaintiffs allege in their Complaint is their *purchase* of NSS devices in reliance on the defendants' alleged misrepresentations and omissions:  "Plaintiffs . . . relied upon Defendants' fraudulent and intentional misrepresentations, and, in reliance on those representations, were induced to purchase NSSs from  Defendants," and Defendants "knew that the Plaintiffs . . . would have not purchased the NSS . . . had Plaintiffs and members of the Proposed Class knew of the undisclosed material facts." (ECF No. 97, at ¶¶ 115; 120).

Of course, we now know that this did not occur. Plaintiffs did not rely on any alleged misrepresentation or fraudulent concealment because neither purchased any NSS devices.  As such, Plaintiffs cannot, as matter of undisputed fact and law, prove all required elements of intentional misrepresentation or fraudulent concealment, and the Court should grant summary judgment as to their claims of common law fraud and conspiracy.

### III.    CONCLUSION

Drs. Bhambhani and Rao do not satisfy the standing requirements necessary to pursue their individual claims or the potential claims of unknown class members. Neither shared Medicare liability that is purely contingent upon CMS making a direct claim against them, nor the mere possibility that they *may* be denied Medicare reenrollment, suffices to establish Article III standing. Further, the undisputed fact that neither Plaintiff purchased NSS devices in reliance on alleged fraudulent statements and omissions confirms that Plaintiffs cannot prove the required predicate acts to support their RICO claims, and that they cannot prove the required reliance element of their common law fraud claims. Innovative Health respectfully requests that the Court grant summary judgment against Drs. Bhambhani and Rao and that all claims asserted in the Third Amended Complaint be dismissed with prejudice.

Respectfully submitted,

Dated: March 18, 2022

*/s/ Eric R. Harlan*
Joel I. Sher, Bar No. 00719
jis@shapirosher.com
Paul Mark Sandler, Bar No. 00145
pms@shapirosher.com
Eric R. Harlan, Bar No. 23492
erh@shapirosher.com
SHAPIRO SHER GUINOT & SANDLER, P.A.
250 West Pratt Street, Suite 2000
Baltimore, Maryland 21201
(410) 385-0202 (telephone)
(410) 539-7611 (facsimile)

Jeffrey R. Teeters (admitted *pro hac vice*)
jrteeters@woodlamping.com
WOOD + LAMPING LLP
600 Vine Street, Suite 2500
Cincinnati, Ohio 45202
(513) 852-6050 (telephone)
(513) 419-6450 (facsimile)

*Attorneys for Defendant*
*Innovative Health Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 18th day of March, 2022, I electronically filed the foregoing

Reply in Support of Summary Judgment with the Clerk of the Court using the CM/ECF system.

The Court or the CM/ECF system will send notification of such filings to all CM/ECF participants.

I further certify that a true and correct copy of these documents was sent via electronic mail to the

non-CM/ECF participants listed below:


<u>*Via Electronic Mail*</u>
INNOVATIVE HEALTH CARE SOLUTIONS, LLC
3011 Long Creek Way
Louisville, Kentucky 40245
*Pro Se*
c/o Robin Campbell
rrc123@bellsouth.net

<u>*Via Electronic Mail*</u>
Joy Long
2329 East 500 North
Greenfield, Indiana 46140
Joylong0727@gmail.com
*Pro Se*


*/s/ Eric R. Harlan*
  Eric R. Harlan, Bar No. 23492