IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| RITU BHAMBHANI, M.D., *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> INNOVATIVE HEALTH SOLUTIONS, ) <br> INC., *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 19-00355-LKG <br><br> Dated:  June 14, 2022 |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Plaintiffs, Dr. Ritu Bhambhani and Dr. Sudhir Rao, bring this putative class action lawsuit on behalf of themselves and other similarly situated individuals alleging civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; fraudulent misrepresentation; intentional misrepresentation by concealment or non-disclosure; and civil conspiracy claims against defendants, Innovative Health Solutions, Inc. ("IHS"); Innovative Healthcare Solutions, LLC ("IHCS"); Acclivity Medical, LLC ("Acclivity"); DragonSlayer Strategies LLC ("DragonSlayer"); Coleman Certified Medical Billing & Consultant, LLC ("Coleman"); Joy Long; and Ryan Kuhlman. *See generally* 3d Am. Compl., ECF No. 97.  Defendants have moved for summary judgment in their favor with regards to plaintiffs' claims, upon the ground that plaintiffs lack standing to bring this action.  Def. Mot., ECF No. 125; Def. Mem.; ECF No. 125-1.  Plaintiffs also seek leave to file a fourth amended complaint.  Pl. Mot., ECF No. 132; Pl. Mem., ECF No. 132-1.

No hearing is necessary to resolve these motions.  L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court:  (1) **GRANTS** defendants' motion for summary judgment; (2) **DENIES** plaintiffs' motion for leave; and (3) **DISMISSES** the third amended complaint.  Fed. R. Civ. P. 16 and 56.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

As background, plaintiff Dr. Ritu Bhambhani is a medical doctor practicing in Abingdon, Maryland, and she is board-certified in Anesthesiology and Pain Medicine. 3d Am. Compl. at ¶ 16. Plaintiff Dr. Sudhir Rao is a medical doctor practicing primarily in Mount Airy, Maryland, and he is also board-certified in Anesthesiology and Pain Medicine. *Id.* at ¶ 17.

Defendant IHS is an Indiana corporation that is alleged to have engaged in the marketing, selling, and distributing of a product known as the Neuro-Stim System ("Neuro-Stim"). *Id.* at ¶ 18. IHCS is an Ohio limited liability company that is alleged to have participated in the marketing and billing scheme described in the third amended complaint. *Id.* at ¶ 19.

Acclivity is a former Kentucky limited liability company that is alleged to have engaged in the marketing, selling and distributing of Neuro-Stim. *Id.* at ¶ 20. Ryan Kuhlman was the sole owner of Acclivity. *Id.* at ¶ 21.

DragonSlayer is a former Indiana limited liability company that is alleged to have participated in the marketing and billing scheme described in the third amended complaint. *Id.* at ¶ 22. Joy Long was the sole member of DragonSlayer. *Id.* at ¶ 23. Lastly, Coleman is an Ohio limited liability company that is also alleged to have participated in the alleged marketing and billing scheme. *Id.* at ¶ 24.

<u>The Alleged Marketing And Billing Scheme</u>

Plaintiffs allege in this case that IHS sold, marketed, and distributed Neuro-Stim devices through exclusive-rights sales-agent distributors ("Sales Agents"), including defendants Acclivity and IHCS. *Id.* at ¶ 3. Plaintiffs also allege that IHS and its Sales Agents invested substantial sums in advertising and marketing the Neuro-Stim devices in a misleading manner throughout the United States, including on websites, at trade shows, in brochures, in newsletters, in videos, on phone calls, in emails, and in on-site presentations at physician offices and

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the third amended complaint ("3d Am. Compl."); defendants' motion for summary judgment ("Def. Mot."); and the memorandum in support thereof ("Def. Mem.").

ambulatory surgery centers.  *Id.*

In this regard, plaintiffs contend that IHCS explicitly referred to the Neuro-Stim device as "FDA-approved," claiming that it was the "first and only FDA approved electro-auricular, peripheral nerve stimulator currently on the market to treat acute and chronic pain" in a slideshow used by IHCS to promote the Neuro-Stim devices to Dr. Bhambhani and other medical providers.  *Id.* at ¶ 4; *see also* 3d Am. Compl. Ex. 2.  But, plaintiffs allege that IHCS did not reference acupuncture or electroacupuncture in this presentation.  3d Am. Compl. at ¶ 4.

Plaintiffs further allege that, as a means of enticing them and other medical providers to purchase the Neuro-Stim devices, defendants promoted the billing of the Neuro-Stim by using a specific set of codes used to report implantable nerve stimulators.  *Id.* at ¶ 7.  Plaintiffs also allege that IHS and its Sales Agents employed the services of independent coding consultants, including DragonSlayer, for this purpose.  *Id.* at ¶ 8.  And so, plaintiffs allege that they were fraudulently induced to purchase Neuro-Stim devices, and that they are members of a class of healthcare providers who purchased one or more Neuro-Stim devices, as a result of defendants' misrepresentations.  *Id.* at ¶¶ 48, 86, 88m., 88n., 115, 118, 120.

Plaintiffs' Neuro-Stim Devices

It is undisputed in this case that two limited liability companies, Box Hill Surgery Center and Ritu Bhambhani, LLC, purchased the Neuro-Stim devices that are the subject of Dr. Bhambhani's claims.  *See* Def. Mem. at 2-3; *see generally* Pl. Mem.  It is also undisputed that these two companies:  (1) submitted bills to Medicare seeking payment for patient services related to the use of these Neuro-Stim devices; (2) received payment from Medicare; and (3) had subsequent payments withheld by Medicare pursuant to Medicare's recoupment process.[2]  *See* Def. Mem. at 2-6; *see generally* Pl. Mem.

There is also no dispute that another limited liability company, SimCare ASC LLC ("SimCare"), purchased the Neuro-Stim devices that are the subject of Dr. Rao's claims in this case.  *See* Def. Mem. at 6-7; *see generally* Pl. Mem.  It is similarly undisputed that SimCare and

---

[2] Box Hill Surgery Center LLC is a Maryland limited liability company and Dr. Bhambhani is the company's managing member.  *See* 3d Am. Compl. at ¶ 16.  Ritu Bhambhani, LLC is also a Maryland limited liability company through which Dr. Bhambhani provides medical services.  *See id.*

another limited liability company, Pain & Spine Specialists of Maryland, LLC ("Pain & Spine"): (1) submitted bills to Medicare seeking payment for patient services related to the use of these Neuro-Stim devices; (2) later received Medicare payments for those services; and (3) had subsequent payments withheld by Medicare pursuant to Medicare's recoupment process.[3] *See* Def. Mem. at 6-9; *see generally* Pl. Mem. Box Hill Surgery Center, Ritu Bhambhani, LLC, SimCare, and Pain & Spine are collectively referred to herein as the "Practice Entities."

Plaintiffs contend that they sustained economic injuries after Medicare disallowed and sought to recover payments for treatments involving Neuro-Stim devices. 3d Am. Compl. at ¶¶ 64-66. And so, they seek, among other things, to recover monetary damages from defendants. *Id.* at Prayer for Relief.

### B. Procedural Background

Plaintiffs commenced this action on February 6, 2019. Compl., ECF No. 1. Plaintiffs filed an amended complaint on April 15, 2019. Am. Compl., ECF No. 23. On February 11, 2020, the Court issued a Memorandum Opinion and Order dismissing with prejudice plaintiffs' negligence and declaratory judgment claims. *See* Feb. 11, 2020, Mem. Op. & Order, ECF Nos. 37, 38.

Plaintiffs filed second and third amended complaints on August 28, 2020, and May 21, 2021, respectively. *See* 2d Am. Compl., ECF No. 48; 3d Am. Compl. On August 3, 2021, the Court issued a Memorandum Opinion and Order denying defendant Ryan Kuhlman's motion to dismiss the third amended complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(6). *See* Aug. 3, 2021, Mem. Op. & Order, ECF Nos. 117, 118.

On February 11, 2022, IHS filed a motion for summary judgment and a memorandum in support thereof. *See* Def. Mot.; Def. Mem. On February 17, 2022, defendants Acclivity and Ryan Kuhlman joined IHS's motion for summary judgment. ECF No. 131. On February 25, 2022, plaintiffs filed a consolidated response in opposition to defendants' motion for summary judgment and a cross-motion for leave to file a fourth amended complaint. Pl. Mot., ECF No.

---

[3] SimCare is a limited liability company organized under the laws of Maryland that is owned by Dr. Rao. 3d Am. Compl. at ¶ 17. Pain & Spine is a Maryland limited liability company that is also owned by Dr. Rao. *See id.*

4

132; Pl. Mem., ECF No. 132-1.  Defendants filed a reply in support of their motion for summary judgment and a response in opposition to plaintiffs' motion for leave to file a fourth amended complaint on March 18, 2022.  Def. Reply, ECF No. 136; Def. Resp., ECF No. 138.

These motions having been fully briefed, the Court resolves the pending motions.

## III.    STANDARDS OF DECISION

### A.    Standing

To possess standing under Article III, plaintiffs must have "(1) . . . suffered an injury-in-fact that was concrete and particularized and either actual or imminent; (2) there [must have been] a causal connection between the injury and the defendant's conduct (*i.e*., traceability); and (3) the injury [must have been] likely to be redressable by a favorable judicial decision." *PETA v. Tri-State Zoological Park*, 843 F. App'x 493, 459 (4th Cir. 2021) (citations omitted).  This standing requirement applies to named plaintiffs in a putative class action, because "federal courts lack jurisdiction if no named plaintiff has standing."  *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n. 20 (1976) (recognizing that even named plaintiffs who represent a class must allege and show that they personally have been injured).

In this regard, the United States Supreme Court has recognized that, in certain circumstances, class certification questions are to be resolved before challenges to standing.  *See generally Ortiz v. Fibreboard Corp*., 527 U.S. 815 (1999); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997).  But, many courts have held that consideration of standing for named plaintiffs, before considering class certification, is appropriate.  *See Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 407 (D. Md. 2012) (footnote omitted) (emphasis added); *see also, e.g.*,  *Easter v. Am. West Fin*., 381 F.3d 948, 962 (9th Cir. 2004) ("[*Ortiz v.*] *Fibreboard* does not require courts to consider class certification before standing."); *Rivera v. Wyeth-Ayerst Labs*., 283 F.3d 315, 319 n.6 (5th Cir. 2002) (stating that "in contrast to *Ortiz* and *Amchem*, the standing question would exist whether [plaintiff] filed her claim alone or as part of a class; class certification did not create the jurisdictional issue"); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig*., 570 F. Supp. 2d 851, 855 (E.D. La. 2008) (explaining that where standing of named plaintiffs "could and would" arise regardless of class allegations, "it is proper for standing to be addressed now, at the pre-certification stage."); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d

579, 606 (S.D.N.Y. 2006) ("The better reasoned decisions favor the traditional test, so that Article III standing is determined first, before proceeding to the issue of determining the class.").

A RICO plaintiff has standing if the plaintiff "has been injured in his business or property by the conduct constituting the [RICO] violation." *Starr v. VSL Pharmaceuticals, Inc*., 509 F. Supp. 3d 417, 441 (D. Md. 2020); (quoting *Sedima v. SPRL v. Imrex Co., Inc*., 473 U.S. 479, 496 (1985)); *see also* 18 U.S.C. § 1964(c). In this regard, the Fourth Circuit has recognized that:

> Although the stockholders of a corporation suffer when the corporation incurs a loss, only the corporation may vindicate its rights. An indirectly injured party should look to the recovery of the directly injured party, not the wrongdoer for relief. This principle applies to RICO cases.

*NCNB Nat'l Bank v. Tiller*, 814 F.2d 931, 937 (4th Cir. 1987), *overruled on other grounds by Busby v. Crown Supply, Inc*., 896 F.2d 833 (4th Cir. 1990); *see also Esposito v. Soskin,* 11 F. Supp. 2d 976, 978-79 (N.D. Il. 1998) (quoting *Sears v. Likens*, 912 F.2d 889, 892 (7th Cir. 1990)) ("Shareholders of a corporation do not have standing as individuals to bring a RICO action for diminution in the value of their stock caused allegedly by racketeering activities conducted against the corporation."). The Fourth Circuit has also held that a member of a limited liability company lacks standing to assert claims on behalf of the company. *See Gen. Tech. Applications, Inc. v. Exro, Ltda*, 388 F.3d 114, 118-19 (4th Cir. 2004); *see also Bivens Garden Office Bldg, Inc.. v. Barnett Banks of Fla., Inc*., 140 F.3d 898, 906 (11th Cir. 1998) ("RICO standing will not arise solely because one is a shareholder or a limited partner in a company that was the target of the alleged RICO violation . . . . Such an injury is too indirect or 'derivative' to confer RICO standing.").

In addition, under Maryland law, members of a limited liability company do not have standing to assert the company's claims. *See* Md. Code Ann., Corps. & Assn's § 4A-302 ("A member of a limited liability company is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company . . . ."); s*ee also, e.g.*, *Callender v. Callender*, No. 17-3249 TDC, 2018 WL 3609536, at *3 (D. Md. July 26, 2018) (noting that under Maryland law, "a member of an LLC . . . lacks standing to assert the LLC's claims"); *Orgain v. City of Salisbury*, 521 F. Supp. 2d 465, 476 n.33 (D. Md. 2007) ("Shareholders (or in the case of an LLC, its members) do not have standing to sue on the corporation's behalf."). And so, shareholders and members of a limited liability company lack

6

standing to assert RICO claims for harms incurred by a corporation or company. *See id.*

## IV.  ANALYSIS

Defendants have moved for summary judgment in their favor upon the ground that the named plaintiffs in this case lack standing to pursue their civil RICO and state law claims. *See generally* Def. Mot.; Def. Mem.  Specifically, defendants argue that plaintiffs lack standing to pursue these claims, because the undisputed material facts show that plaintiffs did not:  (1) purchase the Neuro-Stim devices at issue in this case; (2) submit bills to Medicare seeking payment for services related to the use of these Neuro-Stim devices; (3) receive payment from Medicare; or (4) have any payments withheld by Medicare. Def. Mem. at 2-16. And so, defendants request that the Court grant their motion for summary judgment and dismiss this case. *Id.* at 16.

Plaintiffs counter that they have standing to pursue these claims, because they may be personally liable to the Medicare program for certain overpayments related to the billing of services involving the Neuro-Stim devices. Pl. Mem. at 7-17.  And so, plaintiffs request that the Court deny defendants' motion for summary judgment. *Id.* at 20. Alternatively, plaintiffs seek leave to file a fourth amended complaint to add the Practice Entities as named plaintiffs in this case. *Id.* at 17-20.

For the reasons that follow, the undisputed material facts in this case show that plaintiffs lack standing to pursue their claims, because they neither purchased, nor submitted billings for, the Neuro-Stim devices at issue in this case. Plaintiffs have also not shown that good cause exists to amend the complaint for a fourth time to add the Practice Entities as plaintiffs at this mature stage of this litigation. And so, the Court:  (1) GRANTS defendants' motion for summary judgment; (2) DENIES plaintiffs' motion for leave to further amend the complaint; and (3) DISMISSES the amended complaint.

### A.  Defendants' Standing Argument Is Ripe

As a preliminary matter, the Court agrees with defendants that the question of whether the named plaintiffs in this putative class action have standing is ripe for resolution by the Court. While the Supreme Court has held that class certification questions are often resolved before challenges to standing, this case involves a challenge to the standing of the individually

named plaintiffs in this case. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) (holding that class certification could be addressed before the issue of Article III standing if class certification issues are "logically antecedent" to Article III concerns); *see also Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997). The Supreme Court has made clear that the Court "must be sure of its own jurisdiction before getting to the merits" of a case. *Ortiz*, 527 U.S. at 831 (citation omitted). And so, this Court has addressed the question of whether individually named plaintiffs in a putative class action have standing before considering class certification on several occasions. *See Edmondson v. Eagle Nat'l Bank*, 336 F.R.D. 108, 111 (D. Md. 2020) ("Before considering the Motion to Certify [a proposed class], the Court will first address the Article III standing of the lead Plaintiffs . . . ."); *Herlihy v. Ply-Gem Indus. Inc.*, 752 F. Supp. 1282, 1291 (D. Md. 1990) (citing *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, (E.D. Pa. 1973) ("[A] plaintiff must establish personal standing to sue each defendant before attempting to satisfy the requirements of class certification under Rule 23."). Because defendants raise a threshold jurisdictional question regarding whether the individually named plaintiffs in this case have standing to pursue their claims, it is appropriate for the Court to address this question at this stage in the litigation.

### B.     Plaintiffs Lack Standing To Pursue Their Claims

Defendants persuasively argue that plaintiffs lack standing to pursue their RICO and state law claims. To possess standing, plaintiffs must have, among other things, "suffered an injury-in-fact that was concrete and particularized and either actual or imminent." *PETA*, 843 F. App'x at 459. Plaintiffs allege in this case that defendants advertised and marketed the Neuro-Stim devices in a misleading manner and that plaintiffs were fraudulently induced to purchase these devices as a result of defendants' misrepresentations. 3d Am. Compl. at ¶¶ 111, 115, 121. And so, plaintiffs contend that they sustained economic injuries, after Medicare disallowed and sought to recover certain payments for treatments involving Neuro-Stim devices, as a result of defendants' conduct. *See id.* at ¶¶ 64-66, 101.

The undisputed material facts in this case make clear, however, that the Practice Entities, rather than plaintiffs: (1) purchased the Neuro-Stim devices that are the subject of plaintiffs' claims; (2) submitted bills to Medicare seeking payment for services related to the use of these devices; (3) received payment from Medicare; and (4) had certain payments withheld by

Medicare. In this regard, it is undisputed that Box Hill Surgery Center and Ritu Bhambhani, LLC purchased the Neuro-Stim devices that are the subject of Dr. Bhambhani's claims in this case. *See* Def. Mem. at 2-3; *see generally* Pl. Mem. It is also undisputed that these two companies submitted bills to Medicare seeking payment for services related to the use of these Neuro-Stim devices, received payment from Medicare, and had subsequent payments withheld by Medicare pursuant to Medicare's recoupment process. *See* Def. Mem. at 2-6; *see generally* Pl. Mem.

There is also no dispute that SimCare purchased the Neuro-Stim devices that are the subject of Dr. Rao's claims in this case. *See* Def. Mem. at 6-7; *see generally* Pl. Mem. It is similarly undisputed that SimCare and Pain & Spine submitted bills to Medicare seeking payment for services related to the use of these Neuro-Stim devices, and that these two companies later received Medicare payments for those services and had subsequent payments withheld by Medicare pursuant to Medicare's recoupment process. *See* Def. Mem. at 6-9; *see generally* Pl. Mem. And so, these undisputed material facts show that any injuries resulting from the marketing and billing scheme alleged in this case have been suffered by the Practice Entities, rather than the named plaintiffs.

The Fourth Circuit has held that a limited liability company must bring RICO claims on its own behalf, when, as is the case here, the limited liability company has sustained the economic loss. *See Gen. Tech. Applications, Inc.*, 388 F.3d at 118-19. Maryland law similarly provides that "[a] member of a limited liability company is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company." Md. Code Ann., Corps. & Assn's § 4A-302. Given this, the named plaintiffs do not have standing to assert the civil RICO and state law claims in this action on behalf of the Practice Entities.

Plaintiffs' argument that they have standing to pursue these claims—because they are jointly responsible for Medicare overpayments associated with billings for the Neuro-Stim devices and they could be denied re-enrollment in the Medicare Program—is also unpersuasive. Pl. Mem. at 8-9. Plaintiffs provide no evidence to show that they were denied re-enrollment in the Medicare program. *See generally* 3d Am. Compl.; Pl. Mem. Nor do plaintiffs provide any evidence to show that any action has been taken against them under the Medicare program. *See*

*generally* 3d Am. Compl.; Pl. Mem.  In fact, plaintiffs' argument that they *could* be liable or penalized under the Medicare program is simply speculation at best and, thus, insufficient to establish standing.

Because the undisputed material facts show that plaintiffs have not suffered an injury-in-fact, as a result of the alleged marketing and billing scheme alleged in this case to establish standing, the Court GRANTS defendants' motion for summary judgment.

### C. Plaintiffs Have Not Shown Good Cause To Further Amend The Complaint

As a final matter, the Court must deny plaintiffs' motion for leave to file a fourth amended complaint in this matter, because plaintiffs have not shown that good cause exists to warrant the proposed amendment.  On July 21, 2020, the Court issued a Scheduling Order that, among other things, established the deadline for amending pleadings.  *See* ECF No. 41.  Under Federal Rule of Civil Procedure 16, this Scheduling Order may be modified only for good cause and with the Court's consent.  *See* Fed. R. Civ. P. 16(b)(4).

In their motion, plaintiffs seek leave to further amend the amended complaint to add the Practice Entities as plaintiffs in this case.  Pl. Mem. at 17.  But, plaintiffs' proposed amendment comes more than three years after they commenced this case.  *See generally id.*; Compl. Plaintiffs also do not dispute that they have been aware that the Practice Entities purchased the Neuro-Stim devices at issue in this case since at least 2016.  Def. Resp. at 7; *see generally* Pl. Mem.

The Court also observes that plaintiffs filed their motion for leave approximately 16 months after the deadline for amending the pleadings lapsed under the Court's Scheduling Order. *See generally* Pl. Mem.  Plaintiffs' delay in doing so is neither explained nor excused. Defendants also persuasively argue that the proposed amendment to the complaint at this mature stage in the litigation would prejudice them, because they would need to expend additional time and resources to conduct discovery related to the Practice Entities.  *See* Def. Resp. at 11-13.

For all these reasons, plaintiffs have not established good cause to further amend the amended complaint.  *See* Fed. R. Civ. P. 16(b)(4).  And so, the Court must DENY plaintiffs' motion.

## V.  CONCLUSION

In sum, the undisputed material facts in this case show that plaintiffs lack standing to pursue their civil RICO and state law claims in this case.  Plaintiffs also have not shown that good cause exists to warrant further amendment of the amended complaint.  And so, the Court:

1. **GRANTS** defendants' motion for summary judgment;
2. **DENIES** plaintiffs' motion for leave; and
3. **DISMISSES** the third amended complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

                                      s/ Lydia Kay Griggsby
                                      LYDIA KAY GRIGGSBY
                                      United States District Judge